UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. HOLLY ATKINSON, DR. NATASHA ANUSHRI ANANDARAJA, DR. STELLA SAFO, MARY CALIENDO, HUMALE KHAN, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS, | : : : : : : |
| Plaintiffs, | : Civil Action No.: 1:19-cv-03779 : (VSB) |
| v. | : : |
| DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, DAVID BERMAN, and MOUNT SINAI HEALTH SYSTEM, INC., | : : : : |
| Defendants. | : |

**DEFENDANT DAVID BERMAN'S MEMORANDUM OF LAW
<u>IN SUPPORT OF MOTION TO DISMISS</u>**

JACKSON LEWIS P.C.
*Attorneys for Defendant*
58 S. Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
    Mark S. Mancher, Esq.
    William Kang, Esq.

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii-iii

SUMMARY OF ALLEGATIONS .............................................................................................. 2

ARGUMENT ................................................................................................................................ 4

    I.    THE COURT SHOULD NOT VIEW PLAINTIFFS' CLAIMS AS A SINGLE, HOLISTIC WORKPLACE DISCRIMINATION CLAIM, BUT SHOULD VIEW EACH PLAINTIFF'S CLAIMS SEPARATELY ON THEIR OWN MERITS ................. 4

    II.   BERMAN CANNOT BE FOUND INDIVIDUALLY LIABLE UNDER TITLE IX, TITLE VII, AND THE NYSHRL ................................................................................. 5

        A.   There Is No Individual Liability Under Title IX or Title VII ..................................... 5

        B.   As an Employee, Berman Cannot Be Found Individually Liable Under the NYSHRL ................................................................................................................. 5

    III.  STANDARD OF REVIEW FOR AIDOR-AND-ABETTOR LIABILITY UNDER THE NYSHRL AND NYCHRL ................................................................................... 6

    IV.  CALIENDO FAILS TO SUFFICIENTLY PLEAD CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN ................. 7

        A.   Caliendo's Hostile Work Environment and Disparate Treatment Claims Against Berman Fail ................................................................................................. 7

        B.   Caliendo's Aiding and Abetting Claim Against Berman Fails .................................. 7

    V.   SAFO'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN ARE UNAVAILING ........................................... 8

        A.   Safo's Hostile Work Environment Claim Against Berman Fails .............................. 8

        B.   Safo's Disparate Treatment Claim Against Berman Also Fails ................................ 9

        C.   Safo's Aiding and Abetting Claim Against Berman Also Fails ................................ 9

    VI.  LLAMES'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN ALSO FAIL ...................................................... 10

        A.   Llames's Hostile Work Environment Claim Against Berman Fails ....................... 10

        B.   Llames's Disparate Treatment Claim Against Berman Fails ................................... 11

        C.   Llames's Aiding and Abetting Claim Against Berman Also Fails .......................... 11

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. New York State Educ. Dept., et al*,
    No. 08 Civ. 5996(VM)(AJP), 2010 U.S. Dist. LEXIS 15635 (S.D.N.Y. Feb.
    23, 2010) ...................................................................................................................5

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ..................................................................................10

*Anderson v. Davis Polk & Wardwell, LLP*,
    850 F. Supp. 2d 392 (S.D.N.Y. 2012) .....................................................................5

*Bliss v. MXK Rest. Corp.*,
    220 F. Supp. 3d 419 (S.D.N.Y. 2016) .........................................................7, 8, 9, 11

*DeWitt v. Lieberman*,
    48 F. Supp. 2d 280 (S.D.N.Y. 1999) ........................................................................6

*Fleming v. MaxMara USA, Inc.*,
    371 F. App'x 115 (2d Cir. 2010) .............................................................................9

*Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014) ......................................7

*Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) ................................................................8

*Isbell v. City of New York*,
    316 F.Supp.3d 571 (S.D.N.Y. 2018) ........................................................................9

*Lebowitz v. N.Y.C. Dep't of Educ.*,
    No. 15-cv-2890, 2017 U.S. Dist. LEXIS 50950 (E.D.N.Y. Mar. 31, 2017) ............4

*Leibovitz v. N.Y.C. Transit Auth.*,
    252 F.3d 179 (2d Cir. 2001) .....................................................................................8

*Maines v. Last Chance Funding, Inc.*,
    No. 2:17-cv-05453 (ADS)(ARL), 2018 U.S. Dist. LEXIS 162073 (E.D.N.Y.
    Sep. 21, 2018) ..........................................................................................................4

*Miotto v. Yonkers Pub. Sch.*,
    534 F. Supp. 2d 422 (S.D.N.Y. 2008) .....................................................................5

*Mitchell v. TAM Equities, Inc.*,
 27 A.D.3d 703 ................................................................................................................6

*Moore v. Verizon*,
 No. 13-cv-6467 (RJS), 2016 U.S. Dist. LEXIS 16201 (S.D.N.Y. Feb. 5, 2016) ......................8

*Murphy v. ERA United Realty*, 251 A.D.2d 469, 472 (2d Dep't 1998) ............................................6

*Patane v. Clark*,
 508 F.3d 106 (2d Cir. 2007) ............................................................................................10

*Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984) ...................................................................6

*Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) ..................................................................5

**Statutes**

Executive Law § 292(5) ....................................................................................................................6

Human Rights Law ...........................................................................................................................7

N.Y. Exec. Law § 296(6) ..................................................................................................................6

New York City Human Rights Law .................................................................................................6

New York City Human Rights Law .................................................................................................8

NYCHRL ......................................................................................................................................6, 9

NYSHRL .......................................................................................................................................5, 6

State Human Rights Law .................................................................................................................5

**Other Authorities**

*Complaint* ¶¶ 385-387 ......................................................................................................................5

N.Y.C. Admin. Code § 8-107(1)(a) ..................................................................................................6

N.Y.C. Admin. Code § 8-107(6) ......................................................................................................6

**PRELIMINARY STATEMENT**

In their First Amended Complaint ("Complaint"), which spans 190 pages and consists of 889 paragraphs, plaintiffs attempt to construct a narrative of widespread discrimination and other misconduct plaguing the hallways of the Icahn School of Medicine at Mount Sinai ("Icahn") and, in particular, the Arnhold Institute for Global Health ("AIGH" or "the Institute") at Icahn. By painting with an overly broad brush, however, plaintiffs improperly conflate unremarkable workplace disagreements, disciplinary actions, and changes in organizational strategy, with unlawful discrimination.

Included in the narrative is defendant David Berman, who served as chief of staff for defendant Dr. Prabhjot Singh during some of the period of alleged discrimination. Plaintiffs, in their effort to cast Singh as the primary villain in their tale, have incorporated Berman as a secondary "bad guy" to bolster the narrative. However, despite the verbosity and breadth of the Complaint, and plaintiffs' attempt to portray ordinary workplace interactions involving Berman as illegal discriminatory acts, the truth remains that *plaintiffs have failed to plead any actionable claim against Berman*. Indeed, only three out of the eight plaintiffs—Dr. Stella Safo, Mary Caliendo, and Geraldine Llames—have even asserted claims against Berman, and none of them allege that Berman's allegedly discriminatory conduct was based on their gender, or that he treated them differently from how he treated men. Therefore, the fifth, sixth, seventh, eighth, ninth, and tenth causes of action against Berman for unlawful sex discrimination, which are the only claims against Berman of the 25 causes of action asserted, should be dismissed.[1]

---

[1] Safo, Caliendo, and Llames assert separate claims for disparate treatment and hostile work environment against Berman. The fifth and sixth causes of action are by Safo, the seventh and eighth causes of action are by Caliendo, and the ninth and tenth causes of action are by Llames.

As discussed in the motion to dismiss papers filed by defendants Singh, Dr. Dennis Charney, Bruno Silva, and Mount Sinai Health System Inc. (collectively, "Sinai Defendants"), Mary Caliendo's gender discrimination should be dismissed because she does not allege *any* purportedly harassing conduct with a nexus to her gender. Caliendo does not allege that Berman's allegedly discriminatory conduct, which is limited to one interaction and the oversight of a time management process, was based on her gender, that he treated her differently than he treated male employees, or that he aided and abetted any discriminatory conduct based on her gender. As such, her gender discrimination claims do not meet the minimal pleading requirements and merit dismissal.

For the same reasons that Caliendo's claims of sex discrimination against Berman fail, the claims of sex discrimination alleged by plaintiffs Dr. Stella Safo and Geraldine Llames also fail. Indeed, neither Safo nor Llames adequately alleges that Berman created a hostile work environment, disparately treated her based on gender, or aided and abetted any discriminatory conduct. Llames details just one brief interaction with Berman and concedes, "Solely because of Singh, she found the environment hostile and oppressive." Complaint at ¶ 336. Thus, Safo's and Llames's claims also do not meet the minimal pleading requirements and merit dismissal.

## SUMMARY OF ALLEGATIONS

A summary of the allegations of Caliendo, Safo, and Llames discussing Berman's allegedly discriminatory conduct is below. These allegations are accepted as true only for purposes of this motion.

Caliendo alleges the following in support of her claims against Berman:

- Though Caliendo was Singh's Executive Assistant, Berman started to manage her too and instructed her to provide him with a detailed timesheet. *See* Complaint at ¶ 388.

- While Singh and Berman travelled to Aspen in July 2017, Berman tasked Caliendo to work with AIGH's Communications Director to finalize and send out the Institute's Annual Report while they were gone.  When Berman returned, he yelled at Caliendo at the top of his lungs about a delay in sending out the report, and she feared he would hit her.  *See id.* at ¶¶ 389-390.

Safo alleges the following in support of her claims against Berman:

- Safo frequently observed Singh, Berman and Silva listen attentively to men's opinions in meetings while ignoring the women.  *See id.* at ¶ 309.
- In September 2017, Safo sent an email to AIGH staffers to gather for a birthday celebration of two colleagues.  Berman criticized her e-mail for omitting some AIGH staffers as addressees, though the body of the e-mail made clear everyone was invited. Berman wrote Singh a heated e-mail saying Safo was "exclusive" and bad for AIGH culture.  Berman denounced Safo vituperatively for being exclusive, "insubordinate" and "the problem with the workplace culture."  *See id.* at ¶¶ 314, 405.
- Singh and Berman both told Safo in separate conversations that she was speaking up too much and that AIGH's Chief Technology Officer, Dr. James Faghmous, had called Safo's work "unimportant.".  *See id.* at ¶¶ 317, 319.
- After Berman rescheduled a one-on-one meeting with Safo multiple times, Berman told Safo that she was bad at managing her time.  Berman then continued to berate her, first by e-mail and then in person, in a highly aggressive way.  *See id.* at ¶ 403.

Llames alleges the following in support of her claims against Berman:

- Llames, like others at AIGH, knew of Berman's short temper with female subordinates. She heard him yell at Bischoff and, while she did not witness Berman yelling at Caliendo, she saw Caliendo shaking and crying shortly afterwards.  *See id.* at ¶ 399.
- On February 28, 2017, Llames and two colleagues were working together on one of AIGH's grant applications, under Berman's supervision. In one of their meetings, Berman suddenly started yelling at them about a slide deck that they put together. He did not like some of the text. But instead of working together to improve it, he yelled at them, "this verbiage is stupid! Why'd you say that?? What IS this?" Berman's face turned bright red and he was gesticulating violently.  *See id.* at ¶ 400.
- Berman left AIGH in summer 2018 but before he did, he came up to Llames and said, "Do you know how many times I had to hear about the one time I raised my voice at you?"  Llames felt accosted—that Berman was trying to intimidate her and somehow make her feel bad for *his* outburst at her.  *See id.* at ¶ 402.

3

**ARGUMENT**

Berman joins in, adopts, and incorporates by reference the arguments and authorities marshaled in the partial motion to dismiss Plaintiffs' First Amended Complaint and supporting memorandum of law (and affidavits and exhibits in support thereof) filed by the Sinai Defendants on September 5, 2019.

**I.   THE COURT SHOULD NOT VIEW PLAINTIFFS' CLAIMS AS A SINGLE, HOLISTIC WORKPLACE DISCRIMINATION CLAIM, BUT SHOULD VIEW EACH PLAINTIFF'S CLAIMS SEPARATELY ON THEIR OWN MERITS**

Notwithstanding plaintiffs' attempt to create a single woven narrative of widespread discriminatory conduct combining the accounts of several plaintiffs against several defendants, the allegations must be examined on an individual-by-individual basis. *See Maines v. Last Chance Funding, Inc.*, No. 2:17-cv-05453 (ADS)(ARL), 2018 U.S. Dist. LEXIS 162073 (E.D.N.Y. Sep. 21, 2018) (rejecting approach of viewing plaintiffs' case as a single, holistic work environment claim by aggregating incidents of discrimination across different plaintiffs and across different protected characteristics). Indeed, "as to each of the Plaintiffs, the complaint must set forth sufficient facts to make it plausible that they individually suffered a [gender-related] hostile work environment." *Id.* at 29; *see also Lebowitz v. N.Y.C. Dep't of Educ.*, No. 15-cv-2890, 2017 U.S. Dist. LEXIS 50950, at *44-45 (E.D.N.Y. Mar. 31, 2017) ("[C]ases in the Second Circuit have declined to discern a claim of hostile work environment as to one plaintiff even where a hostile work environment was successfully pleaded as to another plaintiff.").

Here, considering the fact that only three out of the eight plaintiffs have asserted claims against Berman, it is important that Caliendo, Safo, and Llames are not able to "piggyback" off the allegations of other plaintiffs, or non-plaintiffs,[2] asserted against Berman or other defendants.

## II. BERMAN CANNOT BE FOUND INDIVIDUALLY LIABLE UNDER TITLE IX, TITLE VII, AND THE NYSHRL

### A. There Is No Individual Liability Under Title IX or Title VII

Plaintiffs' claims under Title IX and Title VII against Berman should be dismissed as a matter of law because individuals may not be held liable under Title IX or Title VII.  *See Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) ("Numerous district courts in the Second Circuit . . . have held that there is no individual liability under Title IX."); *Anderson v. Davis Polk & Wardwell, LLP*, 850 F. Supp. 2d 392, 403 (S.D.N.Y. 2012) (citing *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)) (no individual liability under Title VII).

Further, even if plaintiffs could bring Title VII claims against Berman individually, which they cannot, their claims against Berman under Title VII would be time-barred.  Discrimination claims brought under the Title VII must be filed with the EEOC within 300 days of the alleged discriminatory act to be timely.  *Adams v. New York State Educ. Dept., et al*, No. 08 Civ. 5996(VM)(AJP), 2010 U.S. Dist. LEXIS 15635, *112 (S.D.N.Y. Feb. 23, 2010).  Because Caliendo, Safo, and Llames have not filed Title VII claims with the EEOC against Berman, who left AIGH in early July 2018, s*ee* Complaint at ¶ 369, any such claims would be time-barred.

### B. As an Employee, Berman Cannot Be Found Individually Liable Under the NYSHRL

Plaintiffs' claims for personal liability (i.e., not for aiding and abetting) under the New York State Human Rights Law ("NYSHRL") against Berman should be dismissed as a matter of

---

[2] The Complaint curiously includes allegations regarding Berman's interactions with Renee Bischoff, who is not a named plaintiff.  *See Complaint* ¶¶ 385-387.

5

law because employees (i.e., non-employers) cannot face direct liability under the NYSHRL. *See Mitchell v. TAM Equities, Inc.*, 27 A.D.3d 703, 707 (2d Dep't) (citing *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984)) (coworkers and immediate supervisors are not "employers" within the meaning of Executive Law § 292(5), and thus cannot be held personally liable for a violation of the NYSHRL).

Unlike the NYSHRL, the New York City Human Rights Law ("NYCHRL") expressly provides that it is unlawful for "an employer or an *employee* or agent thereof" to engage in discriminatory employment practices. *See* N.Y.C. Admin. Code § 8-107(1)(a) (emphasis added). Therefore, individuals may be found liable in their individual capacity under the NYCHRL. However, as demonstrated below, plaintiffs have failed to sufficiently plead a claim for personal liability against Berman under the NYCHRL.

### III. STANDARD OF REVIEW FOR AIDOR-AND-ABETTOR LIABILITY UNDER THE NYSHRL AND NYCHRL

Both the NYSHRL and NYCHRL provide that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). There is, however, a requirement that liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor. *See DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (citing *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472 (2d Dep't 1998)).

Moreover, as discussed in further detail below, plaintiffs Caliendo, Safo, and Llames fail to adequately allege that Berman aided and abetted any discriminatory conduct allegedly performed by Singh or anyone else. Indeed, their allegations involving Berman all describe Berman's own alleged conduct directed at the plaintiffs, and an individual cannot aid or abet his

6

own discriminatory actions. *See Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016) ("[A]s a matter of law as well as logic, 'an individual cannot aid or abet his or her own violation of the Human Rights Law.'") (citing *Hardwick v. Auriemma*, 116 A.D.3d 465, 468 (1st Dep't 2014)). Therefore, all claims for aidor-and-abettor liability on the part of Berman should be dismissed.

### IV. CALIENDO FAILS TO SUFFICIENTLY PLEAD CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN

A. Caliendo's Hostile Work Environment and Disparate Treatment Claims Against Berman Fail

For the reasons stated in the motion and memorandum filed by the Sinai Defendants seeking dismissal of the seventh and eighth causes of action asserted by Caliendo, these causes of action should be dismissed against Berman. As set forth in the Sinai Defendants' motion papers, Caliendo's allegations that Berman subjected her to a hostile work environment and disparate treatment based on her gender fall far short of the pleading requirements. Other than the broad, descriptive, language that Caliendo is female and Berman is male, Caliendo establishes no nexus with the discrimination in her allegations. None of the statements attributed to Berman implicate a gender bias and there is not even a conclusory claim that Berman treated men differently. *See* Sinai Defendants' Memorandum of Law, filed on September 5, 2019, at 24-27.

B. Caliendo's Aiding and Abetting Claim Against Berman Fails

Neither has Caliendo pleaded an adequate claim against Berman for aiding and abetting discriminatory conduct. Indeed, Caliendo's only allegations regarding Berman relate to his alleged management of her time and the alleged incident during which he screamed at her after returning from Aspen. None of these allegations can be construed as a claim for aiding and abetting because they all involve Berman's *own* alleged discriminatory acts directed at Caliendo, and Berman could

7

not aid or abet his own actions.  *See Bliss*, *supra*, 220 F. Supp. 3d at 426.  Thus, Caliendo's aiding and abetting claim against Berman should be dismissed.

V.     **SAFO'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN ARE UNAVAILING**

A.  <u>Safo's Hostile Work Environment Claim Against Berman Fails</u>

Like Caliendo, Safo makes no allegations that suggest any legitimate connection between his alleged discriminatory mistreatment of Safo with Safo's gender.

Safo alleges that she frequently observed Singh, Berman, and defendant Bruno Silva listen attentively to men's opinions in meetings while ignoring the women.  Setting aside the obvious question of how Safo was capable of determining the attentiveness of other people and noting that no details are provided as to where, when, or how often she made the observation—even if she were correct, while this alleged behavior might be considered rude, it does not amount to unlawful discrimination.  *See Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 U.S. Dist. LEXIS 16201, at *20 (S.D.N.Y. Feb. 5, 2016) (finding that allegations of rude behavior are insufficient to plead a violation of the New York City Human Rights Law); *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001) ("conduct that is merely offensive" will not rise to the level of a hostile work environment) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).  In addition, the allegation that the men, including Berman, "[frequently] listen[ed] attentively to men's opinions . . . while ignoring the women" is too vague and conclusory to be considered.

Safo details further alleged instances of discrimination, including an incident in which Berman allegedly criticized her for not emailing the entire office about a birthday celebration, a conversation in which Berman told Safo that she was speaking up too much, Berman's telling a mutual colleague that Safo's work was "unimportant," and an email and conversation in which Berman berated Safo for mismanaging her time.  She makes no allegation that any of these alleged

8

incidents of discrimination was based on her gender.  Indeed, the situations as alleged describe nothing more than workplace disagreements and criticism, none of which are actionable under the law.  *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").  Therefore, Safo's claim for hostile work environment against Berman fails as a matter of law and should be dismissed.

### B. Safo's Disparate Treatment Claim Against Berman Also Fails

Safo's claim for disparate treatment also fails because, as discussed above, she makes no meaningful connection between Berman's allegedly discriminatory conduct and her gender.  She also makes no allegation that Berman treated her differently from how he treated men, other than the conclusory assertion that he was did not listen to her as attentively as he listened to men.  Even under the most stringent standard of the NYCHRL, her claim must be dismissed because she has not demonstrated that "she has been treated less well than other employees because of her gender." *Isbell v. City of New York*, 316 F.Supp.3d 571, 593 (S.D.N.Y. 2018).

### C. Safo's Aiding and Abetting Claim Against Berman Also Fails

None of Safo's allegations involving Berman, all of which are discussed above, form the basis of an aiding and abetting claim against Berman because they all describe Berman's own allegedly discriminatory acts toward Safo, and an individual cannot aid or abet his own conduct. *See Bliss*, *supra*, 220 F. Supp. 3d at 426.  Therefore, Safo's claim that Berman aided and abetted discriminatory acts fails and should be dismissed.

## VI.  LLAMES'S CLAIMS FOR HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT AGAINST BERMAN ALSO FAIL

### A.  Llames's Hostile Work Environment Claim Against Berman Fails

Llames's only allegations relating to Berman are that: 1) she knew of Berman's short temper with female subordinates, 2) while she did not witness Berman yelling at Caliendo, she saw Caliendo shaking and crying shortly afterward, 3) he once screamed at her during a meeting, and 4) he later asked her if she knew how many times he had to hear about the one time he raised his voice at her. Llames's allegations fall woefully short of pleading a hostile work environment claim against Berman. Indeed, allegation #1, that Llames allegedly knew of Berman's short temper with female subordinates, does not detail "complained of conduct"—but states that she knew something about Berman's reputation. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Allegations #2 and #4, that she did not see Berman yelling at Caliendo but saw her shaking and crying shortly afterward and that Berman asked Llames how many times he heard about the one time he raised his voice at her, do not reasonably form the basis of a hostile work environment claim because they do not create an objectively hostile work environment. *See id.* Llames describes only one arguably hostile incident involving Berman (allegation #3 above), and this single allegation cannot support a claim for hostile work environment because Llames alleges no link between Berman's alleged discriminatory conduct and her or her colleagues' gender. *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."). Further, Llames concedes, "Solely because of Singh, she found the environment hostile and oppressive."

10

Complaint at ¶ 336.  Therefore, Llames's hostile work environment claim fails and should be dismissed.

### B. Llames's Disparate Treatment Claim Against Berman Fails

Not only does Llames fail to allege any connection between Berman's alleged discrimination and her gender, but she also fails to allege that she has been treated less well than other employees because of her gender or that she was treated less well than men.  Therefore, she has failed to meet the minimum pleading requirements and her disparate treatment claim merits dismissal.

### C. Llames's Aiding and Abetting Claim Against Berman Also Fails

Llames fails to allege any conduct on the part of Berman that can be construed as aiding and abetting discriminatory conduct, because her only allegations involving Berman involve his own alleged discriminatory actions.  *See Bliss*, *supra*, 220 F. Supp. 3d at 426.  Thus, her aiding and abetting claim against Berman should be dismissed.

## **CONCLUSION**

For all the foregoing reasons, defendant Berman respectfully requests that the Court grant his motion to dismiss the fifth, sixth, seventh, eighth, ninth, and tenth causes of action against Berman for unlawful sex discrimination with prejudice, along with such other and further relief as the Court deems just and proper.

Dated: Melville, New York
      September 5, 2019

                              Respectfully submitted,

                              JACKSON LEWIS P.C.
                              *Attorneys for Defendant*
                              58 S. Service Road, Suite 250
                              Melville, New York 11747
                              (631) 247-0404

                              /s/ Mark S. Mancher
By:                          _____
                              MARK S. MANCHER, ESQ.
                              WILLIAM KANG, ESQ.

4846-3449-6163, v. 1