UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. HOLLY ATKINSON, DR. NATASHA ANUSHRI ANANDARAJA, DR. STELLA SAFO, MARY CALIENDO, HUMALE KHAN, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS, <br><br>            Plaintiffs, <br><br>    v. <br><br>DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, DAVID BERMAN, and MOUNT SINAI HEALTH SYSTEM, INC., <br><br>            Defendants. | Civil Action No.: 1:19-cv-03779 (VSB) |

**DEFENDANTS DR. PRABHJOT SINGH, DR. DENNIS CHARNEY, BRUNO SILVA AND MOUNT SINAI HEALTH SYSTEM INC.'S MEMORANDUM OF <u>LAW IN SUPPORT OF THEIR MOTION TO STRIKE</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

LEGAL ARGUMENT .................................................................................................................. 2

I. THE COURT SHOULD STRIKE IMMATERIAL AND SCANDALOUS
   ALLEGATIONS ............................................................................................................... 2

   A. Allegations Consisting Of Argument, Hearsay And Conjecture ........................... 4
   B. Background Information Concerning Plaintiffs ..................................................... 6
      1. Immaterial Background Information On Mount Sinai Global
         Health And Dr. Singh .................................................................................. 6
      2. Immaterial Background Information On Dr. Holly Atkinson .................... 7
   C. Irrelevant And Inadmissible Allegations Attacking Dr. Charney .......................... 9
   D. Irrelevant And Inadmissible Allegations Attacking Dr. Singh's Integrity .......... 10

II. THE COURT SHOULD STRIKE ALLEGATIONS CONCERNING FACTS OR
    EVENTS THAT OCCURRED AFTER THE FILING OF THE COMPLAINT ............. 12

CONCLUSION ............................................................................................................................ 12

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Anderson v. Davis Polk & Wardwell LLP*,
 850 F. Supp. 2d 392 (S.D.N.Y. 2012) ...................................................................................... 3

*Benzo v. N.Y. State Div. Human Rights*,
 No. 95-cv-5362 (LAP), 1997 U.S. Dist. LEXIS 901 (S.D.N.Y. Jan. 31, 1997) ....................... 2

*Blakely v. Wells*,
 209 F. App'x 18 (2d Cir. 2006) ................................................................................................ 6

*Bornholdt v. Brady*,
 869 F.2d 57 (2d Cir. 1989) ..................................................................................................... 12

*Cabble v. Rollieson*,
 No. 04-cv-9413 (LTS)(FM), 2006 U.S. Dist. LEXIS 7385
 (S.D.N.Y. Feb. 27, 2006) ......................................................................................................... 3

*Jones v. Capital Cities/ABC*,
 874 F. Supp. 626 (S.D.N.Y. 1995) ........................................................................................... 2

*Jones v. Trump*,
 No. 96-cv-2995 (SAS), 96-cv-6927 (SAS), 1997 U.S. Dist. LEXIS 7324
 (S.D.N.Y. May 27, 1997) ......................................................................................................... 8

*Kounitz v. Slaatten*,
 901 F. Supp. 650 (S.D.N.Y. 1995) ........................................................................................... 3

*Lasky v. Shearson Lehman Bros.*,
 No. 91-cv-1149, 1991 U.S. Dist. LEXIS 17062 (S.D.N.Y. Nov. 25, 1991) ........................... 11

*Parrish v. Sollecito*,
 No. 01-cv-5420 (VM), 2002 WL 1072227 (S.D.N.Y. May 28, 2002) ..................................... 3

*Roberto's Fruit Mkt., Inc. v. Schaeffer*,
 13 F. Supp. 2d 390 (E.D.N.Y. 1998) ...................................................................................... 11

*Salahuddin v. Cuomo*,
 861 F.2d 40 (2d Cir. 1988) ............................................................................................... 2, 3, 7

*Tucker v. Am. Int'l Group, Inc.*
 936 F. Supp. 2d 1 (D. Conn. 2013) ........................................................................................ 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a) ................................................................................................................ passim

Fed. R. Civ. P. 12(f) ............................................................................................................... passim

Fed. R. Civ. P. 15(d) .............................................................................................................. passim

**PRELIMINARY STATEMENT**

Plaintiffs claim that they were discriminated against and retaliated against for opposing discrimination. Rather than state their claims in the form of the "short and plain statement" called for by Fed. R. Civ. P. 8(a), they filed a 190 page pleading containing 889 paragraphs, consisting in substantial part of ponderous detail and irrelevant conjecture about how things "seemed" or "appeared" to themselves and others. In addition, large sections of the Amended Complaint are devoted to attacking the defendants (in particular, Dr. Dennis Charney and Dr. Prabhjot Singh) for alleged conduct having nothing whatsoever to do with their claims.

The Amended Complaint is nothing less than a malicious instrument of character assassination, using the mechanism of a publicly filed pleading that was then widely disseminated by plaintiffs and their counsel[1] in order to maximize the reputational damage. And, to make matters worse, plaintiffs' Amended Complaint leverages the publicity they and their counsel sought and obtained upon filing this action, by adding self-congratulatory and argumentative allegations regarding the support they received from those who saw or heard about their lawsuit but who have no involvement in the facts of the case.

Because the lengthy complaint is rife with allegations that are immaterial and/or scandalous, defendants Mount Sinai Health System, Inc., Dennis Charney, Prabhjot Singh and

---

[1] *See* Press Release, McAllister Olivarius, New Evidence of Sex and Age Discrimination Emerges as Amended Complaint Against Former Director of Mount Sinai's Arnhold Institute for Global Health and Mount Sinai Medical School and its Current Dean (Aug. 8, 2019) (on file with author).; McAllister Olivarius clients featured in Science, McAllister Olivarius (May 6, 2019), https://www.mcolaw.com/in-the-media/2019/5/6/mcallister-olivarius-clients-featured-in-science#.XXBD6ChJFaQ.; Bruce Y. Lee, Lawsuit Alleges Age, Race, Sex Discrimination At Mount Sinai Med School, Forbes (May 12, 2019, 12:47 AM), https://www.forbes.com/sites/brucelee/2019/05/12/lawsuit-alleges-age-race-sex-discrimination-at-mount-sinai-med-school/#105256d2542b.

1

Bruno Silva now move to strike pursuant to Fed. R. Civ. P. 8(a), 12(f) and 15(d).  Moreover, to the extent the Amended Complaint seeks to add allegations about facts or events that occurred after the filing of the original pleading, such allegations should be struck because they may only be added in a supplemental pleading if allowed by the Court on motion and reasonable notice pursuant to Rule 15(d).  Plaintiffs made no such motion.

**LEGAL ARGUMENT**

**I.    THE COURT SHOULD STRIKE IMMATERIAL AND SCANDALOUS ALLEGATIONS**

A complaint must contain a "short and plain statement" of the claim showing the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "Complaints that are rambling, repetitious, and unnecessarily voluminous fail to meet the minimum requirements of Rule 8(a) . . ." and are subject to a motion to strike or for dismissal.  *Benzo v. N.Y. State Div. Human Rights*, No. 95-cv-5362 (LAP), 1997 U.S. Dist. LEXIS 901, *9 (S.D.N.Y. Jan. 31, 1997), *aff'd*, 1998 U.S. App. LEXIS 2695 (2d Cir. 1998).  "When a complaint does not comply with [the Rule 8] requirement[s]…, the [district] court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Jones v. Capital Cities/ABC*, 874 F. Supp. 626, 628 (S.D.N.Y. 1995) (citing *Prezzi v. Berzak*, No. 72-cv-2789, 1972 U.S. Dist. LEXIS 11319, *3 (S.D.N.Y. 1972)) ("Complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim" should be dismissed).

Fed. R. Civ. P. 12(f) complements Rule 8(a) by providing that a court may strike redundant, immaterial, impertinent and/or scandalous allegations from a pleading.[2] This Court has repeatedly invoked this rule to strike allegations that are scandalous or immaterial. *See Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 417 (S.D.N.Y. 2012) (striking tangential allegations as immaterial and scandalous); *Parrish v. Sollecito*, No. 01-cv-5420 (VM), 2002 WL 1072227, at *2 (S.D.N.Y. May 28, 2002) (striking allegations that defendant engaged in an extramarital affair with another employee as impertinent, scandalous, and "of extremely unlikely relevance" with respect to plaintiff's hostile work environment claim); *Kounitz v. Slaatten*, 901 F. Supp. 650, 657-658 (S.D.N.Y. 1995) (striking portions of plaintiff's complaint that characterized defendant as suffering from "a personality disorder, [possessing] a deep-seated hatred of heterosexual, fertile, female lawyers, and emotionally abus[ing] her staff with deadlines and obscenities" as immaterial, impertinent, inflammatory, and scandalous as to plaintiff's gender discrimination claim).

In stark contrast to the "short and plain statement" contemplated by the Federal Rules, the Amended Complaint[3] spans hundreds of paragraphs, many of them lengthy. The pleading includes argument, conjecture and hearsay, and repeated digressions into individual biographies and institutional histories. It goes out of its way to attack Dr. Charney and (at even greater length) Dr. Singh, based on alleged misdeeds that bear in no way on plaintiffs' claims. These detours into immaterial allegations have the intended consequence of unnecessarily burdening the defendants (who would have to answer paragraph after paragraph of detailed but irrelevant allegations) and

---

[2] A "scandalous" allegation is one that "reflects unnecessarily on the defendant's moral character. … Even where matter in a pleading is relevant to the controversy, it nonetheless may be struck if it is scandalous or set out in 'needless detail.'" *Cabble v. Rollieson*, No. 04-cv-9413 (LTS)(FM), 2006 U.S. Dist. LEXIS 7385, *32 (S.D.N.Y. Feb. 27, 2006) (internal citations omitted).

[3] All citations to the Amended Complaint (Dkt. 30) are denoted herein as "Compl."

the Court (which would be required to unnecessarily sort through a voluminous document simply to understand the plaintiffs' claims). *Salahuddin*, 861 F.2d at 42 ("[t]he statement should be short because 'unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage'") (citation omitted).

### A.    Allegations Consisting Of Argument, Hearsay And Conjecture

Although a complaint is supposed to allege facts, the Amended Complaint is rife with editorial commentary and speculation. Dozens of paragraphs contain assertions not just about what was allegedly said or done, but about how things supposedly "seemed" or "appeared" to the plaintiffs or others.[4] Likewise, paragraph after paragraph offers inappropriate (and often compound) characterizations, invective and argument, *e.g.*:

- Compl. ¶ 64 – "Since the Institute now had plenty of money, and Strathdee was accomplished and had many good ideas for the Institute, Charney's vituperative dismissal of her and her proposed budget seemed irrational."

- Compl. ¶ 79 – "[Singh] came across as unprepared and underqualified, a clearly charismatic young man who had not had enough time or experience to qualify him to run the Institute."

- Compl. ¶ 81 – "Singh certainly demonstrated promise for a young man, but all zeros was not an unreasonable score for him on the committee's metrics."

---

[4] *See, e.g.,* Compl. ¶¶ 64, 76, 104, 105, 156, 251, 252, 267, 323, 346, 353, 357, 359, 372, 378, 380, 385, 412, 417.

4

- Compl. ¶ 94 – "It is reasonable to infer that Singh, well aware of his shortcomings as he applied to Mount Sinai, attempted to bolster his publication record by obscuring some details of his work."

- Compl. ¶ 209 – ". . . it was widely remarked in AIGH and across Mount Sinai that Singh often did not make sense. . . ."

- Compl. ¶ 230 – "Even though ATLAS was Singh's baby, with no 'legacy' staff to hold him back, he made multiple promises about it he could not deliver and ended up lying to donors about it to cover up his failures."

- Compl. ¶ 515 – ". . . the idea that Singh was an 'equal opportunity jerk' may be attractive to Mount Sinai, but in addition to being scant consolation to those who work at the Institute, is not true."[5]

Perhaps even more troubling is the attempt by plaintiffs to leverage the publicity they obtained after filing the original Complaint by inserting in the Amended Complaint hearsay expressions of support that they received "in the wake of the Complaint." (Compl. ¶¶ 473-476.) These allegations set forth no facts about the plaintiffs' employment, but merely recite that certain faculty, staff and/or students have expressed opinions on the matter as a result of hearing or reading about the Complaint. This form of *ad populum* appeal in a pleading would be inappropriate in any context; the fact that the Amended Complaint relies on expressions of support generated by the acts of the plaintiffs (and their counsel) themselves, makes these allegations particularly disturbing.

---

[5] *See also* Compl. ¶¶ 76, 107, 108, 117, 139, 140, 234, 236, 243, 281, 293, 304, 316, 318, 346, 351, 378, 449, 514, 515.

### B.     Background Information Concerning Plaintiffs

In the first three paragraphs of the Amended Complaint, plaintiffs (i) state the nature of the case ("this action is brought for unlawful sex discrimination in employment," "unequal pay" and "related state-law claims for sex, age, race, religion and national origin discrimination and retaliation"); (ii) identify the plaintiffs ("former and current employees of the Arnold Institute for Global Health"); and (iii) describe the central focus of the lawsuit, *i.e.*, allegations of discrimination and retaliation arising from Dr. Singh's management of the Institute as its new Director. (Compl. ¶ 1-3.) The next 103 paragraphs digress into the biographical information of various individuals and wholly unrelated subject matter, warranting an order striking the irrelevant paragraphs. *See, Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006) (dismissing complaint spanning 57 pages and 597 numbered paragraphs as "far from short or plain").

#### 1.     Immaterial Background Information On Mount Sinai Global Health And Dr. Singh

The Amended Complaint purports to describe in excruciating (and needless) detail the founding and development of what was originally known as Mount Sinai Global Health ("MSGH") and MSGH's sources of funding. (Compl. at ¶¶ 38-48.) It covers the evolution of MSGH beginning in the early and mid-2000s, more than a decade before Dr. Singh was hired to lead the Arnhold Institute for Global Health ("AIGH"), the successor to MSGH, and before Dr. Charney became Dean of the School of Medicine. (*Id*. at ¶¶ 38-48.) It then describes a $12.5 million grant provided to MSGH by two foundations, and quotes at length both the Gift Agreement and the public statements of the foundations' trustee, none of which have any bearing on plaintiffs' causes of action. (*Id*. at ¶¶ 44-46.)

Although Dr. Singh is the primary focus of the plaintiffs' allegations, it is not until fourteen pages into the complaint that they even mention (Compl. ¶ 49) the search for a Director of AIGH

that resulted in him being appointed to this position in 2015. Dr. Singh himself is not even identified as a candidate for the Director position until page 20 of the Amended Complaint. (*Id.* at ¶ 67.) Plaintiffs then linger on irrelevant background details, such as Dr. Singh's place of birth and his wife's profession, as well as his previous consideration for a different position at MSGH. (*Id*. at ¶¶ 69, 72.) As noted above (n. 4, *supra*), the Amended Complaint repeatedly offers unnecessary editorial comments, speculation and legal argument, rather than facts. It also levels gratuitous personal attacks on Dr. Singh's prior work as a member of the Global Health Committee of the Associated Medical Schools of New York (*Id.* at ¶ 70) and on perceived shortcomings in the citation format of his *curriculum vitae* ("CV"). (*Id*. at ¶¶ 81-86, 90, 92, 94-102.) Inclusion of these utterly superfluous and *ad hominem* allegations and commentary clearly violates the "short and plain statement" required by Rule 8(a). *Salahuddin v. Cuomo*, *supra* (complaint that spanned 15 single-spaced pages and contained explicit descriptions of 20-odd defendants, their official positions, and their roles in the alleged denials of plaintiff's rights contained "a surfeit of detail" and failed to comply with Rule 8).

### 2. Immaterial Background Information On Dr. Holly Atkinson

Plaintiffs continue their pattern of irrelevant, long-winded background narratives in their descriptions of their own professional histories. For example, plaintiffs spend eight paragraphs going step-by-step through Dr. Holly Atkinson's CV, detailing positions she held and honors she received more than a decade before any of the facts at issue in this matter. (Compl. ¶¶ 160-165.)

The plaintiffs repeat this exercise for Dr. Anandaraja and Dr. Safo, as well as Amanda Misiti. Plaintiffs present Dr. Anandaraja's professional background under the misleading header and sub-header: "Legacy staff: Singh discriminates against Anandaraja" and "History of Anandaraja's employment at Mount Sinai." There, the Amended Complaint spends multiple

paragraphs on Dr. Anandaraja's work abroad in the early 2000s and her fundraising efforts during that time. (*Id*. at ¶¶ 192-205.) These tangents have no connection to Dr. Anandaraja's work at MSGH or AIGH, or to Dr. Singh's alleged discrimination, which plaintiffs do not claim occurred for another decade.

The Amended Complaint similarly details Dr. Safo's career prior to her time at AIGH and prior to any of the alleged incidents. (*Id*. at ¶ 298.) It details her various awards and work with Councils and Foundations, none of which are involved in this matter. (*Id*. at ¶ 301.) Plaintiffs spend a similar amount of time on Misiti's pre-AIGH career. The Amended Complaint journeys from McGill University in Montreal to New York University in New York City, to University College in London. It covers Misiti's time with the Peace Corps in Mali, the U.S. Department of Health and Human Services in Washington, D.C., and the BRAC Social Innovation Lab in Bangladesh. (*Id*. at ¶¶ 339-341.) Only then, at paragraph 342, does the Amended Complaint get to Misiti's time at AIGH, when the material facts are alleged to have occurred.

The above-described portions of the complaint, which delve into individual biographies with needless detail, provide nothing relevant to the many causes of action at issue. The descriptions of Dr. Singh, Dr. Atkinson, Dr. Anandaraja, Dr. Safo, and Amanda Misiti's lives and careers from well-before the relevant time frame are immaterial and their inclusion forces both the Court and defendants to parse through extraneous and irrelevant material in an already voluminous complaint. These immaterial background allegations are inconsistent with Rules 8(a) and 12(f) and should be struck. *Jones v. Trump*, No. 96-cv-2995 (SAS), 96-cv-6927 (SAS), 1997 U.S. Dist. LEXIS 7324 (S.D.N.Y. May 27, 1997), *aff'd*, 1998 U.S. App. LEXIS 23531 (2d Cir. 1998).

### C.   Irrelevant And Inadmissible Allegations Attacking Dr. Charney

Beginning at paragraph 56, the Amended Complaint sets forth detailed allegations about Dr. Charney's oversight of the search process that resulted in Dr. Singh's appointment as AIGH Director.  Not content with setting forth those allegations, the Amended Complaint begins the narrative by rebuking Dr. Charney for his alleged "'tougher than the rest' personal mantra" (Compl. ¶ 53) and for his alleged "reputation for losing his temper and screaming expletives. . . .") (*Id.* at ¶ 54.)

Paragraph 54 then spends nearly a half-page relating an alleged "disturbing incident" that was "publicly disclosed" by a former (male) medical student "in the wake of this lawsuit."  The allegations relate to an incident (in which Dr. Charney supposedly screamed expletives at the student) that allegedly occurred years earlier and which has no relevance to the plaintiffs' claims of discrimination and retaliation.  Indeed, the only connection between the alleged incident and this case is that the former medical student's public statements were apparently prompted by the filing of this lawsuit and the efforts of plaintiffs and their counsel to generate enormous publicity about it.

Continuing on the path of a gratuitous character assassination, paragraph 55 of the Amended Complaint contains allegations that Dr. Charney "courted controversy" when he failed to make appropriate disclosures of a conflict of interest in connection with an article he wrote (at a time that the Amended Complaint does not specify).  Again, the allegations bear no relationship to any question in this case and are designed merely to tarnish Dr. Charney's reputation.  The vindictive motivation becomes evident later in the Amended Complaint, where plaintiffs make clear that they are unhappy that "Charney, Singh's protector and enabler, remains in his job." (Compl. ¶ 479.)

### D. Irrelevant And Inadmissible Allegations Attacking Dr. Singh's Integrity

Beginning at paragraph 10, and proceeding episodically throughout the remainder of the Amended Complaint, plaintiffs level scattershot attacks on Dr. Singh as "dishonest" and "untrustworthy" with respect to matters having nothing to do with allegations of discrimination. Among other things, plaintiffs insert in the middle of the Amended Complaint a nearly 60-paragraph digression about Dr. Singh's management of an AIGH project called "ATLAS," which it describes as "a system intended to combine satellite imagery and demographic data using artificial intelligence in a way that would help rural communities improve health care." (*Id.* at ¶ 230.) The allegations concerning ATLAS are totally irrelevant to the allegations of discrimination and instead are devoted to accusations that Dr. Singh created the program because he wanted to "creat[e] a 'cool' tech product as a marker of his leadership" (*Id.* at ¶ 235) and then mismanaged the project, made misrepresentations about its progress to donors and the U.S. government, and was responsible for violations of the Health Insurance Portability and Accountability Act ("HIPAA") because of the manner in which data was stored. (*Id*. at ¶¶ 230-239, 255-293.)

These allegations do not relate to the discrimination or retaliation claims pled in the Amended Complaint. Rather, they were designed to embarrass the defendants and inject into this action irrelevant allegations of alleged mismanagement of the ATLAS program. Indeed, in order to make sure that no reader misses the point, the Amended Complaint includes gratuitous and provocative headings such as: "Singh launches ATLAS, a signature program, but covers up its shortcomings" (Compl. p. 66), "Khan sees Singh making misrepresentations to donors" (*Id.,* p. 78) and "Fraudulent USAID report." (*Id*., p. 78.)

In a further effort to disparage Dr. Singh on matters having nothing to do with allegations of discrimination or retaliation, the Amended Complaint contains allegations that Dr. Singh wasted

10

money on outside consultants, mishandled donor and grant funds and spent lavishly on expenses. (*Id.* at ¶¶ 135-137, 320-323.) The Amended Complaint's *ad hominem* attacks continue with criticisms that Dr. Singh "used esoteric words in bizarre sentences . . . frequently jumped between topics in ways that were hard to follow . . . [and] had a haphazard attitude to research and grant reports. . . ." (*Id.* at ¶ 344.) Again, the gratuitous heading that introduces several of these allegations ("Singh's money manipulations") (*Id.*, p. 90) is a generalized attack on Dr. Singh's integrity but lacks any connection to the plaintiffs' discrimination and retaliation claims.

Nothing in the dozens of paragraphs that plaintiffs devote to denigration of Dr. Singh connects (or could connect) his supposed malfeasance to any of the plaintiffs' claims of discrimination and retaliation. As the sole purpose of plaintiffs' inclusion of such voluminous and scandalous allegations is to publicly disparage and embarrass the defendants (a goal that they have pursued vigorously via public statements), the proper course of action is to strike them pursuant to Rule 12(f). *Roberto's Fruit Mkt., Inc. v. Schaeffer,* 13 F. Supp. 2d 390, 396 (E.D.N.Y. 1998); *Lasky v. Shearson Lehman Bros.*, No. 91-cv-1149 (RPP), 11991 U.S. Dist. LEXIS 17062 (S.D.N.Y. Nov. 25, 1991)

Finally, courts have recognized that allegations of fact that would not be admissible at trial – including hearsay allegations – should be struck. *Tucker v. Am. Int'l Group, Inc.* 936 F. Supp. 2d 1 (D. Conn. 2013) (citing *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir. 1976)). Here again, the Amended Complaint is marked by hearsay allegations about statements supposedly made by unidentified third parties attacking Dr. Singh. Those statements would not be admissible at trial and therefore do not belong in the Amended Complaint. (Compl. ¶¶ 107-110, 344.)

## II. THE COURT SHOULD STRIKE ALLEGATIONS CONCERNING FACTS OR EVENTS THAT OCCURRED AFTER THE FILING OF THE COMPLAINT

Rule 15(d) provides that "[o]n motion and reasonable notice the court many, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Thus, unlike an amended complaint (which may be filed once as of right in the time frames set out in Rule 15(a)(1)), a supplemental complaint requires a motion and reasonable notice.

Though it is styled as an Amended Complaint, plaintiffs' pleading contains numerous paragraphs alleging facts or events that occurred after the filing of the original complaint.[6] Had plaintiffs complied with Rule 15(d) by moving for permission to add those allegations, defendants would have opposed the motion on the ground that the allegations (many of which consist of self-congratulatory commentary and argument) do not allege facts concerning their employment and their inclusion would not "promote the economic and speedy disposition of the controversy between the parties." *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989). In any event, as the plaintiffs did not file a Rule 15(d) motion, the addition of these allegations was improper and they should be struck.

## CONCLUSION

For the reasons discussed above, Defendants request that this Court grant their motion to strike pursuant to Rules 8(a), 12(f) and 15(d). It would be nearly impossible to isolate the objectionable portions of the Amended Complaint from the allegations that amount to appropriate pleading and neither the Court nor defendants should bear the burden of parsing the 889 paragraphs in order to attempt to do so. Defendants therefore request that the Amended Complaint be struck

---

[6] See Compl. ¶¶ 13, 14, 15, 467-482.

in its entirety and that plaintiffs be required to replead by filing a pleading in accordance with Rule 8(a).

Dated: September 5, 2019
New York, New York

Respectfully Submitted,

**PROSKAUER ROSE LLP**

*/s/ Joseph Baumgarten*
Bettina B. Plevan
Joseph Baumgarten
Edna D. Guerrasio
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
*Attorneys for Defendants*
*Prabhjot Singh, Dennis S. Charney,*
*Bruno Silva and Mount Sinai Health System, Inc.*