**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. HOLLY ATKINSON, DR. NATASHA ANUSHRI ANANDARAJA, DR. STELLA SAFO, MARY CALIENDO, HUMALE KHAN, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS, | : : : : : | Civil Action No.: 1:19-cv-03779 (VSB) |
| Plaintiffs, | : : | |
| v. | : : | |
| DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, DAVID BERMAN, and MOUNT SINAI HEALTH SYSTEM, INC., | : : : | |
| Defendants. | : : | |

**DEFENDANTS DR. PRABHJOT SINGH, DR. DENNIS CHARNEY, BRUNO SILVA AND MOUNT SINAI HEALTH SYSTEM INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD............................................................................................................ 3

ARGUMENT ....................................................................................................................... 4

I.  ATKINSON'S AND ANANDARAJA'S GENDER AND AGE
DISCRIMINATION CLAIMS ARE TIME-BARRED (COUNTS 1, 2, 3, 4, 17, 18,
19, 20)........................................................................................................................ 4

II.  THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII AND TITLE IX............ 7

III.  STANDARD OF REVIEW FOR HOSTILE WORK ENVIRONMENT,
DISPARATE TREATMENT CLAIMS UNDER TITLE VII, ADEA, NYSHRL,
NYCHRL................................................................................................................... 8

    A.  Hostile Work Environment................................................................................ 8

    B.  Disparate Treatment......................................................................................... 9

IV.  ATKINSON'S AND ANANDARAJA'S AGE DISCRIMINATION CLAIMS
WOULD HAVE TO BE DISMISSED EVEN IF THEY WERE TIMELY
(COUNTS 17, 18, 19, 20) ....................................................................................... 10

    A.  Atkinson And Anandaraja Have Not Sufficiently Pled Age-Based Hostile
Work Environment Claims Under The ADEA, NYSHRL And NYCHRL............. 10

    B.  Atkinson And Anandaraja Have Not Sufficiently Pled Disparate Treatment
Claims Under The ADEA, NYSHRL And NYCHRL............................................ 12

        1.  Neither Atkinson Nor Anandaraja Allege Any Adverse Employment
Actions ............................................................................................... 12

        2.  The Amended Complaint Does Not Allege That Age Was The "But
For" Cause Of Any Adverse Decision, Or Any Circumstances Giving
Rise To An Inference Of Discrimination.............................................. 14

V.  KHAN'S RACE, RELIGION AND NATIONAL ORIGIN DISCRIMINATION
AND RETALIATION CLAIMS SHOULD BE DISMISSED (COUNTS 21, 22) .......... 15

    A.  Three Alleged Comments Are Neither Severe Nor Pervasive Enough To
Plead A Hostile Work Environment Under Title VII Or The NYSHRL And
Should Be Dismissed ....................................................................................... 15

    B.  Khan's Hostile Work Environment Allegations Fail Even Under The More
Lenient NYCHRL Standard............................................................................... 19

    C.  Plaintiffs Cannot Aggregate Other Allegations Of Discrimination To Bolster
Khan's Claims.................................................................................................. 20

    D.  Khan's Retaliation Claims Under Title VII, NYSHRL And NYCHRL Should
Be Dismissed .................................................................................................. 21

VI.  CALIENDO'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH
HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT CLAIMS
(COUNTS 7, 8) ....................................................................................................... 23

A.    Caliendo's Hostile Work Environment Allegations Fall Short Under Title VII, NYS And NYC Human Rights Law, Title IX .......................................................... 23

B.    Caliendo's Disparate Treatment Allegations Fall Short Under Title VII, NYSHRL, NYCHRL And Title IX ........................................................................ 26

VII.    MISITI'S RETALIATION CLAIMS SHOULD BE DISMISSED (COUNT 13)............. 27

VIII.    PLAINTIFFS CANNOT ESTABLISH CONSTRUCTIVE DISCHARGE ...................... 29

A.    A Constructive Discharge Claim Carries A More Onerous Pleading Standard Than A Hostile Work Environment Claim ............................................................... 29

B.    Plaintiffs Cannot Satisfy The Constructive Discharge Pleading Standard ............. 32

CONCLUSION ......................................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. N.Y. State Educ. Dept., et al*,
No. 08-cv-5996(VM)(AJP), 2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) ..............................4

*Addo v. N.Y. Health & Hosps. Corp.*,
No. 15-cv-8103 (RA), 2017 U.S. Dist. LEXIS 176916
(S.D.N.Y. Oct. 25, 2017) .......................................................................................................18

*Akinsanya v. N.Y.C. Health & Hosps. Corp.*,
No. 16-cv-3332 (VEC) (KNF), 2017 WL 4049246 (S.D.N.Y. July 27, 2017) ......................15

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)............................................................................................16, 25

*Anyachebelu v. Brooklyn Hosp. Ctr.*,
No. 16-cv-3159, 2017 WL 9511073 (E.D.N.Y. July 20, 2017)..............................................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................3, 4

*Belle v. Zelmanowicz*,
305 A.D.2d 272 (1st Dep't 2003) ........................................................................................29

*Bermudez v. City of N.Y.*,
783 F. Supp. 2d 560 (S.D.N.Y. 2011)....................................................................................9

*Boomalert v. City of N.Y.*,
721 F. App'x 29 (2d Cir. 2018) ...............................................................................8, 13, 28

*Brown v. Montefiore Med. Ctr.*,
No. 18-cv-03861 (PGG) (KHP), 2019 U.S. Dist. LEXIS 78915
(S.D.N.Y. May 8, 2019)...............................................................................................21, 22

*Carter v. Verizon*,
No. 13-cv-7579, 2015 WL 247344 (S.D.N.Y. Jan. 20, 2015) ...............................................12

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*,
No. 10-cv-8486 (GBD) (THK), 2011 U.S. Dist. LEXIS 153493
(S.D.N.Y. Nov. 10, 2011) ....................................................................................................17

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)...................................................................................5

*Chung v. City Univ. of N.Y.*,
   605 F. App'x 20 (2d Cir. 2015) ..........................................................................13

*Cohn v. KeySpan Corp.*,
   713 F. Supp. 2d 143 (E.D.N.Y. 2010) ..................................................................5

*Crosland v. City of N.Y.*,
   140 F. Supp. 2d 300 (S.D.N.Y. 2001)....................................................................7

*Curto v. Edmundson*,
   392 F.3d 502 (2d Cir. 2004)..................................................................................4

*Davis-Bell v. Columbia Univ.*,
   851 F. Supp. 2d 650 (S.D.N.Y. 2012).................................................................19

*Dechberry v. N.Y.C. Fire Dep't*,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ...........................................................19, 27

*Delaney v. Farley*,
   No. 14-cv-4529, 2015 U.S. App. LEXIS 14932 (2d Cir. Aug. 25, 2015) ................4

*Deluca v. AccessIt Group, Inc.*,
   695 F. Supp. 2d 54 (S.D.N.Y. 2010)......................................................................5

*Donahue v. Asia TV USA Ltd.*,
   208 F. Supp. 3d 505 (2016) .........................................................................12, 20

*Evans v. City of N.Y.*,
   No. 00-cv-4197 (BSJ), 2003 WL 22339468 (S.D.N.Y. Oct. 14, 2003)...........14, 29

*Faragher v. City of Boca Raton*,
   524 U.S. 775 (1998)...............................................................................................9

*Fincher v. Depository Tr. & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010).....................................................................21, 22, 30

*Fleming v. MaxMara*,
   371 F. App'x 115 (2d Cir. 2010) ......................................................................7, 12

*Fordham v. Islip Union Free Sch. Dist.*,
   662 F. Supp. 2d 261 (E.D.N.Y. 2009) ....................................................................8

*Gaffney v. City of N.Y.*,
   101 A.D.3d 410 (1st Dep't 2012) .........................................................................30

iv

*Gonzalez v. N.Y.C. Health & Hosp. Corp.*,
    No. 18-cv-2645 (JPO), 2019 WL 2435622 (S.D.N.Y. June 11, 2019)...................................30

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001)..........................................................................................9

*Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*,
    No. 16-cv-4897 (AT) (JCF), 2017 WL 2258374 (S.D.N.Y. May 22, 2017) ..........................10

*Heba v. N.Y. State Div. of Parole*,
    537 F. Supp. 2d 457 (E.D.N.Y. 2007) .................................................................................18

*Isbell v. City of N.Y.*,
    316 F. Supp. 3d 571 (S.D.N.Y. 2018)........................................................................... passim

*Katz v. Beth Israel Med. Ctr.*,
    No. 95-cv-7183, 2001 WL 11064 (S.D.N.Y. Jan. 4, 2001) ....................................................30

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
    716 F.3d 10 (2d Cir. 2013)............................................................................................21, 27

*Kleehammer v. Monroe Cty.*,
    743 F. Supp. 2d 175 (W.D.N.Y. 2010) ................................................................................24

*La Porta v. Alacra, Inc.*,
    142 A.D.3d 851 (1st Dep't 2016) .........................................................................................30

*Lambert v. Macy's E., Inc.*,
    No. 25547/05, 2010 WL 8434889 (Sup. Ct. N.Y. Cty. Apr. 30, 2010)...................................32

*Lebowitz v. N.Y.C. Dep't of Educ.*,
    No. 15-cv-2890, 15-cv-5548 (LDH) (ST), 2017 U.S. Dist. LEXIS 50950
    (E.D.N.Y. Mar. 31, 2017) ............................................................................................. passim

*Lebowitz v. N.Y.C. Transit Auth.*,
    252 F.3d 179 (2d Cir. 2001).................................................................................................27

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015)......................................................................................10, 16, 26

*Lopez v. City of N.Y.*,
    No. 14-cv-3285, 2016 U.S. Dist. LEXIS 72145 (E.D.N.Y. June 2, 2016) .............................28

*Lucio v. N.Y.C. Dep't of Educ.*,
    575 F. App'x 3 (2d Cir. 2014) ..............................................................................................26

*Luka v. Bard College*,
    263 F. Supp. 3d 478 (S.D.N.Y. 2017)...............................................................................9, 10

*MacAlister v. Millenium Hotels & Resorts*,
   No. 17-cv-6189 (ER), 2018 WL 5886440 (S.D.N.Y. Nov. 8, 2018)......................................14

*Maines v. Last Chance Funding, Inc.*,
   No. 17-cv-05453 (ADS) (ARL), 2018 U.S. Dist. LEXIS 162073
   (E.D.N.Y. Sept. 21, 2018)....................................................................................................20

*Manalov v. Borough of Manhattan Cmty. Coll.*,
   952 F. Supp. 2d 522 (S.D.N.Y. 2013)..................................................................................18

*Marcus v. Leviton Mfg. Co., Inc.*,
   661 F. App'x 29 (2d Cir. 2016) ...........................................................................................14

*Martin v. MTA Bridges & Tunnels*,
   610 F. Supp. 2d 238 (S.D.N.Y. 2009)..................................................................................27

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*,
   715 F.3d 102 (2d Cir. 2013)......................................................................................... passim

*Mitchell v. Am. Online, Inc.*,
   286 F. Supp. 2d 325 (S.D.N.Y. 2003)..................................................................................13

*Mooney v. City of N.Y.*,
   No. 18-cv-328 (DLC), 2018 WL 4356733 (S.D.N.Y. Sept. 12, 2018)..................................28

*Morris v. Schroder Capital Mgmt. Int'l*,
   481 F.3d 86 (2d Cir. 2007)..................................................................................................29

*Ndremizara v. Swiss Re Am. Holding Corp.*,
   93 F. Supp. 3d 301 (S.D.N.Y. 2015)....................................................................................15

*Nielsen v. Rabin*,
   746 F.3d 58 (2d Cir. 2014)....................................................................................................3

*Palomo v. Trs. of Columbia Univ.*,
   No. 03-cv-7853, 2005 U.S. Dist. LEXIS 14428 (S.D.N.Y. July 20, 2005)...........................31

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
   633 F.3d 81 (2d Cir. 2011)..................................................................................................24

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)..................................................................................................9

*Pedrosa v. City of N.Y.*,
   No. 13-cv-01890 (LGS), 2014 WL 99997 (S.D.N.Y. Jan. 9, 2014).....................................24

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004)..................................................................................17, 30, 31

*Pouncy v. Advanced Focus LLC*,
No. 15-cv-6260 (JMF), 2017 U.S. Dist. LEXIS 156414
(S.D.N.Y. Sept. 25, 2017) ................................................................................16

*Pungitore v. Barbera*,
506 F. App'x 40 (2d Cir. 2012) .......................................................................27

*Racker v. St. Bonaventure Univ.*,
No. 04-cv-00125C, 2005 WL 1522797 (W.D.N.Y. June 28, 2005) ....................................14

*Rein v. Esper*,
No. 16-cv-7359 (KMK), 2018 U.S. Dist. LEXIS 32960
(S.D.N.Y. Feb. 27, 2018) ...................................................................................5

*Reynoso v. All Foods, Inc.*,
908 F. Supp. 2d 330 (E.D.N.Y. 2012) ...............................................................26

*Rhagavendra v. Trs. of Columbia Univ.*,
No. 06-cv-6841 (PAC) (HBP), 2008 WL 2696226 (S.D.N.Y. July 7, 2008) ..........................18

*Richard v. N.Y.C. Dep't of Educ.*,
No. 16-cv-957 (MKB), 2017 WL 1232498 (E.D.N.Y. Mar. 31, 2017) ..................................17

*Shaw v. McDonald*,
No. 14-cv-5856 (NSR), 2015 U.S. Dist. LEXIS 164972
(S.D.N.Y. Dec. 8, 2015) ....................................................................................17

*Shomo v. City of N.Y.*,
579 F.3d 176 (2d Cir. 2009) ................................................................................5

*Short v. Deutsche Bank Sec., Inc.*,
79 A.D.3d 503 (1st Dep't 2010) .....................................................................30, 31

*Shultz v. Congregation Shearith Isr. of the City of N.Y.*,
867 F.3d 298 (2d Cir. 2017) ..............................................................................30

*Simon v. City of N.Y.*,
No. 17-cv-9575, 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ...........................................9, 10

*Smith v. AVSC Int'l, Inc.*,
148 F. Supp. 2d 302 (S.D.N.Y. 2001) ...............................................................20

*Solviev v. Goldstein*,
104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...............................................................19

*Sosa v. N.Y.C. Dep't of Educ.*,
368 F. Supp. 3d 489 (E.D.N.Y. 2019) ...............................................................29

*Sotomayor v. City of N.Y.*,
    862 F. Supp. 2d 226 (E.D.N.Y. 2012) ...................................................................16

*Stetson v. NYNEX Serv. Co.*,
    995 F.2d 355 (2d Cir. 1993)...................................................................................30

*Thompson v. Lamprecht Transp.*,
    39 A.D.3d 846 (2d Dep't 2007)..............................................................................31

*Trujillo v. City of N.Y.*,
    No. 14-cv-8501 (PGG), 2016 U.S. Dist. LEXIS 194168
    (S.D.N.Y. Mar. 29, 2016) ......................................................................................18

*VanZant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996)....................................................................................24

*Veleanu v. Beth Israel Med. Ctr.*,
    No. 98-cv-7455 (VM), 2000 WL 1400965 (S.D.N.Y. Sept. 25, 2000) ...................11

*Weinstock v. Columbia Univ.*,
    224 F.3d 33 (2d Cir. 2000)....................................................................................24

## STATUTES

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ....................................... passim

New York Executive Law §§ 290, 296................................................................................... passim

NYC Admin. Code § 8-107 .................................................................................................... passim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*.................................. passim

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.......................... passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

## PRELIMINARY STATEMENT

In this litigation eight plaintiffs assert twenty five claims for relief alleging

discrimination, retaliation, unfair pay practices and breach of contract against Mount Sinai

Health System, Inc. and four current and former members of its staff.  Despite the extraordinary

length of the Amended Complaint (889 paragraphs and 190 pages), nearly half the claims are

subject to dismissal because they are either time-barred or do not assert plausible claims, or

both.[1]  Defendants therefore move to dismiss Counts 1, 2, 3, 4, 7, 8, 13, 17, 18, 19, 20, 21 and 22

of the Amended Complaint[2] because plaintiffs have not pled actionable claims for harassment,

discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

*et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et

seq.* ("ADEA"), the New York State Human Rights Law, Executive Law § 290, *et seq*.

("NYSHRL"), the New York City Human Rights Law, NYC Admin. Code § 8-107

("NYCHRL") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

("Title IX").

As a preliminary matter, there is no individual liability under Title VII or Title IX.

Plaintiffs' claims under these statutes as pled against the individual defendants and based on

theories of individual liability, must therefore be dismissed.

Plaintiffs Holly Atkinson's and Natasha Anushri Anandaraja's claims are time barred

because neither of them has alleged unlawful conduct during the three-year statute of limitations

---

[1] Defendants have simultaneously filed herewith a Motion to Strike the extraneous and scandalous allegations in the Amended Complaint because it is dominated by extraneous and scandalous allegations that have no relation to the claims for relief asserted and are included solely to harass and embarrass defendants.  For purposes of these motions only, defendants necessarily assume the truth of the allegations without conceding that any of the plaintiffs' claims have merit and, indeed, the allegations are demonstrably false.

[2] All citations to the Amended Complaint (Dkt. 30) are denoted herein as "Compl."

period applicable to discrimination claims under the NYSHRL, the NYCHRL and Title IX, or the 300 day period for filing claims with the Equal Employment Opportunity Commission ("EEOC") under the ADEA and Title VII. Even if their claims were timely, their age discrimination claims would still fail because the allegations in the Amended Complaint, including two comments about hiring younger staff and use of the term "legacy," are insufficient to support claims of disparate treatment or hostile work environment based on age.

Similarly, Humale Khan's claims for race, religion, and national origin discrimination fail because the allegations in the Amended Complaint do not come close to meeting the threshold for pleading a discriminatory hostile work environment based on any of the alleged protected categories. Khan claims that three allegedly offensive comments were made to him over an eighteen month period. Those comments were not directly related to a protected category and they do not provide a basis for a hostile work environment claim under Title VII or New York law. Khan's retaliation claims also fail because the purported retaliatory conduct that Khan complains of—that defendant Prabhjot Singh breached an alleged promise of confidentiality—cannot possibly constitute a materially adverse employment action, as is required under Title VII and the NYSHRL, or conduct reasonably likely to deter a person from engaging in protected activity under the NYCHRL. Khan's retaliation claims must therefore be dismissed.

Mary Caliendo's gender discrimination claims should also be dismissed because she does not allege *any* purportedly harassing conduct with a nexus to her gender. Indeed, her allegations concern generic criticisms or clashes in management style, and Caliendo does not even attempt to connect that conduct to her gender, other than through conclusory statements. Caliendo similarly does not allege that she was treated differently from male employees. Her gender discrimination claims do not meet the minimal pleading requirements and should be dismissed.

2

Amanda Misiti's retaliation claims warrant dismissal because she has not met her burden of establishing a nexus between her complaint and the alleged retaliatory conduct. More than five months transpired between Misiti's complaint and the alleged expansion of her role and denial of her request for a pay raise. This lengthy gap in time necessarily means that neither of those actions can possibly constitute retaliatory conduct under applicable law.

Finally, none of the plaintiffs have pled allegations that would support a claim for constructive discharge. It is well-settled that criticisms of an employee's work performance and banter among colleagues fall far below the high threshold of "intolerable" conduct necessary for a constructive discharge claim. Plaintiffs therefore may not seek relief under a "constructive discharge" theory.

## **LEGAL STANDARD**

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, the court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "This standard demands 'more than a sheer possibility that a defendant has acted unlawfully.' [] Plausibility ... depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action

3

and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 582 (S.D.N.Y. 2018) (Broderick, J.) (internal citations omitted). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

## ARGUMENT

### I.   ATKINSON'S AND ANANDARAJA'S GENDER AND AGE DISCRIMINATION CLAIMS ARE TIME-BARRED (COUNTS 1, 2, 3, 4, 17, 18, 19, 20)

The claims by plaintiffs Atkinson and Anandaraja are based on conduct that occurred more than three years before this suit was filed and more than 300 days before plaintiffs filed charges with the EEOC. The claims thus are barred by the statute of limitations. Counts 1, 2, 3, 4, 17, 18, 19 and 20 should therefore be dismissed.

Discrimination claims under Title IX, the NYSHRL, and the NYCHRL are all subject to a three-year statute of limitations. *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004), *cert. denied*, 545 U.S. 1133 (2005); *Delaney v. Farley*, No. 14-cv-4529, 2015 U.S. App. LEXIS 14932, *2 (2d Cir. Aug. 25, 2015). That period runs from the moment of the discriminatory act. *Id*. Discrimination claims brought under the ADEA and Title VII must be filed with the EEOC within 300 days of the alleged discriminatory act to be timely. *Adams v. N.Y. State Educ. Dept., et al*, No. 08-cv-5996(VM)(AJP), 2010 WL 624020, *32 (S.D.N.Y. Feb. 23, 2010) ("Title VII … and the ADEA require claimants to file a charge of discrimination with the EEOC … within 300 days of the alleged discriminatory employment action; claims for acts that occurred more than

4

300 days before the filing are time-barred in federal court.") (citing 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 12117(a)).

Plaintiffs simultaneously filed their EEOC Charges of Discrimination and the initial Complaint on April 26, 2019. (Baumgarten Decl. Exs. A, B.)[3]  For Atkinson's and Anandaraja's Title VII and ADEA claims to be timely, they must allege acts that occurred within the 300 days preceding their filing.  For their NYS and NYC HRL claims to be timely, they must allege at least one discriminatory act after April 26, 2016.  Their failure to satisfy either limitations period warrants dismissal of their claims. *See Shomo v. City of N.Y.,* 579 F.3d 176, 181 (2d Cir. 2009).

Atkinson began working at Mount Sinai in October 2006. (Compl. ¶ 119.)  In "April 2016" Atkinson gave two weeks' notice of her resignation, with her last day of employment April 29, 2016. (Compl. ¶ 188; Baumgarten Decl. Ex. A.)  The "culmination" and last incident of alleged discriminatory treatment was "in early 2016" during Atkinson's "presentation of her strategic plan for the Human Rights Program," when Singh allegedly "insulted" Atkinson and "touched [her] upper thigh." (Compl. ¶¶ 186-187.)  No discriminatory acts are alleged between "early 2016" and her resignation in "April 2016."  Nor does Atkinson plead that the

---

[3] Attached as Exhibits A and B to the Declaration of Joseph Baumgarten are true and exact copies of the Charges of Discrimination Atkinson and Anandaraja filed with the EEOC on April 26, 2019.  The EEOC Charges filed by the plaintiffs are integral to the newly filed claims of discrimination and harassment under Title VII and the ADEA because those statutes require plaintiffs to exhaust their administrative remedies prior to filing a litigation in federal court.  These records may be considered on a motion to dismiss because they are "integral" to the amended complaint and "incorporated by reference." *Deluca v. AccessIt Group, Inc.*, 695 F. Supp. 2d 54, 59-60 (S.D.N.Y. 2010).  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."); *Cohn v. KeySpan Corp.,* 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010) ("[S]ince the EEOC charge is a public document filed in an administrative proceeding, and is integral to [the] plaintiff's ADA claims, the charge, together with the documents accompanying the charge filed in the EEOC proceeding, are also properly considered on this motion [to dismiss]".). *See also, Rein v. Esper,* No. 16-cv-7359 (KMK), 2018 U.S. Dist. LEXIS 32960, at *13 (S.D.N.Y. Feb. 27, 2018) ("The Court undoubtedly may take judicial notice of public documents filed in relation to Plaintiff's EEOC proceedings, including the relevant EEO Notice.").

discriminatory treatment by Singh continued past "early 2016." In fact, the discriminatory acts pled to support Atkinson's claims all occurred "immediately" or "soon" after Singh's hire in April 2015 (Compl. ¶¶ 120, 121, 148, 213), including: during Singh's first official visit as Director designate on "April 7, 2015" (Compl. ¶¶ 115-120, 179); on "June 19, 2015," when Singh allegedly called Atkinson to tell her that her salary would be reduced (Compl. ¶ 185); in the "summer" of 2015,[4] when Atkinson's job title was changed to Program Director (Compl. ¶ 182); or "early 2016," when Atkinson made a presentation for the Human Rights program which Singh allegedly found to be underwhelming (Compl. ¶ 186). None of these allegations fall within the limitations period.

The same is true for Anandaraja's claims. Anandaraja joined Mount Sinai in January 2008 and resigned effective June 30, 2016. (Compl. ¶¶ 191, 229.) The alleged discriminatory conduct about which she complains allegedly occurred in 2015, well outside the limitations period. The allegations focus on the period "soon after [Singh] was hired" (Compl. ¶ 121) and "in his beginning days" (Compl. ¶ 211), including: on "May 18, 2015," when Anandaraja presented her proposed budget to Singh which he found to be "useless" (Compl. ¶ 212); on "June 17, 2015," when Singh allegedly stated he wanted to hire investigators who were "ideally younger" during a presentation to AIGH's Board of Advisors (Compl. ¶ 141); in the "summer" of 2015, when Anandaraja's job title was changed to Program Director (Compl. ¶ 145); and on September 17, 2015, when Singh told Anandaraja over the phone that he would reduce the budget for her global health educational programs by 60 percent (Compl. ¶ 214).

---

[4] Singh extended an offer of employment to Dr. Abdulrahman M. El-Sayed, one of his colleagues from Columbia University. (Compl. ¶ 125.) However, "by the summer of 2015" El-Sayed declined Mount Sinai's offer "after deciding to take a job in Michigan." (Compl. ¶ 128.) According to the Amended Complaint, it was during the same time that Singh extended the offer of employment to El-Sayed that he allegedly changed Atkinson's and Anandaraja's titles.

Plaintiffs cannot overcome these fatal flaws by alleging that "[a]fter Anandaraja told Singh she was leaving, he did not let up on his bullying," or that "[o]n one of Anandaraja's final days at AIGH," she and Atkinson attended a meeting during which "Berman and Kishore dominated the discussion … without giving Atkinson or Anandaraja any opportunity to speak." (Compl. ¶¶ 223, 224.)  Generalized statements and allegations that do not rise to the level of discriminatory treatment are not sufficient to save her otherwise time-barred claims.  *See*, *Isbell v. City of New York*, 316 F.Supp. 3d 571, 586 (S.D.N.Y. 2018) (a plaintiff must identify at least one discriminatory act within the statute of limitations); *Fleming v. MaxMara*, 371 F. App'x 115, 119 (2d Cir. 2010).  Indeed, in a complaint in which the plaintiffs have described every event in excruciating detail, the absence of any allegation of a discriminatory act by Singh or Charney within the limitations period is particularly glaring and cannot be excused or overlooked.  For these reasons, Counts 1, 2, 3, 4, 17, 18, 19 and 20 should be dismissed.[5]

## II.    THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII AND TITLE IX

Plaintiffs assert claims for individual liability against Singh, Charney and Silva with respect to all claims pled against each defendant.  There is no individual liability for claims brought under Title VII or Title IX. *See Wrighten v. Glowski*, 232 F.3d 119 (2d Cir. 2000) ("individuals are not subject to liability under Title VII"); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds" but "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals"); *Kraft v. Yeshiva Univ.*, No. 00-cv-4899, 2001 WL 1191003, at *5

---

[5] Atkinson's and Anandaraja's time-barred claims cannot be salvaged by the continuing violation doctrine (which is not asserted) because they did not allege that the time-barred acts were part of a discriminatory policy or practice.  "The doctrine has generally been limited to situations where there are specific policies or mechanisms, such as discriminatory seniority lists or employment tests." *Crosland v. City of N.Y.*, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001), *aff'd,* 54 F. App'x 504 (2d Cir 2002).

(S.D.N.Y. Oct. 5, 2001) ("The overwhelming weight of authority holds that Title IX causes of action may not be successfully asserted ... against individual faculty members or other employees of the recipient.")  Accordingly, all claims for individual liability brought against the individually named defendants under Title VII and Title IX should be dismissed as a matter of law.

III.    **STANDARD OF REVIEW FOR HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT CLAIMS UNDER TITLE VII, ADEA, NYSHRL, NYCHRL**

Plaintiffs assert a combined total of nineteen claims for relief alleging hostile work environment and disparate treatment under the ADEA, Title VII, the New York State and New York City Human Rights Laws.  As part of this motion, defendants move to dismiss nearly half of those claims based on the legal standards summarized below.  For efficiency, we summarize the applicable legal standards before discussing (in Points IV-VI) the particular deficiencies in these claims.

A.    **Hostile Work Environment**

To state a claim for hostile work environment under Title VII, the ADEA and the NYSHRL, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boomalert v. City of N.Y.,* 721 F. App'x 29, 33 (2d Cir. 2018), *citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1995).  A plaintiff must "show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively believes is hostile or abusive; and (3) creates such an environment because of the plaintiff's age." *Fordham v. Islip Union*

8

*Free Sch. Dist.*, 662 F. Supp. 2d 261, 271 (E.D.N.Y. 2009).  *See, Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (same analysis for Title VII claims).  Plaintiffs must allege "factual circumstances that permit the inference that [they were] subjected to a hostile work environment because of [their protected characteristic.]"  *Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001). Isolated acts alone, unless very serious, are also not sufficient.  *Lebowitz v. N.Y.C. Dep't of Educ.*, No. 15-cv-2890, 15-cv-5548 (LDH) (ST), 2017 U.S. Dist. LEXIS 50950, at *43 (E.D.N.Y. Mar. 31, 2017).  The U.S. Supreme Court and Circuit Courts of Appeals have made clear that conduct "must be extreme to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

"[] NYCHRL claims must be analyzed separately and independently from federal and state discrimination claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.*, 715 F.3d 102, 113 (2d Cir. 2013).  Under the NYCHRL, a plaintiff must allege that she was treated "less well" because of a protected characteristic.  *Simon v. City of N.Y.*, No. 17-cv-9575, 2019 WL 916767, at *4 (S.D.N.Y. Feb. 14, 2019).  Although both the NYSHRL and NYCHRL are intended to protect against severe conduct, "they are not intended to promote or enforce civility, gentility or even decency."  *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 579, 604 (S.D.N.Y. 2011) (NYSHRL, NYCHRL are not intended to serve as a general civility code)).  Accordingly, pleadings that allege "[p]etty slights and trivial inconveniences" are insufficient to withstand a motion to dismiss.  *Lebowitz* at *46.

### B.    <u>Disparate Treatment</u>

To survive a motion to dismiss a disparate treatment discrimination claim under Title VII, the ADEA and the NYSHRL, a plaintiff must allege that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and

(4) action took place under circumstances giving rise to an inference of discrimination.  *Luka v. Bard College*, 263 F. Supp. 3d 478, 484-85 (S.D.N.Y. 2017), *citing Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).  For an age discrimination claim, a plaintiff also must plausibly allege "that age was the but-for cause of the employer's adverse decision."  *Luka*, 263 F.Supp.3d at 484, *quoting Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).  To successfully plead a claim under the NYCHRL, a plaintiff must establish that she was treated "less well" as a result of the protected characteristic.[6]  *Simon v. City of N.Y.*, No. 17-cv-9575, 2019 WL 916767, at *4 (S.D.N.Y. Feb. 14, 2019).

**IV.    ATKINSON'S AND ANANDARAJA'S AGE DISCRIMINATION CLAIMS WOULD HAVE TO BE DISMISSED EVEN IF THEY WERE TIMELY (COUNTS 17, 18, 19, 20)**

Atkinson and Anandaraja allege that Singh, Charney and Mount Sinai discriminated against them on the basis of their age, stating that they are in their "60's" and "40's" respectively.  Even assuming their claims are not time-barred, Atkinson's and Anandaraja's age discrimination claims fail because the three comments alleged do not establish a hostile work environment and plaintiffs have not alleged facts sufficient to support a claim that they were subjected to discriminatory treatment based on their age.

**A.    Atkinson And Anandaraja Have Not Sufficiently Pled Age-Based Hostile Work Environment Claims Under The ADEA, NYSHRL And NYCHRL**

Atkinson and Anandaraja identify only the following comments as the basis for their claim that Defendants Charney, Singh and Mount Sinai subjected them to a hostile work environment based on their age:  (1) Singh's references to Atkinson and Anandaraja as "legacy"

---

[6] "Courts … have recognized that '[u]nder the NYCHRL, there are not separate standards for "discrimination" and "harassment" claims.'" *Grimes-Jenkins v. Consol. Edison Co. of N.Y., Inc.*, No. 16-cv-4897 (AT) (JCF), 2017 WL 2258374, at *8 n.12 (S.D.N.Y. May 22, 2017) (quoting *Johnson v. Strive E. Harlem Emp't Group*, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)).

employees (Compl. ¶ 6); (2) a comment allegedly made by Singh in June 2015 that he hoped "to populate AIGH with a team of investigators who were 'ideally young, in their twenties and thirties'" (Compl. ¶ 141); and (3) a comment by El-Sayed in the spring of 2015 that he was excited to have a "young" team and to "not have to work with anyone over 40." (Compl. ¶¶ 150, 212). The rest of Atkinson's and Anandaraja's allegations amount to nothing more than their contention that Singh criticized their work, or was difficult to work with. (Compl. ¶ 208.) Under the ADEA, NYSHRL and NYCHRL (*see supra* Sec. III A, p. 8), plaintiffs' allegations are insufficient to state a claim for hostile work environment based on age.

The term "legacy" is repeated numerous times throughout the Amended Complaint (thirty-eight times, to be exact). Although plaintiffs portray the word "legacy" as a reference to age, the context in which it was used (as described in the Amended Complaint) makes clear that it referred to the "projects," "initiatives," "activit[ies]," "work" and "staff" that existed at the Institute before Singh's arrival. (See Compl. ¶¶ 118, 120.) And, as alleged in the Amended Complaint, it was Singh's decision as to whether to maintain those projects after his appointment or "to dismantle the existing work of the Institute, erase its legacy and start de novo so that anything AIGH now did would be seen as his brainchild." (Compl. ¶ 118.) Nothing in the Amended Complaint plausibly supports the suggestion that the term "legacy" referred to age. *See Veleanu v. Beth Israel Med. Ctr.*, No. 98-cv-7455 (VM), 2000 WL 1400965, at *4 (S.D.N.Y. Sept. 25, 2000) (plaintiff's ADEA claim dismissed where alleged derogatory remarks were age-neutral and not connected to adverse employment action).

Even under the more lenient NYCHRL standard, plaintiffs fall far short of establishing a hostile work environment based on age as the three allegedly age-related comments that they complain of do not rise above the level of "petty slights and trivial inconveniences." Nor do they

11

suggest that Atkinson and Anandaraja were treated "less well" because of their age. Counts 17, 18, 19 and 20 should therefore be dismissed. *See Fleming v. MaxMara*, 371 F. App'x 115, 118–19 (2d Cir. 2010) (affirming dismissal of race discrimination claim when plaintiff alleged a single racist comment, and her other allegations of a difficult work environment, including defendants' excessive criticism of her work, refusal to answer her questions, arbitrary imposition of duties outside of her responsibilities, and rude emails, were insufficient to establish a severe or pervasive hostile work environment); *Carter v. Verizon*, No. 13-cv-7579, 2015 WL 247344, at *9 (S.D.N.Y. Jan. 20, 2015) (dismissing complaint where plaintiff failed to connect any of the alleged harassing conduct—snide remarks, shoulder touches, failures to say "good morning," or observations of plaintiff's work performance—to his age, and comment about wanting "new blood" did not give rise to an inference of age discrimination). [7]

### B. Atkinson And Anandaraja Have Not Sufficiently Pled Disparate Treatment Claims Under The ADEA, NYSHRL And NYCHRL

The age discrimination disparate treatment claims that Atkinson and Anandaraja assert against Singh, Charney and Mount Sinai fail because plaintiffs have not alleged facts showing age animus related to adverse action, as is required under the ADEA, NYSHRL and NYCHRL.

#### 1. Neither Atkinson Nor Anandaraja Allege Any Adverse Employment Actions

To establish a claim for disparate treatment, a plaintiff must allege an adverse employment action, which is a "materially adverse change in the terms and conditions of

---

[7] Similarly, Singh's alleged comment to Misiti in March 2018 that he wanted to replace Walek, who had left AIGH, with someone "younger" (Compl. ¶¶ 354, 355) cannot support a hostile work environment claim as to Atkinson and Anandaraja, because they were not present – or even working in AIGH – when that comment was allegedly made. *See Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505 (2016) (dismissing NYSHRL hostile work environment claims as insufficient, in part, because "plaintiff does not have a viable hostile work environment claim where that plaintiff is not the target of harassment, is not present for any harassment, and has no knowledge of the harassment while it is ongoing.")

employment." *Boonmalert v. City of N.Y.*, 721 F. App'x 29, 32 (2d Cir. 2018). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*, *quoting Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). Atkinson's and Anandaraja's failure to identify a single act that would constitute an adverse employment action is fatal to their claims.

First, the only adverse employment actions that plaintiffs allege in the Amended Complaint—the alleged increase in Atkinson's work hours from part-time to full-time which effectively resulted in a pay decrease, and both plaintiffs' alleged "demotions" and constructive discharge—all occurred more than three years before the filing of the initial complaint, and therefore outside the statute of limitations period. (*See, supra,* Sec. I, p. 4)*.* A discrimination complaint fails to state a claim when it does not "plausibly allege that Plaintiff suffered an adverse employment action during the limitations period." *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015). Counts 17 and 19 of the Amended Complaint should be dismissed for this reason alone.

Second, neither plaintiff has met the high burden of pleading a claim for constructive discharge, as set forth below in Section VIII, *infra* p. 29. Therefore, their purported "constructive discharge" cannot constitute an actionable adverse employment action.

Third, even if the change in Atkinson's and Anandaraja's titles from "Director" to "Program Director" is not a time-barred discrete act, this minor change is not actionable because "[a] change in job title without any change in duties, compensation, benefits or reporting structure is not an 'adverse employment action.'" *Mitchell v. Am. Online, Inc.*, 286 F. Supp. 2d 325, 327 (S.D.N.Y. 2003), *citing McGuire v. U.S. Postal Serv.*, 749 F. Supp. 1275, 1282-83 (S.D.N.Y. 1990). In *Mitchell*, the Court held that a minor change in title from "Inventory

Coordinator" to "Shipping and Receiving Clerk" did not constitute an adverse employment action. *See also Racker v. St. Bonaventure Univ.*, No. 04-cv-00125C, 2005 WL 1522797 (W.D.N.Y. June 28, 2005); *Evans v. City of N.Y.*, No. 00-cv-4197 (BSJ), 2003 WL 22339468 (S.D.N.Y. Oct. 14, 2003).  Here, plaintiffs do not assert that the change in title was accompanied by any material changes in their working conditions.  They allege the opposite— that "their official job description did not change" (Compl. ¶ 145) and that Anandaraja's title was changed "without changing her responsibilities."  (Compl. ¶ 218.)   Indeed, even Atkinson admits that the change in her title "appear[s] small." (*Id.*).  The changes in plaintiffs' titles from Director to Program Director do not constitute adverse employment actions, and therefore, their NYSHRL disparate treatment claims must be dismissed.

        2.    <u>The Amended Complaint Does Not Allege That Age Was The "But For" Cause Of Any Adverse Decision, Or Any Circumstances Giving Rise To An Inference Of Discrimination</u>

Plaintiffs also do not allege any circumstances giving rise to an inference of discrimination, or that the purported "adverse employment actions" that they allegedly suffered would not have occurred "but for" age discrimination, as required under the NYSHRL and the ADEA.  Atkinson's contract only guaranteed her compensation of $150,000 for one year, and Atkinson has not alleged any connection between the non-renewal of her contract (and "effective[]" reduction in compensation) and her age, let alone that her age was the "but for" cause.  (Compl. ¶¶ 180, 181.)  Plaintiffs have similarly not alleged any facts even suggesting that the changes in their titles from "Director" to "Program Director" would not have happened but-for their ages.  Dismissal is warranted in these circumstances. *See Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29 (2d Cir. 2016); *MacAlister v. Millenium Hotels & Resorts*, No. 17-cv-6189

14

(ER), 2018 WL 5886440 (S.D.N.Y. Nov. 8, 2018); *Akinsanya v. N.Y.C. Health & Hosps. Corp.*,

No. 16-cv-3332 (VEC) (KNF), 2017 WL 4049246, at *7 (S.D.N.Y. July 27, 2017).[8]

Because plaintiffs have not pled a connection between any purportedly adverse action

and their ages, their disparate treatment age discrimination claims must be dismissed.

## V.    KHAN'S RACE, RELIGION AND NATIONAL ORIGIN DISCRIMINATION AND RETALIATION CLAIMS SHOULD BE DISMISSED (COUNTS 21, 22)

Humale Khan, the only male plaintiff in this action, alleges that during his employment

with Mount Sinai, he was subjected to a hostile work environment as a result of his religion, race

and national origin, and then retaliated against after he made a complaint to Singh. Khan's

claims are subject to dismissal because the comments he alleges would not (even if made)

constitute a severe or pervasive work environment or establish that Khan was treated less well

because of a protected characteristic. Moreover, Khan's allegations are insufficient to state a

plausible claim that he was retaliated against for engaging in protected activity. Counts 21 and

22 should therefore be dismissed.

### A.    Three Alleged Comments Are Neither Severe Nor Pervasive Enough To Plead A Hostile Work Environment Under Title VII Or The NYSHRL And Should Be Dismissed

Khan cites only three innocuous comments over a period of eighteen months to support

his hostile work environment claims. These scant allegations are woefully insufficient. Under

Title VII and the NYSHRL, a hostile work environment claim exists when "the workplace is

---

[8] Although plaintiffs allege that Singh "picked young men for prominent positions" without consulting with them (Compl. ¶ 145), they do not allege that they had applied for those positions, or that Singh replaced them with young men, or that the terms or conditions of their employment were materially changed by virtue of the hire of these alleged younger employees. There can be no inference of discrimination based on these allegations. *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 304 (S.D.N.Y. 2015) (dismissing ADEA claim based on the sole allegation that "many…candidates selected or hired by [defendant] were younger or less qualified than [plaintiff]" without any supporting factual allegations that would warrant the conclusion that defendant's failure to hire him occurred under circumstances from which a discriminatory motivation can be inferred.)

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Incidents that are episodic and not "sufficiently continuous and concerted" are not pervasive enough to support a hostile work environment claim.  *Pouncy v. Advanced Focus LLC*, No. 15-cv-6260 (JMF), 2017 U.S. Dist. LEXIS 156414, at *14 (S.D.N.Y. Sept. 25, 2017), *aff'd,* 763 F. App'x 134 (2d Cir. 2019).   Allegations of conduct amounting to "[p]etty slights and trivial inconveniences" are insufficient to withstand a motion to dismiss. *Lebowitz* at *46.

In assessing hostile work environment claims under the NYSHRL and Title VII, courts look at allegations in their totality, considering frequency of conduct, severity, whether the conduct is physically threatening or humiliating, whether the conduct interfered with plaintiff's work performance, or whether the conduct was merely an offensive utterance. *Littlejohn*, 795 F.3d at 321.  Three isolated comments over nearly a year and a half of employment are neither frequent nor severe enough to establish a hostile work environment claim under Title VII or the NYSHRL.  *See also Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 162 (2d Cir. 2013), (citing *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

Khan cites three alleged comments in support of his hostile work environment claim:  (i) "it smells like shit in here" in reference to Khan's office; (ii) "it smells like curry in Khan's office"; and (iii) "Humale said he's out praying, but he's probably out interviewing." (Compl. ¶ 424.)  Only one of those comments references religion (indirectly and without disparagement of his religion) and none of them refer to Khan's race or national origin.  Three non-descript comments over a period of eighteen months is not severe or pervasive conduct sufficient to meet

16

the pleading standard under Title VII or the NYSHRL. *See Trujillo*, at *37, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, No. 10-cv-8486 (GBD) (THK), 2011 U.S. Dist. LEXIS 153493, at *35-36 (S.D.N.Y. Nov. 10, 2011).

Moreover, remarks that are more akin to "[s]imple teasing" and "offhand comments" do not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). Khan alleges that Silva made two comments concerning Khan's smell, but he does not even try to explain how allegations of smell are related to race or national origin. *Richard v. N.Y.C. Dep't of Educ.*, No. 16-cv-957 (MKB), 2017 WL 1232498 (E.D.N.Y. Mar. 31, 2017) (dismissing hostile work environment claim where allegations do not contain any explicit or implicit reference to a protected characteristic and Plaintiff has not otherwise alleged how the acts are connected to any of the protected classes to which he belongs).

Notwithstanding plaintiffs' failure to plead the necessary causal connection, two comments concerning an individual's smell, without any reference to a protected category, is insufficient to establish a hostile work environment. In *Shaw v. McDonald*, No. 14-cv-5856 (NSR), 2015 U.S. Dist. LEXIS 164972, at *11-12 (S.D.N.Y. Dec. 8, 2015), Judge Roman dismissed a hostile work environment claim where the plaintiff alleged four sporadic comments in support of his religious discrimination claim, including, "I didn't know you were a Muslim," "Who do I think you are? Malcolm X," "everyone likes your work but not your opinions" and an unspecified comment complaining about the smell of plaintiff's food. The Court found that the allegations were "simply insufficient to draw any reasonable, plausible inference of discrimination based on religion," including the plaintiff's failure to provide any detail as to how the comment about the smell of plaintiff's food relates to religious discrimination.

17

Other courts have also denied claims that (like Khan's) rest on less than a handful of comments that are, at most, tangentially related to a protected category.  *See*, *Rhagavendra v. Trs. of Columbia Univ.*, No. 06-cv-6841 (PAC) (HBP), 2008 WL 2696226, at *8 (S.D.N.Y. July 7, 2008) (comment from co-worker about the smell of plaintiff's Indian food and two "racist jokes" were insufficient to plead hostile work environment); *See also Addo v. N.Y. Health & Hosps. Corp.,* No. 15-cv-8103 (RA), 2017 U.S. Dist. LEXIS 176916, at *4, 14 (S.D.N.Y. Oct. 25, 2017) (granting summary judgment on hostile work environment claim where plaintiff alleged three remarks, including a defendant telling plaintiff to "do something about that smell" and asking if people of "your kind uses commercial soap or herbal soap."); *Heba v. N.Y. State Div. of Parole*, 537 F. Supp. 2d 457, 467 (E.D.N.Y. 2007) (granting summary judgment as to hostile work environment claim where defendant said he "smell[ed] a camel behind him," referring to the Egyptian plaintiff).

We note that plaintiffs attempt to bolster Khan's three allegations with conclusory and ambiguous statements such as that Silva "went after Khan" and "criticized Khan for not drinking."  (Compl. ¶ 424.)  These additional allegations do not relate to a protected category; nor do they bridge the gap between Khan's scant allegations and the pleading standard. Similarly unavailing, is plaintiffs' use of the term "frequently" to describe what appear to be two discrete occurrences.  See, *Trujillo v. City of N.Y.*, No. 14-cv-8501 (PGG), 2016 U.S. Dist. LEXIS 194168, at *38-39 (S.D.N.Y. Mar. 29, 2016), *aff'd*, 696 F. App'x 560 (2d Cir. 2017) ("non-specific" assertions of discriminatory animus are insufficient to show hostile work environment); *Manalov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 527 (S.D.N.Y. 2013) (Title VII claim dismissed where plaintiff failed to allege that defendant

referred to his race or gender and instead made conclusory allegations that he "felt the hostility

of his professors towards him because of his sex").

    **B.**    <u>**Khan's Hostile Work Environment Allegations Fail Even Under The More**</u>
           <u>**Lenient NYCHRL Standard**</u>

Even under the more lenient NYCHRL standard, Khan's hostile work environment

claims fail because he cannot demonstrate that Defendants treated him "less well than others," at

least in part, based on his religion, race or national origin. *Lebowitz v. N.Y.C. Dep't of Educ.*,

No. 15-cv-2890 (LDH) (ST), 2017 U.S. Dist. LEXIS 50950, at *31-32 (E.D.N.Y. Mar. 31,

2017).

Similar to the standard that governs claims brought under Title VII and the NYSHRL,

stray remarks and off-hand comments are insufficient to establish a hostile work environment,

unless the comments "substantially interfere with or impair [plaintiff's] ability to do his job."

*Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012). In *Solviev v.

Goldstein*, 104 F. Supp. 3d 232, 241, 250 (E.D.N.Y. 2015), Judge Kuntz found that comments

such as, "oh another Ruskee," "you Russians are taking over everything," and "Russians get

everything handed to them" were insufficient to meet the liberal pleading requirements for

national origin discrimination claims brought under NYCHRL.

Here, allegations of three discrete comments over a period of eighteen months (with, at

most, a tangential connection to Khan's religion, race and/or national origin), do not state a claim

that Khan was treated "less well" because of a protected characteristic. Moreover, Khan's

allegation that Silva's alleged comments made him "self-conscious" and "anxious" do not rise to

the level of "substantial interference," as required to state a claim under the NYCHRL. At most,

what Khan has pled is co-worker discord, which does not rise to the level of a hostile work

environment claim. *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 157–158

19

(E.D.N.Y. 2015) (dismissing NYCHRL hostile work environment claim where race-based comments were the result of "conflicts with [] colleagues" and "coworker discord").

## C.    Plaintiffs Cannot Aggregate Other Allegations Of Discrimination To Bolster Khan's Claims

For the reasons stated above, the three comments Khan puts forth as evidence of discrimination are insufficient to establish a hostile work environment claim.  To cure this pleading defect, plaintiffs improperly rely upon Khan's interactions with other plaintiffs and non-plaintiffs, and their own alleged discriminatory encounters.  However, Courts will not aggregate allegations across protected classes where doing so would "catapult [] a claim across the line between merely offensive conduct and conduct sufficient to establish a hostile work environment."  *Maines v. Last Chance Funding, Inc.*, No. 17-cv-05453 (ADS) (ARL), 2018 U.S. Dist. LEXIS 162073, at *29-30 (E.D.N.Y. Sept. 21, 2018).  Where the alleged discriminatory comments are "patently inadequate," the Court will not allow a plaintiff to use allegations of one type of harassment to sustain claims alleging another type of harassment.  *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 515-516 (S.D.N.Y. 2016).

In *Donahue*, the plaintiff pled only two isolated comments made directly to him about his nationality.  The Court refused to aggregate statements made about Donahue's co-workers in other protected classes because such allegations "cannot transform [an] insufficient pleading into a sufficient one."  *Id*.; *see also Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 311 (S.D.N.Y. 2001) (dismissing a hostile work environment claim where plaintiff alleged in graphic detail acts of harassment against women and minority employees, but failed to allege specific acts discriminating against individuals in his protected class).

**D.** **Khan's Retaliation Claims Under Title VII, NYSHRL And NYCHRL Should Be Dismissed**

Khan alleges that he reported Silva's alleged discriminatory comments to Singh in October 2017 and that Singh then "thanked Khan for his complaint, told him he would keep his involvement confidential, and work towards finding a solution." (Compl. ¶ 427.) He also alleges that, in a subsequent conversation with Silva, the latter's "demeanor made it clear that Singh had told him that Khan had complained about Silva." (Compl. ¶ 429.) Khan's retaliation claims fail because his allegations do not establish an adverse action; nor has he pled conduct likely to deter a person from engaging in protected activity.

To successfully plead a retaliation claim under Title VII and the NYSHRL a plaintiff must plausibly allege that "(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). An action is only "material" if the resulting harm is significant, not trivial. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*. 715 F.3d 102, 112 (2d Dir. 2013). *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *Brown v. Montefiore Med. Ctr.*, No. 18-cv-03861 (PGG) (KHP), 2019 U.S. Dist. LEXIS 78915, at *26 (S.D.N.Y. May 8, 2019) (actions causing a plaintiff embarrassment or anxiety are not material) (citing *Miksic v. TD Ameritrade Holding Corp.*, No. 12-cv-4446 (AJN), 2013 Dist. LEXIS 63254, at *9-10 (S.D.N.Y. Mar. 7, 2013).

The NYCHRL applies a slightly different test, i.e., the plaintiff must show that the employer engaged in conduct that was "reasonably likely to deter a person from engaging in [the] protected activity." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d

Cir. 2010).[9]  Adverse actions must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Brown v. Montefiore Med. Ctr.*, 2019 U.S. Dist. LEXIS 78915, at *26 (S.D.N.Y. May 8, 2019) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Khan has not alleged that he suffered an adverse action that would be reasonably likely to cause a person to be deterred from opposing discriminatory conduct.  Therefore, his retaliation claim fails under Title VII, the NYSHRL and the NYCHRL.

First, assuming that Singh did in fact promise "confidentiality," the Amended Complaint does not establish a plausible basis to conclude that Singh violated that promise by telling Silva about Khan's comments.  The inference that Khan supposedly drew from Silva's "demeanor" is completely speculative.

Second (and in any event), even assuming that Singh did tell Silva about Khan's comments, the Amended Complaint does not plausibly allege that doing so constituted a "breach" of his alleged promise of "confidentiality."  As noted above, the Amended Complaint alleges that Singh told Khan that he would "work towards finding a solution."  It would have been perfectly logical (and not at all retaliatory) for Singh to tell Silva about Khan's concerns in order to "work towards finding a solution" while otherwise keeping Khan's concerns confidential.  Absent other evidence of retaliatory intent, the facts alleged cannot establish that Singh acted unlawfully.

In fact, there are no allegations that suggest retaliatory intent.  The allegations in the Amended Complaint are exactly to the contrary.  As Khan's manager, Singh could have taken

---

[9] In *Fincher*, the Second Circuit observed that "[t]he functional difference, if any, between the CHRL standard and that used for federal and state retaliation claims has never been fully articulated."

22

(or threatened to take) adverse action against Khan in retaliation for his complaint about Silva. But there is no allegation of any adverse personnel action or any threat by Singh to take such action.  The Amended Complaint alleges that Singh's response to Khan's complaint was to say that he would work towards finding a solution.  Later, when Khan told him that Silva's behavior had not improved, Singh told him:  "I'm here to help you figure out how to work with him.  We all know how he is.  Let's try to find a solution on how to work with him." (Compl. ¶ 430.) Nothing about Singh's alleged statements or actions ties his conduct to any retaliatory animus.

Third, the Amended Complaint fails to allege that Singh "engaged in conduct that was reasonably likely to deter a person from engaging in [the] protected activity."  *Mihalik,* 715 F.3d 102, 112 (2d Cir. 2013).  In fact, the Amended Complaint alleges that after the conversation in which Silva supposedly intimated that Singh had told him about the complaint, Khan "was not frightened or deterred" and that he again complained to Singh about Silva's conduct.  (Compl. ¶ 430.)  Clearly, Khan was not deterred from engaging in protected activity.

Plaintiffs' failure to allege a single materially adverse action resulting from Khan's protected activity or Khan's deterrence as a result of Singh's alleged breach of confidentiality, warrants dismissal of Khan's retaliation claim under the federal, city and state human rights laws (Count 22).

## VI.    CALIENDO'S ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT CLAIMS (COUNTS 7, 8)

### A.    Caliendo's Hostile Work Environment Allegations Fall Short Under Title VII, NYS And NYC Human Rights Law, Title IX

Caliendo alleges that she was subjected to both a hostile work environment and disparate treatment because of her gender based on Singh's management style and an isolated incident

during which Berman yelled at her for missing a deadline.  Caliendo's allegations fall woefully short of the pleading requirements.

Caliendo worked at Mount Sinai from November 2015 to August 2017.  (Compl. ¶¶ 376, 397.)  Caliendo filed her Charge of Discrimination with the EEOC on April 26, 2019, more than 300 days after the last alleged incident of discrimination.  (Baumgarten Decl. Ex. C).  Caliendo's failure to timely file a charge with the EEOC warrants dismissal of her Title VII claim.  *See VanZant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996) (a plaintiff's failure to file a timely EEOC charge requires dismissal of Title VII claims as time-barred)*.

Claims brought under Title IX undergo the same analysis as Title VII and the NYSHRL.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003) ("The identical standards apply to employment discrimination claims brought under Title VII, Title IX, New York Executive Law § 296..."); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  Accordingly, Caliendo's hostile work environment claims fail because the alleged harassment was not severe or pervasive; nor has she pled facts plausibly alleging unequal treatment based on her gender.  *Pedrosa v. City of N.Y.*, No. 13-cv-01890 (LGS), 2014 WL 99997 (S.D.N.Y. Jan. 9, 2014).

The Second Circuit has held that because "[every person] can be characterized by sex…" and "many bosses are harsh, unjust, and rude," "personnel decisions that lack a linkage or correlation to [sex]" "must be excluded from consideration" when assessing a hostile work environment claim.  *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). "[R]arely will a single incident [of sex discrimination] amount to a basis for a hostile work environment." *Kleehammer v. Monroe Cty.*, 743 F. Supp. 2d 175, 184 (W.D.N.Y. 2010).

The allegations underlying Caliendo's hostile work environment claims concern complaints of management style, not gender. Caliendo alleges that Singh was "unpredictable," would often "change his work hours" and "leave the office without telling anyone." Singh "regularly canceled meetings and ignored e-mails, especially from women," as he was preoccupied with "pleasing and impressing his boss, Charney." (Compl. ¶ 378.) In fact, the only allegations that concern Singh and that are specific to Caliendo include that Singh allegedly told her that she "talk[ed] too much" and instructed her not to speak to others at the Institute. (Compl. ¶ 380.) Singh also allegedly told Caliendo to "slow down" so she would not make "so many mistakes" after she failed to timely send-out the Institute's yearly report. (Compl. ¶¶ 380, 393.)

Caliendo alleges no nexus between Singh's comments and her gender. The passing reference Caliendo makes to Singh ignoring emails "especially from women" does not save her claim as she has not alleged that he ignored *her* emails, and such a trivial slight could not establish a hostile work environment. *See Lebowitz v. N.Y.C. Dep't of Educ.*, No. 15-cv-2890 (LDH) (ST), 2017 U.S. Dist. LEXIS 50950, at *31-32 (E.D.N.Y. Mar. 31, 2017) ("[p]etty slights and trivial inconveniences" insufficient to withstand motion to dismiss.) Caliendo's allegations amount to two performance-related concerns coupled with complaints about a supervisor's management style, none of which have any nexus to gender, and all of which are insufficient to meet the severe or pervasive standard. *See Isbell v. City of N.Y.,* 316 F. Supp. 3d 571 (S.D.N.Y. 2018) (Broderick, J.) (heavy scrutiny, harsh criticism of plaintiff's work, baseless discipline for "imagined or exaggerated infractions" and making plaintiffs attend corrective interviews were insufficient to state a claim for hostile work environment).

Caliendo's allegations with respect to her treatment by Berman suffer the same flaws. The only "evidence" plaintiffs cite in support of a hostile work environment is his alleged

tracking of Caliendo's time and the one incident that allegedly involved Berman "screaming" at Caliendo after learning that the Institute's Annual Report was sent out late. (Compl. ¶¶ 380-390.) Just as with her descriptions of Singh, Caliendo does not allege a nexus between Berman's comments and her gender.  Nor does she allege facts supporting a claim that Berman yelled at her because of her gender.  These two discrete episodes, which encompass all of the alleged discriminatory treatment by Berman, even if true, do not establish a claim for hostile work environment.  *See Littlejohn v. City of N.Y.,* 795 F.3d 297, n.10 (2d Cir. 2015) (allegations that supervisor distanced herself from plaintiff, increased her reporting schedule, wrongfully and unnecessarily reprimanded her, became noticeably impatient, got red in the face and used harsh tones with plaintiff, could not support a hostile work environment claim).

Even under the more lenient NYCHRL standard, Caliendo's hostile work environment claims are subject to dismissal because she has failed to allege facts that would demonstrate that the unequal treatment was based on her gender.  *See Lucio v. N.Y.C. Dep't of Educ.,* 575 F. App'x 3 (2d Cir. 2014).  Without any evidence that Singh or Berman treated Caliendo differently because of her gender, her Title VII, Title IX, NYSHRL and NYCHRL claims fail as a matter of law.

**B.    Caliendo's Disparate Treatment Allegations Fall Short Under Title VII, NYSHRL, NYCHRL And Title IX**

Caliendo's disparate treatment claims fare no better.  Plaintiffs' failure to plead facts that show that defendants "intentionally discriminated against her on the basis of [] gender" is fatal to her claim under Title VII and the NYSHRL.  *Reynoso v. All Foods, Inc*., 908 F. Supp. 2d 330, 337 (E.D.N.Y. 2012) (citing *Leibowitz v. Cornell Univ*., 584 F.3d 487, 498 (2d Cir.2009)).  *Id*. at 338.  Under the NYCHRL Caliendo's claims fail because she cannot show "she has been

treated less well than other employees because of her gender." *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 593 (S.D.N.Y. 2018). Counts 7 and 8 should therefore be dismissed.

As detailed above, Caliendo asserts no facts that would show that Singh or Berman subjected her to criticism about her work performance or other mistreatment because of her gender. Caliendo's failure to make even this minimal showing warrants dismissal of Counts 7 and 8.[10] *See Pungitore v. Barbera*, 506 F. App'x 40, 43 (2d Cir. 2012) (court dismissed Title IX claim and held that while certain comments were "undoubtedly unprofessional," they did not "show more than the slimmest possibility" that they were motivated by gender; facts which are "merely consistent" with the defendant's liability "hardly establishes a plausible inference of discrimination"); *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 150 (E.D.N.Y. 2015) ("[p]laintiff may not rely on the simple fact that she is female and part of a protected class to raise a triable case of sex discrimination…"); *see also Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 250 (S.D.N.Y. 2009) ("[A] plaintiff must do more than state that she is a member of a protected class who suffered an adverse employment action.").

## VII.    MISITI'S RETALIATION CLAIMS SHOULD BE DISMISSED (COUNT 13)

Misiti alleges claims for retaliation under Title VII, the NYSHRL, NYCHRL and Title IX. Under the pleading standards previously discussed, *see supra* Sec. II, p. 6, Misiti's claims fail because she did not suffer a "materially adverse action[,]" (*Kelly v. Howard I. Shapiro & Assocs.*, 716 F.3d 10, 14 (2d Cir. 2013)) or "conduct that was reasonably likely to deter a person from engaging in [the] protected activity" (*Mihalik,* 715 F.3d 102, 112 (2d Cir. 2013)). Five and

---

[10] To the extent Caliendo attempts to rely upon the allegations associated with other plaintiffs in this matter to establish her own hostile work environment claim, her efforts fail. The Second Circuit has made clear that a plaintiff does not have a viable hostile work environment claim where that plaintiff is not present for the harassment, and has no knowledge of the harassment while it is ongoing. *Lebowitz v. N.Y.C. Transit Auth.,* 252 F.3d 179, 190 (2d Cir. 2001).

a half months after Misiti allegedly made an anonymous complaint to Mount Sinai regarding her concerns about Singh, Singh allegedly "increas[ed] [her] workload without increasing her compensation while downgrading her job description." (Compl. ¶ 740.) Singh's alleged conduct does not establish a materially adverse action; moreover, the five month gap between Misiti's complaint and Singh's alleged retaliatory actions dispels any inference of a causal connection.

Misiti alleges that on May 16, 2018 she submitted an anonymous statement about her concerns with Singh to Mount Sinai as part of a larger investigation. (Compl. ¶ 368.) Yet, it was not until November 2018 that Singh allegedly "expanded her role," "asked [her] to re-write her job description" and denied her request for a pay raise. (Compl. ¶¶ 373-374.) Such a lengthy period of time between the protected activity and alleged retaliatory acts does not support the necessary inference of causation. *See Mooney v. City of N.Y.*, No. 18-cv-328 (DLC), 2018 WL 4356733, at *9 (S.D.N.Y. Sept. 12, 2018) (dismissing a NYCHRL retaliation claim because of a six month gap between the protected activity and the adverse employment action); *Lopez v. City of N.Y.*, No. 14-cv-3285, 2016 U.S. Dist. LEXIS 72145, at *25-26 (E.D.N.Y. June 2, 2016) (dismissal of Title VII and NYCHRL claims, stating that "courts in this circuit have consistently held that a time period of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation").

Furthermore, the three acts Misiti points to as evidence of retaliation are not material adverse actions, but rather the quintessential "mere inconveniences" that courts have routinely dismissed as insufficient to state a cause of action. *See, Boonmalert v. City of N.Y.*, 721 F. App'x 29, 32 (2d Cir. 2018), *quoting Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (to qualify as a material, adverse action, the change in working conditions "must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities'.") (internal citations

28

omitted); *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 518–521 (E.D.N.Y. 2019) (actions like shift changes, threats of conduct violations, and denied overtime were "[p]etty slights [and] minor annoyances" and not materially adverse actions).  Misiti alleges that after Berman's departure, Misiti was given his job responsibilities with respect to managing AIGH's contract with Panorama but without a pay raise, and that Singh asked her to edit her job description, for example, to change the word "leads" to "prepares" or "develops."  (Compl. ¶ 373.)  An increase in job responsibilities without additional compensation does not establish a material adverse action.  *Belle v. Zelmanowicz,* 305 A.D.2d 272 (1st Dep't 2003).  Similarly, assignment of a menial task, such as editing one's job description to lessen the responsibilities associated with the role, does not establish retaliation.  *See, Evans v. City of N.Y.*, No. 00-cv-4197 (BSJ), 2003 WL 22339468 (S.D.N.Y. Oct. 14, 2003) (minor changes in job responsibilities not an adverse action).  Count 13 should be dismissed.

## VIII.    PLAINTIFFS CANNOT ESTABLISH CONSTRUCTIVE DISCHARGE

Although not explicitly pled as a claim for relief, at least four plaintiffs allege that the discrimination and hostile work environments they allegedly endured while at Mount Sinai were so oppressive that they were constructively discharged from their employment. (Compl. ¶¶ 548, 582, 600, 674.)  Because plaintiffs cannot establish claims for constructive discharge, those claims should be dismissed and the Court should dismiss any claim for damages resulting from their resignations.

### A.    A Constructive Discharge Claim Carries A More Onerous Pleading Standard Than A Hostile Work Environment Claim

Constructive discharge occurs when an employer "deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 89 (2d Cir. 2007) (quoting *Pena v.*

*Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (internal quotation marks omitted));

*Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993).[11]  *See also, Short v. Deutsche*

*Bank Sec., Inc.* 79 A.D.3d 503, 504 (1st Dept. 2010) ("To establish a constructive discharge,

plaintiff was required to produce evidence that her employer 'deliberately created working

conditions so intolerable, difficult or unpleasant that a reasonable person would have felt

compelled to resign.'").  The burden of establishing constructive discharge is heavy, as the

standard is "higher than the standard for establishing a hostile work environment where, as here,

the alleged constructive discharge stems from the alleged hostile work environment."  *Gaffney v.*

*City of N.Y.*, 101 A.D.3d 410, 411 (1st Dep't 2012) (quoting *Fincher v. Depository Tr. &*

*Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010)).

A constructive discharge cannot be established simply through evidence that an employee

was dissatisfied with the nature of her assignments, that her working conditions were difficult or

unpleasant, or that her work had been unfairly criticized.  *Petrosino v. Bell Atl.*, 385 F.3d 210,

231 (2d Cir. 2004). *See, Anyachebelu v. Brooklyn Hosp. Ctr.*, No. 16-cv-3159, 2017 WL

9511073 (E.D.N.Y. July 20, 2017), citing *Stetson*, 995 F.2d at 360; *Katz v. Beth Israel Med. Ctr.*,

No. 95-cv-7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001); *La Porta v. Alacra, Inc.*, 142

A.D.3d 851, 852 (1st Dep't 2016).

---

[11] In cases brought under Title VII, the NYSHRL and NYCHRL, New York courts apply the Second
Circuit's constructive discharge standard and similarly require a plaintiff to allege facts sufficient to
support an inference that the defendant deliberately created working conditions so intolerable, difficult or
unpleasant that a reasonable person would have felt compelled to resign.  *See Shultz v. Congregation
Shearith Isr. of the City of N.Y.*, 867 F.3d 298, 308 (2d Cir. 2017); *Gonzalez v. N.Y.C. Health & Hosp.
Corp.,* No. 18-cv-2645 (JPO), 2019 WL 2435622 (S.D.N.Y. June 11, 2019); *Short v. Deutsche Bank Sec.,
Inc.*, 79 A.d.3d 503, 504 (1st Dept. 2010) (applying Second Circuit standard to NYSHRL and NYCHRL
claims).

The First Department's decision in *Short v. Deutsche Bank Sec., Inc.*, 79 A.D.3d 503 (1st Dep't 2010), is instructive as to the high burden a plaintiff must meet in order to demonstrate an "intolerable" working condition.  There, the First Department affirmed dismissal of the plaintiff's constructive discharge claim where she alleged that her manager created a "misogynistic culture," did not talk to her, criticized her unfairly, reassigned her most profitable sales accounts to men, and gave her a bonus that was lower than prior bonuses and less than the bonuses given to male employees who had been employed for less time than she had.  *Id.* at 503-504.  The First Department found that, as a matter of law, the plaintiff's complaints about the culture, unfair criticism, work assignments, and compensation did not rise to the level of an intolerable work environment that would lead a reasonable person to feel compelled to resign. *Id.* at 504.  *See also, Palomo v. Trs. of Columbia Univ.*, No. 03-cv-7853, 2005 U.S. Dist. LEXIS 14428, at *50-51 (S.D.N.Y. July 20, 2005), *aff'd*, 170 F. App'x 194 (2d Cir. 2006) (granting summary judgment as to constructive discharge claim based on allegations that plaintiff was denied an opportunity to travel, denied a vacation request, excluded from a meeting, unfairly criticized, and had job description and duties downgraded by the substitution of administrative responsibilities for supervisory ones); *Petrosino*, 385 F.3d 210 (affirming summary judgment on constructive discharge claim, where plaintiff alleged, *inter alia*, that coworkers and supervisors scrawled graffiti in her workplace depicting women, including her, engaging in sexual acts, made lewd remarks as to her body and menstrual cycle, cited her for minor infractions, required her to repeat assignments unnecessarily and denied her promotional and managerial opportunities); *Thompson v. Lamprecht Transp.*, 39 A.D.3d 846 (2d Dep't 2007) (affirming summary judgment as to constructive discharge claim where plaintiff alleged that male colleague repeatedly made derogatory remarks about women and punched her in the breast, and supervisors did not

adequately investigate or take remedial action); *Lambert v. Macy's E., Inc.*, No. 25547/05, 2010 WL 8434889, at *12 (Sup. Ct. N.Y. Cty. Apr. 30, 2010), *aff'd*, 84 A.D.3d 744 (2d Dep't 2011).

### B.    Plaintiffs Cannot Satisfy The Constructive Discharge Pleading Standard

Despite plaintiffs' efforts to portray the working conditions at Mount Sinai as "intolerable," their allegations fall short and fail to state a claim for constructive discharge as a matter of law.  In general, plaintiffs allege they were confronted with work "criticisms," a "tough guy management style," "dishonesty," "disparaging remarks about [their] appearance," "sexist remark[s]," and remarks about age, including use of the term "legacy staff" -- none of which would compel a reasonable person to resign.  (Compl. ¶¶ 9, 10, 121, 139.)  Specifically, with respect to Atkinson, plaintiffs allege:  Singh "exclud[ed] Atkinson from the Institute's plans and his decision making process," "treated her as if she w[as] a filing clerk," "lectured [her] condescendingly," reduced her salary by 40% and "excluded her from [] projects."  (Compl. ¶¶ 148, 154, 179, 180, 185.)  Singh "assigned [Atkinson] work that was far below her capabilities and level," "snapped at [Atkinson]," "stonewalled" her projects and "downgraded [her] title."  (Compl. ¶¶ 185, 145, 120.)  Atkinson's allegations, without more, do not meet the onerous standard of constructive discharge.

The same is true for Anandaraja.  With respect to Anandaraja's claims, plaintiffs allege that Singh referred to her as "legacy staff," gave her "harsh and cutting critiques" and called the training initiatives she had built "worthless."  (Compl. ¶¶ 207-208.)  Singh is alleged to have "yelled at Anandaraja, blamed her for setbacks on his initiatives, and cited her work product as "useless."  (Compl. ¶¶ 209, 211, 212.)  Anandaraja also claims that Singh "changed her title," "reduce[d] the budget for her global health education programs," threatened to terminate Anandaraja's field projects and then expressed "disappoint[ment]" in Anandaraja's inability to terminate employees after the budget had been cut.  (Compl. ¶¶ 214, 216-218.)  The personal

affront Anandaraja took from Singh's opinion of her work, does not establish a claim for constructive discharge.

With respect to Stella Safo, plaintiffs' allegations are contradictory at best. Singh "treat[ed] her condescendingly, and denigrat[ed] her in public," yet "routinely asked to do more and higher-level work than fit [her title], including attendance at "senior management meetings, hir[ing] and manag[ing] multiple staff and help[ing] design the Institute's programming." (Compl. ¶¶ 304, 306.) Singh allegedly told Safo she was "unintelligent," "useless," and ran her staff meetings like a "mother hen," and yet promoted her. (Compl. ¶¶ 308, 311.) Singh designated Safo as his "right-hand man" yet "made Safo feel invisible" by ignoring her comments and talking over her. (Compl. ¶¶ 303, 309.) Singh called Safo "unprofessional, divisive and insubordinate" and "too emotional." (Compl. ¶¶ 314, 316.) Singh would have "Safo rewrite draft after draft of documents because none was any good, then decide at the last minute that the first draft was fine," causing confusion and angst for her. (Compl. ¶ 318.)

Finally, with respect to Geraldine Llames, plaintiffs allege that Singh assigned her "low level administrative tasks" below her capabilities (Compl. ¶ 507) and that Berman "yelled" at her and other subordinates (Compl. ¶ 400). Llames alleges that she was subjected to sexual comments from Silva, such as "being wet," and derogatory comments about her appearance, including that she looked "rough" or "slutty." (Compl. ¶ 412-413.) Silva is alleged to have called Llames "crazy" and a "lazy bitch" to her colleagues, and to have made numerous comments about Llames' weight, about "being on her period" and that she looked like a "dyke." (Compl. ¶¶ 414-416.)

Plaintiffs' allegations amount to criticisms of their conduct and work performance, as well as inappropriate and/or lewd banter among colleagues. Because those allegations are

33

legally insufficient to state a constructive discharge claim, the Court should rule that plaintiffs are barred from seeking relief including loss of income under a "constructive discharge" theory.

<u>**CONCLUSION**</u>

For the reasons discussed above, Defendants request that the Court grant its Motion to Dismiss the claims denominated as Counts 1, 2, 3, 4, 7, 8, 13, 17, 18, 19, 20, 21 and 22 from the Amended Complaint.


Dated:  September 5, 2019
New York, New York                          Respectfully Submitted,

                                            **PROSKAUER ROSE LLP**

                                            */s/ Joseph Baumgarten*
                                            Bettina B. Plevan
                                            Joseph Baumgarten
                                            Edna D. Guerrasio
                                            Proskauer Rose LLP
                                            Eleven Times Square
                                            New York, NY 10036
                                            *Attorneys for Defendants*
                                            *Prabhjot Singh, Dennis S. Charney,*
                                            *Bruno Silva and Mount Sinai Health System, Inc.*