**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
DR. STELLA SAFO, *et al.*,

                                 Plaintiffs,                      <u>ORDER</u>

               -against-                               **19-CV-3779 (VSB) (JW)**

DR. PRABHJOT SINGH, *et al.*,

                                 Defendants.
-------------------------------------------------------------------X
**JENNIFER E. WILLIS, United States Magistrate Judge:**

      Between January and May 2025, the Parties filed six different letter motions detailing discovery disputes and six letter responses. <u>See</u> Dkt. Nos. 157, 160, 161, 164, 168–69, 176, 179, 182, 185–87. On May 6, 2025, this Court held oral argument on the first three letters and responses. Dkt. No. 188. Because Plaintiff filed three letters regarding other discovery disputes just days before the argument, the Court did not permit Plaintiffs to be heard on those disputes during oral argument. <u>Id.</u> at 3–4. Nonetheless, this Court discusses all six letters and responses in turn.

**A. Defendants' 1/7/25 motion to compel**

      On January 7, 2025, Defendants filed a letter motion to compel Plaintiffs to produce Dr. Ann Olivarius for a deposition. Dkt. No. 157. Defendants seek to depose Dr. Olivarius "on, among other subjects, her non-privileged communications with Plaintiffs and others prior to the formation of an attorney-client relationship, including her communications with donors and others at Mount Sinai concerning Singh and the allegations in the complaint, her purported personal inquiry into Singh, her decision not to proceed with the donation, her meetings with Singh, and

her public relations campaign against Singh, Mount Sinai and others—all of which occurred when she admittedly was not acting as Plaintiffs' counsel."[1] Id.

Defendants argue that "[t]here is no concern that Olivarius's deposition would implicate privileged communications or work product, as Defendants have repeatedly indicated they will not seek testimony regarding privileged communications between Plaintiffs on the one hand, and Olivarius or her firm on the other." Dkt. No. 157. Defendants also argue that Dr. Olivarius' current status as Plaintiffs' attorney cannot shield her from questioning given her knowledge and involvement in the underlying facts. Id. Rather, "the Second Circuit endorses a 'flexible approach' to lawyer depositions, where the court is to take into account all relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship, including 'the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.'" Id. (citing In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 72 (2d. Cir. 2003)).

Lastly, Defendants argue that "Olivarius cannot disavow representation of Plaintiffs prior to March 2019 to stave off a potential disqualification bid while now asserting privilege to escape discovery on that same time-period." Dkt. No. 157.

---

[1] The Parties often refer to Icahn School of Medicine at Mount Sinai as "ISMMS" or "Mount Sinai."

Plaintiffs counter that the deposition should be limited to Dr. Olivarius' direct communications with Dr. Singh before her retention as counsel or questioning of Dr. Olivarius should be restricted to written interrogatories.  Dkt. No. 160.

Plaintiffs argue that "Defendants do not and cannot meet the four-factor standard for deposing opposing counsel, as set forth in In re Friedman."  Dkt. No. 160.  First, Plaintiffs argue that the information sought can be achieved by deposing third parties.  Id.  Second, Plaintiffs argue "Defendants have not shown that Dr. Olivarius' role in this litigation is so unusual as to warrant a deposition" because the only non-privileged conversation she had was with Dr. Singh.  Id.  Third, Plaintiffs argue "[w]hatever she recalls of those preliminary conversations with then-potential clients would reveal her mental impressions and legal opinions, which are protected by both work product and attorney-client privilege."  Id.  Lastly, Plaintiffs argue, at that time of their January 17, 2025 letter, discovery was mostly concluded and all the individuals Defendants identified in their motion have already been deposed, giving them a full opportunity to explore their questions in those depositions.  Id.

As the Parties' correctly note, In re Friedman enumerates the factors to consider to determine whether opposing counsel may be deposed: (1) the need to depose opposing counsel; (2) opposing counsel's role in connection with the sought discovery and overall matter; (3) the risk of encountering privileged discovery during opposing counsel's potential deposition; and (4) the extent of discovery already conducted.  In re Friedman, 350 F.3d at 71–72 (Sotomayor, J.).

This Court finds that factor one weighs in favor of deposing Dr. Olivarius. While Plaintiffs argue any information regarding Dr. Olivarius can be obtained through other depositions, Defendants note that the extent of Dr. Olivarius' investigation and the identities of whom she spoke to prior to becoming counsel is still unknown. Dkt. No. 188 at 13–14. Defendants' will only know the full details of Dr. Olivarius' investigation—which Defendants' contend led to this litigation—by obtaining that information directly from her.

Factor two also weighs in favor of deposing Dr. Olivarius. Here, both Parties agree that Dr. Olivarius, in her capacity as a potential donor prior to being retained as Plaintiffs' counsel, met with Defendant Singh twice just days before an internal complaint was filed against him. Dkt. Nos. 157, 160. Defendants also note that one of the former Plaintiffs testified that she met with Dr. Olivarius before she filed an internal complaint against Defendant Singh. Dkt. No. 160. Defendants further note that another witness described that "the internal investigation and ensuing months were the start of a 'cascade of events [Olivarius] helped usher in.'" Id. While Plaintiffs claim "Dr. Olivarius has no personal knowledge as to why the [Arnhold Institute for Global Health ("AIGH")] internal investigation started or the underlying discriminatory conduct at issue in this litigation," there are allegations and there is deposition testimony concerning Dr. Olivarius' involvement, for nearly a year, as a fact witness. This warrants questioning.

Factor three also weighs in favor of deposing Dr. Olivarius. In 2019, Plaintiffs' counsel made multiple clear representations to Judge Broderick that, during the time

of these events, Dr. Olivarius was not acting as an attorney for former Plaintiffs Drs. Atkinson and Anandaraja. Dkt. No. 50. Most significant, Plaintiffs' counsel represented to Judge Broderick that none of the six factors for determining an attorney-client relationship could be satisfied at the time of those events. Dkt. No. 50 n.8. Despite those representations, astonishingly, Plaintiffs now claim that Dr. Olivarius "had preliminary discussions about her engagement [as Plaintiffs' attorney] before [March 2019] and she had been considering the dispute since the conclusion of the 2018 investigation." Dkt. No. 160.

Plaintiffs cannot change their stance of whether Dr. Olivarius was acting as, or in anticipation of becoming, Plaintiffs' attorney to now argue her recollection of those events is privileged. Doing so would, one way or another, create serious concerns that Plaintiffs' counsel made deliberate omissions or misrepresentations to the Court. Taking their initial representations as true, there is little risk that questioning Dr. Olivarius about the events before she became Plaintiffs' counsel will encounter privileged information.

Lastly factor four weighs neither in favor of nor against allowing the deposition of Dr. Olivarius. "Courts are often less likely to grant discovery against opposing counsel where the parties have already engaged in significant discovery." Carvana, LLC v. Int'l Bus. Machines Corp., No. 23-CV-8616, 2024 WL 4764540, at *3 (S.D.N.Y. Nov. 13, 2024) (quotation marks and citations omitted). Here, while significant discovery has taken place, Defendants moved to compel the deposition before the deadline of fact discovery. Moreover, expert discovery has not yet closed and the

Parties each have three outstanding discovery disputes that are the subject of this order. Thus, while significant discovery has taken place, much more discovery is likely still to come.

Considering all four factors, this Court concludes that Defendants may depose Dr. Olivarius. Therefore, Defendants' motion to compel the production of Dr. Olivarius is **GRANTED**. However, Defendants may not inquire about Dr. Olivarius' current representation of the Plaintiffs or any current mental impressions.

### B. Defendant's 1/28/25 motion for protective order

On January 28, 2025, Defendants filed a letter motion for a protective order concerning Plaintiffs' 30(b)(6) topics. Dkt. No. 161. Defendants argue that topics one, two, five, six, and seven are overbroad and should be narrowed. Id. Defendants also argue that time period of the topics is "overbroad and disproportional to the needs of the case." Id.

### i.    Relevant Time Period

Defendants note that Plaintiffs seek "testimony spanning a twelve-year period (January 1, 2012 to December 31, 2024), despite the fact that Plaintiffs' claims are based on events that occurred under Dr. Singh's leadership of AIGH, which began September 1, 2015 and concluded upon his resignation on July 3, 2019." Dkt. No. 161. Defendants request that the Court "limit all Notice testimony to the time period of April 3, 2014 (the date ISMMS first announced formation of AIGH) through July 3, 2019." Id.

6

Plaintiffs seek to expand Defendants proposed time-period to include two predating events: "Dr. Holly Atkinson's and Dr. Natasha Anushri Anandaraja's denied 2013 promotions to Associate Professor. The denials were discriminatory— two male academics were promoted instead." Dkt. No 164.

Defendants counter that "[n]either Dr. Atkinson nor Dr. Anandaraja are plaintiffs in this litigation and no current plaintiff has a claim premised on a faculty promotion, which, as Plaintiffs know, is a process that is handled separate and apart from other job promotions at ISMMS." Dkt. No. 161.

Expanding the time period, as proposed by Plaintiffs, to include testimony of persons not similarly situated to the Plaintiffs is not relevant and is disproportionate to the needs of this case. See Harriram v. City Univ. of New York, No. 22-CV-9712 (RA) (BCM), 2024 WL 4553906, at *3 (S.D.N.Y. Oct. 22, 2024) (collecting cases). As Defendants note, faculty promotions are a separate process and as Plaintiffs concede, the denied faculty promotions predate the formation of AIGH. See Dkt. No. 164. Plaintiffs' argument that the time period and scope should be expanded to help show an "overall discriminatory environment" is too broad. Thus, the relevant time period for discovery in this matter is the generally agreed up period from "April 3, 2014, when [AIGH] was announced, to July 3, 2019, when Defendant Dr. Prabhjot Singh stepped down from AIGH leadership roles." See Dkt. No. 164.

### ii.    Topic One

"Topic [One] seeks testimony of 'all policies, procedure[s], practices and/or codes of conduct applicable to staff and faculty' working at AIGH with regard to 19

subtopics." Dkt. No. 161. Defendants argue multiple subtopics are "ambiguous and irrelevant" to the discrimination claims at issue in this case. Id. Defendants instead are willing to provide testimony regarding the following AIGH polices or practices:

> (1) remote work; (2) recruitment procedures; (3) hiring procedures; (4) compensation decisions; (5) promotions; (6) bonuses; (7) anti-discrimination and anti-harassment policies; (8) retaliation policies; (9) performance evaluations; (10) expense reimbursement; and (11) HR complaint procedures.

Id.

Plaintiffs only oppose the protective order on Topic One in so far as original subtopics (g) "[c]hanges to titles, position descriptions, job duties and/or faculty ranks" and (o) "[o]ffice seating arrangements" should be included in the list of acceptable subtopics. Dkt. No. 164.

At oral argument, Defendants countered that AIGH's director Dr. Singh and AIGH's chief operating officer Dr. Knaup already provided testimony on subtopics (g) and (o). Dkt. No. 188 at 43–45. Plaintiffs countered that the sought testimony would not be duplicative because the prior testimony was inadequate on whether the relevant policies existed. Id. at 50.

"Under Federal Rule of Civil Procedure 26, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc., 593 F. App'x 32, 36 (2d Cir. 2014) (summary order) (citing Fed.R.Civ.P. 26(b)(1)) (internal quotation marks omitted). "Relevance to the subject matter under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter

8

that could bear on, any issue that is or may be in the case.'" <u>Id.</u> (citing <u>Oppenheimer</u>

<u>Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Given Plaintiffs' claims surround allegations of discrimination, the policies and

practices surrounding subtopics (g) and (o) are relevant.  Furthermore, this Court

does not find those two subtopics to be ambiguous.  Considering Plaintiff does not

object to the rest of the motion for a protective order regarding Topic One, the motion

is **GRANTED** in part and **DENIED** in part.  Topic One shall consist of Defendants

above-proposed list and subtopics (g) and (o).  However, Plaintiffs, as requested, may

only seek testimony regarding the existence of subtopic (o)—not its application to

individuals.  <u>See</u> Dkt. No. 188 at 50 ("So we are asking for the umbrella defendant

organization's view as to the existence of any policies regarding this topic.").

### iii.    Topic Two

Topic Two asks that a representative be deposed on:

> Knowledge of how all such policies, procedures and practices that fall
> under Topic 1 were applied, or not applied, to Dr. Holly Atkinson, Dr.
> Natasha Anandaraja, Mary Caliendo, Humale Khan, Dr. Stella Safo, Dr.
> Emilie Bruzelius, Amanda Misiti, Geraldine Llames, Dr. Prabhjot
> Singh, Dr. Abdulrahman El-Sayed, Dr. James Faghmous, and Dr.
> Sandeep Kishore (2014-2024)

Dkt. No. 161-1.  As a threshold matter, this Court set the relevant time period from

April 3, 2014, to July 3, 2019.  Accordingly, any request for discovery on Topic Two

outside of that time period is **DENIED**.

a. <u>Humale Khan</u>

The Parties Agreed to withdraw Mr. Khan from the list.  Therefore, Defendants motion for a protective order regarding Mr. Khan is **DENIED** as moot.

b. <u>Dr. Abdulrahman El-Sayed</u>

Defendants argue that Dr. El-Sayed never worked at ISMMS therefore his experiences bear no relevance on Plaintiff's claims. Dkt. No. 161.

Plaintiffs argue that "Dr. El-Sayed performed his role at ISMMS prior to his official start date: he attended AIGH's premises multiple times, represented himself as an incoming Associate Director at AIGH, and was involved in strategic planning for the Institute."  Dkt. No 164.

Plaintiffs fail to show how the application of most of AIGH's policies listed under Topic One when applied to non-employee Dr. El-Sayed are relevant to their claims.  However, to the extent Dr. El-Sayed was already hired as an incoming employee, Plaintiff may inquire about how the policies regarding recruitment procedures, hiring procedures, compensation decisions were or were not applied to Dr. El-Sayed.  Therefore, Defendants' motion for a protective order regarding Dr. El-Sayed is **GRANTED** in part and **DENIED** in part**.**

c. <u>Dr. Holly Atkinson, Dr. Natasha Anandaraja, and Mary Caliendo</u>

Defendants argue that these former Plaintiffs have been dismissed so their experiences are not relevant.  Dkt. No. 161.

Plaintiffs argue that Defendants' position on this issue is "baseless."  Dkt. No. 164 (citing <u>See</u> <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 570 (2d Cir. 2000) and <u>Leibovitz v. New York City Transit Auth.</u>, 252 F.3d 179, 190 (2d Cir. 2001)).

This Court has already determined that Dr. Atkinson and Dr. Anandaraja's 2013 faculty promotion denials are not relevant and disproportionate to the needs of this case.  <u>Supra</u> Section B(i) at 7.  Therefore, Defendants' motion for a protective order regarding Dr. Atkinson and Dr. Anandaraja is **GRANTED** to the extent Plaintiffs only seek testimony on the 2013 denials and otherwise **DENIED** as to how AIGH's policies or procedures may have been applied to them or Caliendo from 2014–2019.

    d.  <u>Dr. James Faghmous and Dr. Sandeep Kishore</u>

Defendants argue that both "are men, never complained of any discriminatory or retaliatory conduct, and supervised several Plaintiffs (and therefore, by definition, are not similarly situated)."  Dkt. No. 161.

Plaintiffs argue that "Dr. James Faghmous and Dr. Sandeep Kishore were male members of AIGH's senior leadership team alongside Plaintiff Dr. Stella Safo, a woman; they are relevant as they are her comparators."  Dkt. No. 164.

Given Dr. Faghmous and Dr. Kishore are identified comparators of Dr. Stafo, Defendants' motion for a protective order regarding Dr. James Faghmous and Dr. Sandeep Kishore is **DENIED**.

e. <u>Dr. Stella Safo, Dr. Emilie Bruzelius, Amanda Misiti, Geraldine Llames, Dr. Prabhjot Singh</u>

Defendants do not object to these witnesses.

### iv.    Topics Five and Six

Topic Five seeks testimony on:

> Knowledge of all employees and staff working at Mount Sinai Global Health and any other group that were integrated into AIGH, including each person's (2012-2015): a. Title(s) and faculty rank(s); b. Compensation; c. Job duties and responsibilities; d. Supervisor(s); e. Supervisee(s); f. Title(s) and faculty rank(s) that were equivalent in terms of approved compensation and/or bonus considerations; g. Hiring and onboarding; and h. Negotiations regarding any of the above.

Dkt. No. 161.

Defendants argue that "[s]ince none of the Plaintiffs worked in Mount Sinai Global Health, the testimony Topic Five seeks is wholly irrelevant to their claims." Dkt. No. 161.

Plaintiffs argue that "Dr. Singh's discriminatory treatment of staff who worked under the MSGH umbrella but transitioned into AIGH contributed to the hostile environment based on gender that Plaintiffs experienced." Dkt. No. 164.  They also argue its relevant because "the transition was not complete until many months into the agreed relevant time period; in the interim, the relevant employees and staff were organized under MSGH."  <u>Id.</u>

Topic Six seeks all the same subtopic information but with regard to "[k]nowledge of all employees and staff working at AIGH" from 2014–2024. Dkt. No. 161-1.

Defendants "offered to produce a list of all employees who worked in AIGH during the relevant time period, including their title and, where appropriate, faculty rank, and identification of each individual's supervisor." Dkt. No. 161. However, Defendants argue that the remaining subtopics "are vague, have no nexus to the pending claims and seek testimony on topics that would create a series of mini-trials within one (already elongated) litigation." Id.

Plaintiffs argue that the testimony sought is relevant and the relevance is evinced by the fact that "their own internal investigation into gender discrimination found them important." Dkt. No. 164.

Plaintiffs' request to have a 30(b)(6) designee educated to discuss all of the listed topics is overly burdensome. Therefore, Defendants' motion for a protective order regarding topics five and six is **GRANTED**. However, Defendants are to produce "a list of all employees who worked in AIGH during the relevant time period, including their title and, where appropriate, faculty rank, and identification of each individual's supervisor" as offered.

### v.    Topic Seven

Topic Seven seeks testimony on "[k]nowledge of all employees performing equal work requiring equal skill, effort and responsibility under similar working conditions as Dr. Bruzelius (2015-2019)."

Defendants argue that one, identifying comparators in Plaintiffs burden. Dkt. No. 161. And two, questions about skill, effort, and working conditions call for

opinion-based testimony which is better directed to Dr. Bruzelius supervisors—who were already deposed by Plaintiffs.  Id.

Plaintiffs say the organization "conducted an internal review of Dr. Bruzelius' job duties, titles and compensation to ensure appropriate classification and pay parity, at the end of which Dr. Bruzelius received a salary increase."  Dkt. No. 164. Thus, knowledge regarding that review is relevant to the pending claims.  Id.

Plaintiffs propose that they resubmit the topic as "[k]nowledge of ISMMS's review of Dr. Bruzelius' job duties, titles and compensation to ensure appropriate classification and pay parity."

Given "the Parties agreed to reconvene to agree on a different framing of Topic Seven" (Dkt. No. 164), Defendants' motion for a protective order regarding that topic is **DENIED** as moot and any dispute regarding Plaintiffs newly proposed question is not ripe for judicial intervention.

### C. Defendants' 2/25/25 motion to compel

On February 25, 2025, Defendants filed a letter motion to compel Plaintiffs to produce: "(1) text messages between plaintiffs and third-party witnesses purportedly withheld under the "common interest" doctrine; (2) statements authored by third-party witnesses and withheld as attorney work-product; and (3) communications between Plaintiffs' counsel and an unrepresented third-party withheld under attorney-client privilege."  Dkt. No. 168.

###### i.    Redacted Text Messages

The February 25th letter seeks to compel the production of seven redacted pages of WhatsApp text messages marked "Attorney-Client" for communications that occurred on or about August 16, 2018 between Ms. Rahona and Plaintiff Dr. Stella Safo, former plaintiffs Dr. Natasha Anandaraja and Dr. Holly Atkinson, and non-party Renee Bischoff.  Dkt. No. 168.

Plaintiffs argue that "[w]hen the text messages were exchanged, the five participants—three of whom were original Plaintiffs in this action—shared a common interest in pursuing a joint legal action to combat the hostile work environment they each endured while working for the Defendants."  Dkt. No. 169.  Thus, arguing that the common interest privilege protects the communications from being disclosed regardless of whether the non-parties ultimately joined this case as plaintiffs.  Id.

Defendants argue that because Ms. Rahona, in July of 2015, signed a general release waiving all legal claims against ISMMS, she cannot not have an identical legal interest with the others in the group exchanging messages in August of 2018. Dkt. No. 168.

"The common interest doctrine subsumes a number of principles that are sometimes characterized as separate rules and are at other times conflated into a single axiom."  Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) (collecting cases).  Like the uncertainty regarding its name, different courts have different opinions regarding which participants and which conversations the common interest doctrine covers. See United States v. Krug, 868

F.3d 82, 87 (2d Cir. 2017) (includes communications directly among the clients for the purpose of communicating with a privileged person such as the lawyer, agents of the client or of the lawyer who facilitate communications between the client and the lawyer, and agents of the lawyer who facilitate the representation); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) ("...communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."); Brunckhorst v. Bischoff, No. 21-CV-4362 (JPC), 2022 WL 2764020, at *2 (S.D.N.Y. July 15, 2022) ("The common interest doctrine covers situations like the one here: parties 'who reasonably anticipate that they will become colitigants.'"); BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co., No. 14-CV-09367 (JMF) (SN), 2018 WL 3584020, at *3 (S.D.N.Y. July 23, 2018) ("The common interest doctrine only shields communications between codefendants, coplaintiffs, or persons who reasonably anticipate that they will become colitigants."); HSH Nordbank AG New York Branch v. Swerdlow, 259 F.R.D. 64, 72 (S.D.N.Y. 2009) ("... it is immaterial that the confidential communications passed from Nordbank's counsel directly to the non-party lenders rather than passing from Nordbank or its counsel to the non-party lenders' attorneys.").

Generally, "the common interest doctrine permits the disclosure of a privileged communication without waiver of the privilege provided the party claiming an exception to waiver demonstrates that the parties communicating: (1) have a common legal, rather than commercial, interest; and (2) the disclosures are made in the course

of formulating a common legal strategy." <u>Sokol v. Wyeth, Inc.</u>, No. 07-CV-8442 (SHS) (KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008) (citing <u>Bank Brussels Lambert</u>, 160 F.R.D. at 447 (S.D.N.Y.1995). "The burden is on the party claiming protection to establish that the work-product doctrine applies." <u>Id.</u> "Although the distinction between a common legal, as opposed to commercial, interest is somewhat murky, a common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation, or have formed a coordinated legal strategy." <u>Obeid v. Mack</u>, No. 14-CV-6498 (LTS) (HBP), 2016 WL 7176653, at *3 (S.D.N.Y. Dec. 9, 2016) (internal quotation marks and citations omitted).

Here, Plaintiffs' claim that all five participants shared a "common interest in pursuing a joint legal action to combat the hostile work environment they each endured while working for the Defendants." Dkt. No. 169. However, this Court cannot fathom how such a position is possible when Ms. Rahona had already waived her right to pursue any common legal interest three years before the communications took place.

While a party need not ultimately hire a specific lawyer or become a co-party to those with a shared interest for the doctrine to apply (see <u>In re Lifetrade Litig.</u>, No. 17-CV-2987 (JPO) (KHP), 2022 WL 3644357, at *4 (S.D.N.Y. Aug. 24, 2022); <u>eShares, Inc. v. Talton</u>, No. 22-CV-10987 (JGLC), 2025 WL 936921, at *25 (S.D.N.Y. Mar. 27, 2025)), the doctrine cannot be so vastly expanded to include parties who, prior to the communications, are legally barred from pursuing a common claim. See <u>eShares,</u>

<u>Inc.</u>, 2025 WL 936921, at *25 ("Privileges should be narrowly construed and expansions cautiously extended.") (quoting <u>United States v. Weissman</u>, 195 F.3d 96, 100 (2d Cir. 1999)).  Therefore, the inclusion of Ms. Rahona, who Plaintiffs could not possibly share a common legal interest with, amounted to a waiver of any privilege that may have existed amongst the other participants.  Thus, Defendants motion to compel the redacted communications is **GRANTED**.  Defendants do not identify any other withheld documents aside from the redacted text messages.  Therefore, Defendants' additional request in the last sentence for "all statements she wrote and communications she had with MCO prior to representing her in September 2024" is **DENIED** as unripe for judicial intervention regarding any additional communication and Ms. Rahona's statement is discussed separately below.

### ii.    Third-party Statements

Defendants seek to compel production of the witness statements of Mr. Escosia, Ms. Rahona and Dr. Faghmous.  Dkt. No. 168.  Defendants state that testimony reveals that: (1) In 2019, Ms. Rahona, before she was represented by MCO, wrote a statement for the purpose of telling her story; (2)  Mr. Escosia "wrote and signed" an affidavit, currently in his possession, and previously shared it with Plaintiffs' counsel; and (3) Dr. James Faghmous drafted a document about how Dr. Singh had been "critical" of her and indicated she was "incompetent."  Dkt. No. 168.  Defendants assert two separate arguments in support of their motions to compel.  First, Defendants assert the documents are not privileged.  <u>Id.</u>  Second, Defendants assert

that any privilege that may have attached was waived.  Id.  This Court addresses each in turn.

        a.  Privilege

First, this Court turns to whether the documents were indeed privileged.  "A document will be protected if, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Schaeffler v. United States, 806 F.3d 34, 43 (2d Cir. 2015) (internal quotation marks and citations omitted).  This includes verbatim witness statements that do not reveal any mental impressions of counsel asserting the privilege.  Am. Oversight v. United States Dep't of Just., 45 F.4th 579, 590 n.13 (2d Cir. 2022).  Courts have also held that even the executed affidavits of non-party witnesses are attorney-work product until filed with the court. Steele v. CVS Pharmacy, Inc., No. 15-CV-4261 (JGK) (KNF), 2016 WL 1659317, at *1 (S.D.N.Y. Apr. 18, 2016); Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals, 272 F.R.D. 124, 125 (S.D.N.Y. 2011)

The party asserting work-product protection bears the burden of establishing its applicability. Steele, 2016 WL 1659317, at *1 (S.D.N.Y. Apr. 18, 2016) (citing In re Grand Jury Subpoena Dated July 6,2005, 510 F.3d 180, 183 (2d Cir. 2007). Mere conclusory or ipse dixit assertions will not carry the "heavy burden" of demonstrating the applicability of the privilege.  In re Grand Jury Subpoena Dated July 6,2005, 510 F.3d at 184.

Here, Plaintiffs' counsel states they interviewed various witnesses, and following those interviews, counsel requested that witnesses prepare a written statement in preparation of the current litigation.  Dkt. No. 169.  Consequently, Plaintiffs argue those statements are attorney-work product.  Id.

Defendants argue that any claim of attorney work product is without merit because testimony from the witnesses implies that the witness statements in question were not created in anticipation of litigation.  Dkt. No. 168.

A review of Dkt. No. 166-10, which Defendants cite for the argument that Ms. Rahona's statement was not attorney-work product, supports the opposite of Defendants' contention.  While Ms. Rahona does say the purpose of the statement was to tell her story, she also says she wrote the statement at the request of Plaintiffs' counsel.  166-10.  Therefore, as Plaintiffs' assert, the statement was prepared for and then obtained by counsel for the purpose of litigation.

As for Mr. Escosia, the submitted transcript excerpts do not reveal whether he was directly asked to write an affidavit for Plaintiffs' counsel.  However, the transcript excerpts do state that he only shared the affidavit with Plaintiffs' counsel, which supports Plaintiffs' argument that it was prepared at their request. Defendants' argument that he was not yet represented by Plaintiffs' counsel is immaterial as Rule 23(b)(3) protects documents prepared in anticipation of litigation and not only those created by but also created for the party asserting the protection. See Fed. R. Civ. P. 26(b)(3).  Thus, this document also is protected by attorney-work product.

Regarding Dr. Faghmous, it is unclear what exactly was recorded and for what purpose it may have been recorded. The attached transcript excerpt only reveals that Dr. Faghmous put statements "in a document." 166-13. Without more, this Court cannot determine if the statement was made or obtained for Plaintiffs' counsel in anticipation of litigation. Plaintiffs are ordered to provide a copy of the entire statement *ex parte* for in camera review **by August 8, 2025**.

### b. Waiver

Next, this Court determines whether Plaintiffs' failure to timely assert the privilege amounted to a waiver of the privilege. "Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the grounds of privilege, it must both expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Robinson v. De Niro, No. 19-CV-9156 (LJL) (KHP), 2022 WL 704922, at *2 (S.D.N.Y. Mar. 9, 2022) (internal quotation marks omitted) (citing Fed. R. Civ. P. 26(b)(5)(A)). "In addition, the Local Civil Rule specifies that the party must provide complete identifying information, date, type of document, and subject matter in a privilege log at the time the party responds to discovery." Id. Courts often only find a waiver where there is a "flagrant" violation of discovery rules. Robinson, 2022 WL 704922, at *4 (S.D.N.Y. Mar. 9, 2022); Pem-Am., Inc. v. Sunham Home Fashions, LLC, No. 03-CV-1377 (JFK) (RLE), 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007). Defendants argue that they asked for all documents

obtained from witnesses and Plaintiffs did not object to that request on the basis of any privilege, but failed to produce the above-mentioned statements.[2]  Dkt. No. 168.

Plaintiffs argue the short delay in asserting the privilege does not constitute a waiver.  Dkt. No. 169.  Plaintiffs also argue they "have never represented to Defendants that the witness statements were responsive to their requests consistent with their initial response, and Defendants have failed to show any prejudice caused by Plaintiffs' delay."  Id.

Here, Plaintiffs, without objection, indicated that they would respond to Defendants' general request for documents or communications obtained from witnesses when serving their initial responses dated May 17, 2022.  Dkt. No. 166-11.  On November 1, 2024, Defendants put Plaintiffs on notice that they were seeking the witness statements learned about in depositions that would be responsive to their document requests. Dkt. 166-1.  On December 12, 2024, Plaintiffs responded asserting attorney-work product privilege over the witness statements. Dkt. No. 166-2.  Given Plaintiffs' initial response that it would produce documents and communications obtained from witnesses relevant to this case, their argument that

---

[2] Defendants also argue that the witnesses affirmatively put the referenced statements at issue further waiving any protection.  Dkt. No. 168.  That argument is without merit.  In fact, it was Defendants who directly questioned two of the witnesses about whether any statements existed, and the third witness mentioned a document in response to indirect questioning.  See Dkt. Nos. 166-10 at 6–7; 166-12 at 3; 166-13 at 3–4.  Therefore, Plaintiffs did not make affirmative use of the statements when third-party witnesses answered Defendants questions—to which Plaintiffs promptly objected.  See In re Grand Jury Proc., 219 F.3d 175, 191 (2d Cir. 2000).

they never represented these specific witness statements are responsive is nonsensical.

However, Defendants only attach three pages of Plaintiffs' May 17, 2022, responses. Dkt. No. 166-11. Until provided an opportunity to view the entirety of the responses and the privilege log that is alleged to omit the witness statements, this Court reserves is decision on whether Plaintiffs' potential two-year delay in asserting the privilege or including the documents on a privilege log amounts to a waiver. Plaintiffs are ordered to provide the Court with a copy of the March 17, 2022 responses and their initial privilege log **by August 8, 2025.**

### iii.    Emails

"Plaintiffs' privilege log contains three entries for email correspondence between Plaintiffs' counsel and purported third-party Elizabeth Stern." Dkt. No. 168. "Defendants asked MCO whether they represent Ms. Stern, but they refused to respond." Id. Defendants assert that Plaintiffs offered to produce the emails "as long as [Defendants] agree not to use the fact of us disclosing them to you as a basis for any wider privilege waiver." Id. Defendants refused to agree to such. Id. Consequently, Defendants now seek to compel Plaintiffs to produce the emails. Id.

Plaintiffs argue that "the work product privilege attaches to all documents and tangible things created in anticipation of litigation and are not discoverable without a showing of substantial need for the materials or undue hardship in obtaining their substantial equivalent by less intrusive means." Dkt. No. 169. (citing Fed. R. Civ. P. 26(b)(3)(A)-(B)). Plaintiffs then argue that such privilege "unmistakably applies to

email communications made by or at the direction of attorneys with non-party witnesses concerning the subject matter of upcoming litigation." Id. (citing Howard Univ. v. Borders, No. 20-CV-4716 (LJL), 2020 WL 7774347, at *2 (S.D.N.Y. Dec. 30, 2020)).

At the May 6th oral argument, this Court ordered Plaintiffs to produce the emails in question to this Court for in camera review. Dkt. No. 188 at 102. On May 29, 2025, Plaintiffs produced the requested emails in both the redacted versions labeled "as produced," that were presumably produced to Defendants, and unredacted versions for this Court's review.

Discussed above, documents are protected "if, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Schaeffler, 806 F.3d at 43.

Upon review, the documents Bates stamped Atkinson, et al._000337 and Safo_007262 remain free of redactions except for the header (i.e., from, subject, date, to). So, Plaintiffs do not assert privilege over the document itself or the underlying contents, but wish to keep confidential the time and date on the forwarding headers. However, the unredacted version reveals that counsel in this matter was not a party to the email—in fact there is no recipient. Moreover, Plaintiffs make no argument as to how a blank forwarding header in any way was created in anticipation of litigation. Therefore, this Court cannot conclude the redacted header was created in anticipation of litigation or even involved counsel in this matter. See Noval Williams Films LLC

v. Branca, No. 14-CV-4711 (PAC), 2016 WL 7238960, at *3 (S.D.N.Y. Dec. 14, 2016) ("[plaintiff] provides no basis to conclude that the address fields, subject fields, date fields, signature blocks, and disclaimers are work product."). Accordingly, Defendants' motion to compel these documents is **GRANTED** and Plaintiffs are ordered to produce unredacted copies of the documents.

The third document, Bates stamped Atkinson, et al._000339, also appears with the header redacted but this time redacts the most recent email of the email thread. To the extent Plaintiffs' counsel requested this email thread, as argued, any forwarded message to counsel following that direction is attorney-work product. Here, unlike the other two documents, this document appears to have been sent to Plaintiffs' counsel at their request and is therefore protected. Accordingly, Defendants' motion to compel production of Atkinson, et al._000339 is **DENIED.**

### D. Plaintiffs' three letter motions dated 4/30/25

On April 30, 2025, Plaintiff filed three letters including a letter requesting "an informal conference to reargue the December 27, 2023 motion to compel and two letters motions to compel a plethora of demands. <u>See</u> Dkt. Nos. 176, 179, 182. Plaintiffs' letters include that the Parties' met and conferred on a vast number of issues the same day Plaintiffs' letters were filed. <u>See</u> Dkt. Nos. 176, 179, 182.

Plaintiffs' request for a conference is **GRANTED**. However, this Court is unsure what Plaintiffs' request for an "informal conference" is seeking. Instead, this Court will hold in-person oral argument on reconsideration of this Court's January 3, 2024 order. The in-person conference will take place on **September 15, 2025 at**

**11:00 AM** in Courtroom 228, Thurgood Marshall Courthouse 40 Foley Square, New York, NY.

In light of the upcoming September 15th conference, the Parties are ordered to meet and confer regarding the remaining two letter motions to compel. The Parties shall file a joint status letter informing the Court which disputes from those letters remain outstanding **by September 2, 2025**. The joint letter shall not exceed 10 pages. Should any disputes remain outstanding, the Parties shall arrive at the September 15th conference prepared to discuss those disputes.

### E. The Parties' Letter Motions to Seal

The Parties filed several motions to seal the letters discussed in this Order. Dkt. Nos. 156, 163, 175, 178, 181. All the motions seek to seal the letters and exhibits to comply with the terms of the Parties' Confidentiality Order. However, broad references to a confidentiality order are insufficient to warrant sealing. Armouth Int'l, Inc. v. Fallas, No. 19-CV-3669 (RA) (VF), 2023 WL 2975154, at *1 (S.D.N.Y. Mar. 31, 2023) (collecting cases); see also House of Eur. Funding I Ltd. v. Wells Fargo Bank, N.A., No. 13-CV-519 (RJS), 2016 WL 11950329, at *1 (S.D.N.Y. June 9, 2016). Only one motion to seal cites the appropriate standard and conducts an analysis. Dkt. No. 167. That request to seal is **GRANTED**. All other motions to seal are **DENIED** without prejudice.

**The Clerk of Court is respectfully requested to close Dkt. Nos. 155, 156, 157, 161, 163, 166, 167, 168, 174, 175, 176, 177, 178, 179, 180, 181, 182.**

SO ORDERED.

DATED:    New York, New York
          July 29, 2025

JENNIFER E. WILLIS
United States Magistrate Judge

27