**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
DR. STELLA SAFO, *et al.*,

                        Plaintiff,                            **ORDER**

        -against-                                **19-cv-3779 (VSB) (JW)**

DR. PRABHJOT SINGH, *et al.*,

                        Defendant.
------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Between April and May 2025, Plaintiffs filed several letter motions and responses detailing outstanding discovery disputes. Dkt. Nos. 176, 179, 182, 185–187. On July 29, 2025, the Court ordered the parties to meet and confer and summarize any remaining issues. Dkt. Nos. 193–194. On October 6, 2025, the parties were heard for oral argument. The Court discusses these disputes in turn.

    A. **Plaintiffs' motion to compel (Dkt. No. 176)**

        a. **Overarching timeliness issue**

On December 20, 2024, the parties jointly proposed to extend the fact discovery deadline to February 28, 2025. See Dkt. No. 154. In their joint letter, the parties stated that they needed a "short extension" on discovery to complete enumerated tasks, including "serv[ing] responses to outstanding paper discovery requests and/or disputes" and "rais[ing] any unresolved discovery disputes to the Court." Id. Yet Plaintiffs filed the instant letter motions to compel two months after the close of fact discovery on April 30, 2025. See Dkt. Nos. 176. 179.

Much of Plaintiffs' letter motion at Dkt. No. 176 concerns discovery related to third-party witness Kirsten Knaup, former Chief Operating Officer at the Arnhold Institute for Global Health ("AIGH").  Dr. Knaup was deposed by Plaintiffs on November 26, 2024—one month before the parties jointly stipulated to "raise any unresolved discovery disputes to the Court" before the February 28 fact discovery deadline.  Dkt. No. 154.  Plaintiffs argue that these disputes are timely because they were part of lingering concerns that were raised to Defendants before the February 28 deadline.  The Court declines to rule on the untimeliness issue, since (as discussed more fully below) Plaintiffs' various requests also fail on their merits.

### b. Requests 1.b and 1.c

Plaintiffs moved to compel Dr. Knaup's documents surrounding the 2018 Investigation and Dr. Knaup's eventual departure from AIGH.  For instance, Plaintiffs seek Knaup's separation agreement with the Icahn School of Medicine ("ISMMS"), Dr. Singh's recommendation letter and related communications, and a "whom it may concern" letter Knaup sent ISMMS in or around August 2018 concerning the outcome of the 2018 Investigation.  Dkt. No. 194.

Plaintiffs argue that these items are relevant because Dr. Knaup is "one of the key witnesses in this case about what was going on at [AIGH]", and the documents would show whether the 2018 Investigation was conducted in a discriminatory manner and resulted in a discriminatory outcome.  Dkt. No. 194; Dkt. No. 198 at 28:21-24.  Plaintiffs also assert these documents go to the credibility of Defendants, including Dr. Singh.  Dkt. No. 198 at 13:22-14:11.  Defendants contend that these

2

documents are not relevant because they have no connection to Plaintiffs' gender discrimination and harassment claims, nor any of Defendants' defenses. Dkt. No. 194. More specifically, Defendants emphasize that the 2018 Investigation occurred long *after* the alleged discrimination and harassment occurred.

The Court does not find the 2018 Investigation relevant to the causes of action in the instant case, as the investigation happened years after the alleged claims occurred. Allowing such discovery, even considering Plaintiff's credibility argument, would inevitably mean permitting a broad fishing expedition. Therefore, Plaintiffs' request to compel documents outlined in requests 1.b and 1.c is **DENIED**.

### c. Request 1.e

Plaintiffs also sought to compel Knaup's communications with Dr. Irwin Redlener, who was Dr. Knaup's supervisor when she worked at Columbia University in 2006 or 2007. Knaup testified during her deposition that Dr. Redlener "told her that a graduate student filed a sexual harassment complaint against Berman, who also worked for Redlener at the time, and that Columbia subsequently terminated Berman's employment." Dkt. No. 176. Years later, when Knaup was at ISMMS, she recommended that Defendant Singh hire Berman. Id. Plaintiffs assert that these communications are relevant because Knaup's failure to disclose the prior complaint against Berman to ISMMS is actionable and because Berman contributed to the hostile work environment based on sex at AIGH. Id. Knaup contends that these documents are not relevant to Plaintiffs' claims, since Knaup testified that she did

3

not know the circumstances of Redlener's departure from Columbia or whether the complaint against Berman was substantiated. Dkt. No. 198 at 42:15-21.

The Court finds this information minimally relevant, given Knaup's limited knowledge of the complaint against Berner and the fact that the alleged complaint happened years prior to Knaup recommending Berner for a position at ISSMS. This minimal relevance is far outweighed by the undue burden of having Knaup go through communications regarding an unsubstantiated rumor that Knaup heard 10 years prior while employed at a completely different job. Plaintiffs' discovery request is not proportional to the needs of the case and is therefore **DENIED**.

### d. Request 1.f and 1.g

Plaintiffs also moved to compel various communications between Dr. Knaup and Defendants Bruno Silva and Prabhjot Singh. In support, Plaintiffs merely assert that "Knaup testified she had exchanged text messages" with these Defendants on various topics. Dkt. No. 174. Defendants maintain that Knaup asserted objections to these requests on undue burden and cost grounds and represented to Plaintiffs that Dr. Knaup was not aware of any responsive documents following a reasonable, diligent search. Dkt. No. 194. Given Defendants' representation that Knaup is not aware of any responsive documents following a reasonable and diligent search, Plaintiff's request to compel Knaup's communications with Silva and Singh are **DENIED.**

### e. Request 2.a

Plaintiffs moved to compel a draft report from the Oversight Committee regarding the outcomes of the 2018 Investigation. In June 2024, Dr. Annetine Gelijins testified during her deposition that she was the main author of the report. Plaintiffs argue that Defendants "conceded relevance of the Oversight Committee by producing other documents related to it." Dkt. No. 176. Defendants deny conceding relevance and assert that the draft report is privileged under attorney-client and work product privileges since it was drafted at the direction of legal counsel Marina Lowy from its inception. See Dkt. No. 187-5.

The Court declines to address the merits of this argument due to Plaintiffs' untimeliness. Unlike some of the Plaintiffs' other discovery disputes, where the Court could conceive why Plaintiffs raised issues after the close of fact discovery, the Court does not find that here. Critically, Plaintiffs sat on their hands for ten months after Dr. Gelijin's deposition without explanation for the delay in raising this motion to compel. Plaintiffs' request to compel a draft report of the Oversight Committee is therefore **DENIED**.

### B. **Plaintiff's motion to compel (Dkt. No. 179)**

As background, Plaintiffs assert that the document production and February 26, 2025 deposition of Dr. Kevin Starr, Chief Executive Officer of the Mulago Foundation—which occurred two days before the February 28 fact discovery deadline—raised several new discovery disputes. For instance, Plaintiffs contend they learned "for the first time that John Arnhold and Jody Arnhold pressured

5

ISMMS to change one of the outcomes of the 2018 Investigation into Singh's misconduct." Dkt. No. 179. Plaintiffs also argue that Starr's deposition revealed ways in which the Arnholds "exerted significant influence over Singh and ISSMS." Id.

### a. Communications between Starr and Dr. Singh

Plaintiffs seek to compel Defendants to produce communications between Defendants and Starr. Plaintiffs note that Starr produced communications with Dr. Singh that were not included in Dr. Singh's own production. Dkt. No. 179. Plaintiffs assert that Defendants withheld these documents from Singh's production, while Defendants wholly deny this accusation. Dkt. No. 185. Defendants maintain they produced responsive e-mail communications following a good faith and diligent search, and contend that these discrepancies were a result of having no ESI protocol during discovery. Id. During the October 6 conference, Defendants stated that "Dr. Singh is prepared to re-review his personal email account because the communications that Dr. Starr located that Dr. Singh did not were from his Gmail account." Dkt. No. 198 23:22-24:3. Because Defendants have agreed to conduct a re-review of Dr. Singh's personal email of relevant communications between Dr. Singh and Starr for responsive documents, Plaintiffs' request is **DENIED** as moot.

### b. Communications between Defendants and the Arnholds

Plaintiffs moved to compel Defendants to produce all communications with Dr. Starr, John Arnhold, or Judy Arnhold regarding Singh, AIGH, their donations, and/or the 2018 Investigation. As discussed in detail above, Plaintiffs argue that the 2018

6

Investigation is relevant to Plaintiff's claims. Plaintiffs also contend these documents are relevant because they reveal how the Arnholds exerted significant influence over Singh and ISMMS. Dkt. No. 179. Defendants maintain these documents are not relevant because the 2018 Investigation is outside of the relevant time period of Plaintiffs' claims.

As discussed above, the Court agrees with Defendants and does not find the 2018 Investigation relevant to the claims at issue. The Court also finds Defendants' requests for "all" communications concerning Singh, AIGH, and the Arnhold's donations to be too broad as to scope and time period. Therefore, the Court **DENIES** Plaintiffs' request.

### c. Dr. Singh's employment file, including a "letter of reproach"

Plaintiffs moved to compel Dr. Singh's employment file, including what they call a "letter of reproach." Defendants assert that there is no singular personnel file, and that they have produced all of Dr. Singh's personnel-related documents following a good-faith, diligent search. Defendants also represent that they did not locate any "letter of reproach" after a good faith, diligent search. Given Defendants' representation, Plaintiffs' request to compel Dr. Singh's employment file is **DENIED** as moot.

### d. Deposition of John and Jody Arnhold

Plaintiffs also sought to compel the depositions of the Arnholds, because "Starr testified, on the very last day of fact discovery, that he did not know what the ISMMS did as a result of the Arnholds' instructions." Dkt. No. 179. As such, Plaintiffs were

not able to depose witnesses on the Arnholds' actions regarding the 2018 Investigation. Id. Defendants assert that Plaintiffs' belated request is frivolous, untimely, and irrelevant. First, Defendants point out that John Arnhold has been on Plaintiff's list of depositions since 2022; if Plaintiffs wanted to depose the Arnholds, they had ample time to do so before the end of fact discovery. Dkt. No. 185. Additionally, Defendants argue that the deposition of the "Arnholds would not be proportional to the needs of the case, particularly in light of the extensive discovery that has already been taken." Id.

The Court declines to address the timeliness issue but agrees with Defendants on the merits of this request. As discussed ad nauseum, the Court does not find the 2018 Investigation relevant to the claims of the case. As such, whether or not the Arnholds influenced that investigation is of no relevance and discovery requests regarding the investigation will not be permitted. For those reasons, Plaintiff's motion to compel the depositions of John and Jody Arnhold are **DENIED**.

### e. Deposition of Sandeep Kishore

The Court declines to rule on Plaintiff's request to compel the deposition of Mr. Kishore at this time and will address this motion in the separate administrative matter (Case No. 25-mc-154).

### C. Motion for reargument (Dkt. No. 182)

On April 30, 2025, Plaintiffs filed "a motion for an informal conference to reargue the December 27, 2023 motion" regarding the 2018 Investigation. Dkt. No. 182. The Court denied the prior motion following a conference on January 3, 2024.

See Dkt. Nos. 135–136. Plaintiffs assert that since the Court's denial, "Plaintiffs obtained new evidence demonstrating that Defendants have waived the attorney-client privilege they claim over the Investigation, and also that they have improperly used the Investigation as both a sword and shield." Dkt. 180.

"Local Civil Rule 6.3 allows reconsideration or reargument of a court's order in certain limited circumstances." 24 Seven, LLC v. Martinez, No. 19 Civ. 7320 (VSB), 2021 WL 276654, at *3 (S.D.N.Y. May 10, 2022). Such objections "must be served within 14 days after the entry of the court's order being challenged." Local Rule 6.3. "As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion." McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018). Here, Plaintiffs' window to raise objections to the Court's January 3, 2024 order ended on January 17, 2024—14 days after the order was issued. Plaintiffs did not file their motion for reconsideration until April 30, 2025—*15 months* after the Court's denial of their motion.

Even assuming *arguendo* that this motion for reconsideration is timely, it also fails on its merits. The standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A reconsideration motion is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce

judicial resources." RST (2005) Inc. v. Rsch. in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009).

The Court does not find that an "extraordinary remedy" is warranted here. Id. Plaintiffs contend that the Court denied the prior motion before the parties "obtained new evidence" that Defendants waived privilege over the 2018 Investigation, and that they used the investigation as a sword and shield. Dkt. No. 182. But the Court does not find there to be any "new evidence" that sways the Court's original decision. As pointed out by Defendants, the information that Plaintiffs are claiming is new comes from documents and depositions that occurred before the Court's prior ruling. Even if Plaintiffs discovered this alleged "new evidence" after the Court's ruling, Plaintiffs possessed this evidence, such as testimony from Mr. Escosia's August 2024 deposition, well before the close of the February 28, 2025 fact discovery deadline.

Plaintiffs' motion for reargument appears to be a "vehicle for relitigating old issues" or "otherwise taking a second bite at the apple." Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012). As such, the Court **DENIES** Defendants' motion for reargument.

SO ORDERED.

DATED:   New York, New York
         October 21, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge