**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. HOLLY ATKINSON, DR. NATASHA ANUSHRI ANANDARAJA, DR. STELLA SAFO, MARY CALIENDO, HUMALE KHAN, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS,

Plaintiffs,

v.

DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, DAVID BERMAN, and ICAHN SCHOOL of MEDICINE at MOUNT SINAI,

Defendants.

**ORAL ARGUMENT REQUESTED**

No. 19-cv-3779 (VSB) (JW)

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO STRIKE**

# TABLE OF CONTENTS

ARGUMENT ..... 2

I. PLAINTIFFS' ADDITIONAL STATEMENT AND 56.1 RESPONSE VIOLATE LOCAL RULE 56.1. ..... 2

A. Plaintiffs' Additional Statement Is Not Permitted Under Local Rule 56.1. ..... 3

B. Plaintiffs' Responses to Defendants' Statement of Undisputed Material Facts Are Equally Defective and Should Be Stricken. ..... 7

C. The "Corrected" Versions of the 56.1 Response and Accompanying Memorandum of Law Were Filed Late, Without Leave, and Changed More Than Plaintiffs Represented. ..... 9

II. SEVERAL DECLARATIONS FILED BY PLAINTIFFS SHOULD BE FULLY OR PARTIALLY STRICKEN. ..... 11

A. The Faghmous Declaration Should Be Stricken In Its Entirety. ..... 12

B. The Olivarius Declaration Should Be Stricken In Its Entirety. ..... 144

C. The Anandaraja and Atkinson Declarations Should Be Stricken In Their Entirety. ..... 14

D. Isolated Hearsay and Irrelevant Paragraphs In Other Declarations Warrant Striking. ..... 15

E. The Portions of the Khan Declaration Concerning ATLAS Should Be Stricken. 15

III. PLAINTIFFS' RELIANCE ON THE BEDDOE DEPOSITION TRANSCRIPT IS IMPROPER AND SHOULD BE STRICKEN. ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blue v. City of N.Y.*,
2018 WL 1136613 (S.D.N.Y. Mar. 1, 2018) ....................2

*Castagna v. Driscoll*,
2025 WL 2402615 (S.D.N.Y. Aug. 19, 2025) ....................2, 3

*Collins v. City of N.Y.*,
2017 WL 11582468 (S.D.N.Y. July 10, 2017) ....................3, 4

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
138 F. Supp. 3d 352 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019) ....................3, 6

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) ....................17

*DeSimone v. JP Morgan/Chase Bank*,
2004 WL 2978011 (S.D.N.Y. Dec. 22, 2004) ....................9

*DHIP, LLC v. Fifth Third Bank*,
2021 WL 4481118 (S.D.N.Y. Sept. 28, 2021), *aff'd*, 2023 WL 1806752
(2d Cir. Feb. 8, 2023) ....................3

*Donahue v. Asia TV USA Ltd.*,
208 F. Supp. 3d 505 (S.D.N.Y. 2016) ....................5, 14

*Fair Hous. Just. Ctr., Inc. v. McDonald*,
2026 WL 1875800 (S.D.N.Y. June 30, 2026) (Broderick, J.) ....................4

*Gadsden v. Jones Lang Lasalle Ams., Inc.*,
210 F. Supp. 2d 430 (S.D.N.Y. 2002) ....................9

*Goldstick v. Hartford, Inc.*,
2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ....................3

*Ostreicher v. Chase Bank USA, N.A.*,
2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) ....................4

*Perry v. City of N.Y.*,
2016 WL 11807719 (S.D.N.Y. Feb. 11, 2016) (Broderick, J.) ....................13

*Phillips v. City of Middletown*,
2021 WL 4462821 (S.D.N.Y. Sept. 29, 2021) ....................12

*Preuss v. Kolmar Lab'ys, Inc.*,
970 F. Supp. 2d 171 (S.D.N.Y. 2013)........11

*Ramgoolie v. Ramgoolie*,
2018 WL 5619959 (S.D.N.Y. Aug. 3, 2018), *R. & R. adopted*,
2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018)........9

*Tancredi v. Metro. Life Ins. Co.*,
378 F.3d 220 (2d Cir. 2004)........9

*U.S. Info. Sys., Inc. v. Int'l Bros. of Elec. Workers Loc. Union No. 3*,
2006 WL 2136249 (S.D.N.Y. Aug. 1), *adhered to on reconsideration*,
2006 WL 2556339 (S.D.N.Y. Sept. 5, 2006)........2, 3

**STATUTES**

ECF Rule 13.26........9

Fed. R. Civ. P. 6........9

Fed. R. Civ. P. 26........17

Fed. R. Civ. P. 32........16

Fed. R. Civ. P. 37........17

Fed. R. Civ. P. 56........11

Fed. R. Evid. 401........14, 15

Fed. R. Evid. 402........14

Fed. R. Evid. 804........17

Loc. Civ. R. 56.1........passim

Defendants Dr. Prabhjot Singh, Dr. Dennis S. Charney, Bruno Silva, and the Icahn School of Medicine at Mount Sinai ("ISMMS") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to strike: (i) Plaintiffs' Statement of Additional Undisputed Material Facts ("Additional Statement") (Dkts. 234 ¶¶245-717, 242 ¶¶245-717); (ii) all improper responses contained in Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ("56.1 Response") (Dkts. 234, 242); (iii) the "corrected" versions of the 56.1 Response and Plaintiffs' Memorandum of Law (Dkts. 241, 242); (iv) the Declarations of James Faghmous (Dkt. 236), Ann Olivarius (Dkt. 227), Natasha Anandaraja (Dkt. 230), and Holly Atkinson (Dkt. 232); (v) Paragraph 10 of the Declaration of Mary Caliendo (Dkt. 235), Paragraph 5 of the Declaration of Erica Pollock (Dkt. 228), and Paragraphs 12-13 and 21-22 of the Declaration of Humale Khan (Dkt. 224); and (vi) the Transcript of Dr. Ann Marie Beddoe's Deposition (Dkt. 223-3) ("Motion to Strike").

Plaintiffs' Additional Statement is the antithesis of the "short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. ("Local Rule") 56.1(b). Indeed, Plaintiffs submitted an astounding 473 paragraphs of so-called "additional ***undisputed*** material facts," (Dkt. 242 at 97 (emphasis added)), in plain contravention of well-settled law in this District. Both the Additional Statement and 56.1 Response—which consists of a total of 717 separately numbered paragraphs and spans 164 pages—is filled with argument, narrative, hearsay and assertions not supported by citations to the record. Moreover, Plaintiffs filed the "corrected" 56.1 Response and opposition brief ***nine days*** after the Court-ordered deadline, without obtaining leave. Instead, they circumvented this Court's rules by emailing the ECF Quality Assurance Unit to request that the corrected versions of both documents be accepted, attributing their so-called filing error to document "version control

issues." In reality, Plaintiffs took the extra time to remedy incorrect, missing, and otherwise flawed citations in their initial filings, changing more than half of the record cites in their opposition brief.

In addition, four declarations and portions of several others should be stricken for myriad reasons, including because they contain inadmissible hearsay, are patently irrelevant and violate this Court's Individual Rules & Practices, among other reasons.

For these reasons and the reasons that follow, the Court should grant the Motion to Strike.

## ARGUMENT

### I. PLAINTIFFS' ADDITIONAL STATEMENT AND 56.1 RESPONSE VIOLATE LOCAL RULE 56.1.

Local Rule 56.1 requires a party opposing summary judgment to respond to each numbered paragraph of the movant's statement and permits, "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts ***as to which it is contended that there exists a genuine issue to be tried***." Local Rule 56.1(b) (emphasis added). Each statement must be followed by a citation to admissible evidence. Local Rule 56.1(d). Rule 56.1 statements "are not argument"; they "should contain factual assertions with citation to the record," and "should not contain conclusions." *U.S. Info. Sys., Inc. v. Int'l Bros. of Elec. Workers Loc. Union No. 3*, 2006 WL 2136249, at *3 (S.D.N.Y. Aug. 1) (citations omitted), *adhered to on reconsideration*, 2006 WL 2556339 (S.D.N.Y. Sept. 5, 2006).

The counterstatement permitted by Rule 56.1(b) "is for additional material facts [a plaintiff] believe[s] to be in dispute, not argument or other facts [the plaintiff] find[s] helpful." *Castagna v. Driscoll*, 2025 WL 2402615, at *2 (S.D.N.Y. Aug. 19, 2025). Statements that are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or lack record support are improper, and "[a] court may either disregard or strike" them. *Blue v. City*

*of N.Y.*, 2018 WL 1136613, at *1 (S.D.N.Y. Mar. 1, 2018). Furthermore, facts "unrelated to those raised by Defendants," *DHIP, LLC v. Fifth Third Bank*, 2021 WL 4481118, at *1 n.2 (S.D.N.Y. Sept. 28, 2021), *aff'd*, 2023 WL 1806752 (2d Cir. Feb. 8, 2023), and "unrelated to the claims remaining in th[e] case," *Castagna*, 2025 WL 2402615, at *2, should be disregarded.

Courts in this District routinely strike non-compliant 56.1 submissions for failure to follow these requirements. *See U.S. Info. Sys.*, 2006 WL 2136249, at *3-4 (striking all counterstatement paragraphs that disputed facts without record citations and holding that "plaintiffs cannot evade the impact of accepting a fact by adding legal argument to their counterstatements"); *Goldstick v. Hartford, Inc.*, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking counterstatement containing "argumentative and often lengthy narrative" intended to "spin" plaintiff's admissions, indicating Rule 56.1 submission that adds argumentative narrative is "a manifest evasion of the page limitation" on opposition briefs); *Collins v. City of N.Y.*, 2017 WL 11582468, at *1, 3 (S.D.N.Y. July 10, 2017) (striking 385-paragraph additional statement that was not "short and concise"); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394–97 (S.D.N.Y. 2015) (disregarding non-compliant portions of "unnecessarily lengthy" 56.1 statements, including legal conclusions), *aff'd*, 945 F.3d 83 (2d Cir. 2019).

**A. Plaintiffs' Additional Statement Is Not Permitted Under Local Rule 56.1.**

The Additional Statement violates Rule 56.1 because it is not a "short and concise" statement of *disputed* material facts, as the Rule requires. In fact, it is not a statement of disputed facts at all. It consists of 473 paragraphs of purportedly "undisputed" facts. "There is no provision for a responsive 56.1 Statement to include additional facts that are not in dispute but that a party opposing summary judgment simply thinks are important;" additional facts "should

be confined to material facts in dispute." *Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, at *1 n.1 (S.D.N.Y. Nov. 19, 2020).[1] Plaintiffs' Additional Statement should be stricken from both the original and "corrected" 56.1 Responses (Dkts. 234 ¶¶245-717, 242 ¶¶245-717) on this basis alone. *See Collins*, 2017 WL 11582468, at *1, 3 (striking 385-paragraph additional statement).

The Additional Statement is also improper because it is chock-full of immaterial, argumentative, and conclusory statements, as well as inadmissible hearsay.

Plaintiffs inexplicably devote numerous paragraphs to the accolades, involvement and purported knowledge of their counsel, Ann Olivarius. (*See, e.g.*, Dkt. 242 ¶¶336-43, 379-80, 383-84, 531-34.) For years, however, Plaintiffs represented that Olivarius knew nothing relevant to their claims. In 2019, Olivarius swore under oath that her meetings with Singh were "not relevant to [Plaintiffs'] case" and Plaintiffs assured the Court that they would not "rely on any testimony from Olivarius in proving their claims." (Dkt. 50-2 ¶28; Dkt. 50 at 4-5, 7 n.10.) As recently as January 2025, they told Magistrate Judge Jennifer E. Willis that Olivarius "has no personal knowledge as to why the AIGH internal investigation started or the underlying discriminatory conduct at issue in this litigation. Any information she has about the discrimination is privileged since her knowledge on that topic came from her clients." (Dkt. 160 at 2.) And Plaintiffs resubmitted Olivarius' sworn statement to Judge Willis at that time. (Dkt. 160-3 ¶28.)[2] In light of those sworn statements and representations, it is patently absurd for

[1] *Fair Housing Justice Center, Inc. v. McDonald*, is not to the contrary. 2026 WL 1875800, at *7 (S.D.N.Y. June 30, 2026) (Broderick, J.). There, the Court declined to strike a counterstatement of "undisputed" facts because the plaintiffs had cross-moved for summary judgment, so calling those facts "disputed" would have been "inconsistent with their litigation posture." *Id.* Plaintiffs here have not cross-moved.

[2] Judge Willis has already cautioned that Plaintiffs' changing representations about whether Olivarius was acting as their counsel "would . . . create serious concerns that Plaintiffs' counsel made deliberate omissions or misrepresentations to the Court." (Dkt. 193 at 5.)

Plaintiffs to suggest that Olivarius has any knowledge, much less "material" knowledge, of any facts underlying their claims. The Olivarius-related paragraphs should be stricken. (*See, e.g.*, Dkt. 242 ¶¶336-43, 379-80, 383-84, 531-34.)

Plaintiffs likewise devote dozens of paragraphs to the alleged experiences of former plaintiffs Holly Atkinson and Natasha Anandaraja, neither of whom remains a party to this case. (*See, e.g.*, Dkt. 242 ¶¶298-300, 358-60, 362-67, 382, 431-32, and 436.) Their experiences are not material to the claims of the four remaining Plaintiffs, as Plaintiffs cite no evidence that any of the four remaining Plaintiffs was aware of these events. *Cf. Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 516 (S.D.N.Y. 2016) ("the experience of other employees, of which [plaintiff] was not even aware, cannot transform his insufficient pleading into a sufficient one."). For example:

- Paragraphs 358-59 and 382 detail Atkinson's contract, the funding of her salary by a one-time gift, the reduction of her salary, and the change in her title.
- Paragraph 360 asserts that ISMMS stopped paying Atkinson's tuition for a Master of Public Health degree.
- Paragraphs 362-63 describe Singh criticizing the training initiatives Anandaraja built and calling her organizational charts "useless," and Paragraphs 364 and 436 recount a cut to her education budget.
- Paragraphs 365-67 discuss the change in Anandaraja's title, even though she admits her salary and responsibilities "did not" change, and Singh's request, after she gave notice, that she find and train her replacement.
- Paragraphs 431-32 recount that Singh told Atkinson in July 2015 she needed to show she was relevant to the work of the Arnhold Institute for Global Health, and that he was "not interested" in her proposal to incorporate gendered data into AIGH's big-data work.

(Dkt. 242 ¶¶358-60, 362-67, 382, 431-32, 436.)

Plaintiffs' Additional Statement contains multiple other examples of equally irrelevant information. For instance, twenty-three paragraphs recount the 2014 recruitment of a different candidate for the AIGH director role—a candidate who never came to work at ISMMS, is not a

plaintiff in this lawsuit and had no interactions with Singh whatsoever. (Dkt. 242 ¶¶483-505.) Plaintiffs also note the date Emilie Bruzelius defended her dissertation, more than four years after she left ISMMS. (*Id.* ¶378.) Plaintiffs devote numerous paragraphs to discussing the search committee's views of Singh's qualifications (*id.* ¶¶506-11), donor correspondence about Singh's retention (*id.* ¶¶520-30), and Charney's interactions with or comments about non-parties (*id.* ¶¶291-93, 471-82). Plaintiffs discuss the management of Project ATLAS (*id.* ¶¶404-06, 518-19, 683, 693-700), a topic that Judge Willis precluded Plaintiffs from asking about at depositions. (Dkt. 143 at 6-7.) *See infra* Part II.E. These paragraphs should be stricken.[3]

Dozens of additional paragraphs should be stricken as argumentative or conclusory. *See Tartikov*, 138 F. Supp. 3d at 394 (court may disregard "legal conclusions or unsubstantiated opinions" in a Rule 56.1 statement). For example, Plaintiffs offer Atkinson's opinion—without any actual evidence—that "there was gender bias in [Charney's] rejection of Stephanie [sic] Strathdee" for the AIGH Director role. (Dkt. 242 ¶503.) Atkinson is not a party, was not on the search committee, and does not profess to have any personal knowledge of the reasons why Strathdee did not come to ISMMS. Plaintiffs also assert that a non-party's email to Charney "named the problem." (*Id.* ¶636.) These paragraphs are advocacy, not facts, and should be stricken.

Furthermore, the Additional Statement repeatedly relies on inadmissible hearsay. For example, Plaintiffs assert Atkinson "learned of" a statement Singh supposedly made to three

[3] Other immaterial paragraphs include, without limitation: ¶¶331, 338, 526, 701-02 (simply state "left intentionally blank"); ¶¶469-70 (Philip Landrigan's titles, which are already undisputed (*see* Dkt. 242 ¶11)); ¶¶456-60 (David Berman's prior employment and earlier Columbia complaint); ¶513 (ISMMS designee's lack of knowledge about Singh's compensation); ¶¶607-09 (details concerning ISMMS's investigation); and ¶698 (Jeb Weisman no longer serving as ATLAS's director).

The 56.1 Response is unnecessarily redundant in several places. For example, ¶¶312, 381, and 512 all state Singh's salary; ¶320 is duplicated at ¶385; ¶310 is repeated at ¶436; ¶249 is repeated at ¶425; ¶681 is repeated at ¶693; ¶434 repeats Defendants' ¶12; and ¶675 is verbatim of part of Plaintiffs' responses to ¶¶222-25, and 227.

other people, including a development officer who told Atkinson what Singh said two years after she left. (Dkt. 242 ¶¶294-96.) Plaintiffs also assert Anandaraja knew of an email Charney sent to Strathdee before Singh's hire, citing Elena Rahona's testimony; however, Anandaraja testified that she never saw the email, but was told about it by Rahona and Dr. Ramon Murphy. (*Id.* ¶¶500-02; Dkt. 223-1 (Anandaraja Tr. 164-65).) Finally, Plaintiffs assert what Singh "told new AIGH staff" about Atkinson based on Atkinson's speculation—she "sensed" it "because people wouldn't react to [her]." (Dkt. 242 ¶361; Dkt. 223-2 (Atkinson Tr. 153).) These paragraphs should be stricken.[4]

### B. Plaintiffs' Responses to Defendants' Statement of Undisputed Material Facts Are Equally Defective and Should Be Stricken.

Plaintiffs' responses to Defendants' Statement of Undisputed Material Facts suffer from similar defects. Plaintiffs' responses attempt to spin the impact of an admission by adding self-serving narrative, legal argument or additional facts, or to dispute the significance or legal import of an undisputed fact, all of which is improper. The objectionable and improper responses are obvious based on even a cursory review of Plaintiffs' submission. For example:

- 9 responses do not controvert the specific fact stated, but instead dispute something Defendants did not assert—whether the fact reflects the "general pattern," the "general environment," or "reality" at AIGH, whether a policy was "consistently followed" or implemented at AIGH, or "to the extent" Plaintiffs read an unstated implication into the asserted fact. (*See* Dkt. 242 ¶¶26, 30, 108-09, 112, 172, 186-88.) For example, in response to Defendants' Paragraph 108, which recites Geraldine Llames' position description, Plaintiffs admit "that the position description so states," then dispute "that this was reflected in reality," citing only Faghmous' characterization of what Singh expected of her. Likewise, Plaintiffs admit that Singh publicly praised Amanda Misiti, including by calling her one of

[4] Other hearsay paragraphs include, without limitation: ¶297 (statements Singh allegedly made to unnamed individuals); ¶302 (Stella Safo's account of what unnamed people "thought" Berman would do to another employee, admitting she did not witness the incident (Dkt. 212-4 (Safo Tr. 97-98))); ¶¶339, 435 (what Olivarius was told about ATLAS); ¶372 (what Khan "learned" from unidentified women); ¶376 (remarks by unidentified "senior colleagues"); ¶385 (what Anandaraja "had been told" about Singh's standing with Charney); ¶456 (non-party's statement about Berman); ¶634 (Beddoe's basis for knowledge about complaints in AIGH was that "[e]veryone knew"); and ¶716 (Aaron Baum's account of Singh's intentions regarding Bruzelius, without foundation).

AIGH's "rising leaders" (*id.* ¶¶186, 188), but dispute "the general pattern" by quoting Misiti's own characterization of Singh; and they admit that Misiti thanked Singh in writing for "giving me the autonomy," but dispute "the general environment" because Misiti now "interpret[s]" that exchange as Singh "creating a written record that is different than what was communicated verbally" (*id.* ¶187).

- 40 responses admit the fact, but then add argument, additional facts or conclusory statements. (*See id.* ¶¶13, 18-19, 27, 31, 33, 49, 60, 62, 71, 76, 90, 95, 103, 116, 120, 126, 141, 143, 151-52, 154, 160, 164-65, 168, 170, 176, 179, 181-82, 184, 193, 198, 202, 209, 223-24, 229, 232.) For example, in response to Paragraph 154, which states that Singh denied Misiti's request for a raise and new title, Plaintiffs admit both that Misiti asked Singh for a pay increase and a new title and that Singh denied the request because she had not been in the role long enough, then argue that Singh "is not competent to testify as to the conversation." And in response to Paragraph 76, which recounts that Singh "became enraged" when Misiti and Berman pushed back on a report deadline, Plaintiffs admit "that the document says what Defendants claim," then argue that Defendants' reliance on it contradicts their "previous representations to this Court"—legal argument, not a fact.

- 15 responses admit the fact, but label it "incomplete," followed by narrative. (*See id.* ¶¶34, 36, 45, 52, 54, 57-58, 113, 146, 166, 199, 212, 233-34, 241.) For example, in response to Defendants' Paragraph 57, which recounts Safo's testimony that she found Singh's emails "degrading" and "diminishing," Plaintiffs admit the quotes but call them "materially incomplete," then add narrative attributing Singh's conduct to Safo's sex—legal argument, not a basis to controvert the fact.

- 7 responses admit the fact, but dispute its "substance," "significance," or "intent," or whether it is dispositive. (*See id.* ¶¶84, 136, 157-58, 161, 227, 235.) For example, in response to Defendants' Paragraph 84, which quotes Berman's email criticizing Safo's "combative" tone, Plaintiffs admit "the accuracy of the quotes" in the email, but dispute "their substance." Similarly, in response to Defendants' Paragraphs 157 and 158, which state that Misiti did not know David Heller's and Baum's roles, Plaintiffs admit Heller's and Baum's backgrounds, then dispute that Misiti's recollection of their roles at her deposition "is of any legal significance."

- 6 of Plaintiffs' purported denials or disputes cite no record evidence at all, in violation of Local Rule 56.1(d). (*See id.* ¶¶26, 30, 135, 138, 163; *see also id.* ¶¶124, 138 (citing only Plaintiffs' own responses to other paragraphs).) For example, in response to Defendants' Paragraphs 26 and 30, which describe the ISMMS policies that governed AIGH, Plaintiffs dispute those policies only "as to any being consistently followed at AIGH" or as to their "implementation at AIGH," without citing any record evidence for either dispute.

The Court should strike the foregoing Responses, which disregard the express language of Local Rule 56.1.

### C. The "Corrected" Versions of the 56.1 Response and Accompanying Memorandum of Law Were Filed Late, Without Leave, and Changed More Than Plaintiffs Represented.

Plaintiffs filed their Memorandum of Law (Dkt. 231) and 56.1 Response (Dkt. 234) on August 31, 2026. Nine days later, without leave, they filed what they called "corrected versions" of both documents and simply emailed the Clerk's Quality Assurance Unit asking that they be accepted, attributing the changes to "incorrect page and document references" and "version control issues." (Dkt. 243-1.)

That was not true. Plaintiffs changed more than half of the record citations in their brief and added record citations that appeared nowhere in their original filings. (Lupion Decl. Exs. 1 and 2.) Moreover, ECF Rule 13.26 requires a party to "*[i]mmediately* refile … in correct form" (emphasis added). This was not a mere filing error, as Plaintiffs falsely claim. To the contrary, this was Plaintiffs taking nine extra days to rework and revise their evidentiary support.

Plaintiffs never asked this Court for leave to file their corrected papers. A party that files after a deadline must move for leave and show excusable neglect. Fed. R. Civ. P. 6(b)(1)(B); *Gadsden v. Jones Lang Lasalle Ams., Inc.*, 210 F. Supp. 2d 430, 436-38 (S.D.N.Y. 2002); *see also Ramgoolie v. Ramgoolie*, 2018 WL 5619959, at *2 (S.D.N.Y. Aug. 3, 2018) (late Rule 56.1 submissions filed by letter, without seeking leave, were not excused), *R. & R. adopted*, 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018). Even a short delay does not excuse that obligation. *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004). An email to the ECF Quality Assurance Unit is not a motion. And a "correction" that does "more than merely bring the original statement into compliance" should be stricken. *DeSimone v. JP Morgan/Chase Bank*, 2004 WL 2978011, at *4 (S.D.N.Y. Dec. 22, 2004).

Plaintiffs' changes went far beyond fixing "page and document references." (Dkt. 243-1.) First, Plaintiffs added new evidence. The corrected brief cites material that appears in neither version of the 56.1 Response: for example, the Faghmous Declaration paragraphs 5, 8-10, and 58; the Caliendo Declaration paragraph 5; new Renee Bischoff testimony (transcript pages 159-60); and Khan Declaration paragraphs 12-13, are only cited in the corrected brief. None of this material is cited in either the initial or corrected 56.1 Response. (Lupion Decl. Ex. 1 at 24, 28, 35-36; *see* Dkts. 234, 242.)

Second, Plaintiffs replaced citations that never supported their claims. Despite adding 473 "material undisputed facts," Plaintiffs' original brief cited 56.1 paragraphs that did not contain the facts asserted. The corrected brief substitutes new support, including from different witnesses. For example:

- Singh "pretended as if [Safo] hadn't spoken"; Kirsten Knaup said Singh "doesn't do that for the men." (Dkt. 241 at 26, 27.) The original brief cited paragraphs 649, 665, and 714, which concern Safo's testimony about Silva, salary schedules, and an investigator's notes. The corrected brief cites Misiti and Anandaraja instead. (*Compare* Dkt. 231 at 26, *with* Lupion Decl. Ex. 1 at 27.)

- Silva called Natalie Privett "lazy" for breastfeeding. (Dkt. 241 at 23.) The original brief cited paragraph 90, which concerns Silva's alleged comments about Safo, relying on testimony from Silva and Llames. The corrected brief cites Safo transcript pages 245-46 instead. (*Compare* Dkt. 231 at 22, *with* Lupion Decl. Ex. 1 at 23.)

Third, Plaintiffs used revised citations to add evidence. Where Plaintiffs swapped a transcript cite for a 56.1 cite, the new paragraph often adds evidence on which the brief did not previously rely. Testimony once cited as ISMMS 30(b)(6) transcript page 199 for the statement, "[t]he distinction has no foundation in anything the institution wrote down: it admits there are no 'magic words' that turn a concern into a complaint, and that '[t]here is not a policy that lays out

what constitutes a complaint.' (McAllister Decl. Ex. 25(ISMMS 30(b)(6) Tr. 199:02-07[)])," [5] is now cited as 56.1 paragraphs 553-54. [6] (*Compare* Dkt. 231 at 30-31, *with* Lupion Decl. Ex. 1 at 31-32.) That new citation now adds transcript pages 200 and 258. Elsewhere, the original brief cited ISMMS 30(b)(6) testimony (transcript pages 193-97 and 220-25), but now removes one of the transcript pages (page 221) and adds McAllister Declaration Exhibit 61. (*Compare* Dkt. 231 at 20, *with* Lupion Decl. Ex. 1 at 21.) Plaintiffs also added Llames transcript page 82 to supposedly support a quote that was previously unsupported by a citation to any evidence. (*Compare* Dkt. 231 at 37, *with* Lupion Decl. Ex. 1 at 38.)

These are not clerical fixes. Plaintiffs used the label of a "correction" to add evidentiary support to a brief they had already filed.

The Court should strike the "corrected" 56.1 Response in its entirety and accompanying "corrected" memorandum of law (Dkts. 241 and 242) and treat the August 31 filings as operative, except that the Additional Statement should be stricken from both the original and the "corrected" 56.1 Responses (Dkts. 234, 242). *See supra* Part I.A.

## II. SEVERAL DECLARATIONS FILED BY PLAINTIFFS SHOULD BE FULLY OR PARTIALLY STRICKEN.

Declarations must rest on personal knowledge, set out admissible facts, and show the declarant is competent to testify. Fed. R. Civ. P. 56(c)(4). Courts strike declarations, in whole or in part, that contain hearsay, conclusory statements, or irrelevant material. *See, e.g.*, *Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 178 (S.D.N.Y. 2013). Plaintiffs' declarations are filled

[5] Actual quote of the cited portion of the transcript: "Q. Okay. Are there magic words that need to be used in order for a concern that's being raised to become a complaint? MS. GUERRASIO: Objection. Form. You can answer. A. No." (Dkt. 223-25 (ISMMS 30(b)(6) Tr. 199:2-7).)

[6] Paragraph 553 ("Asked whether there are 'magic words' that must be used before a concern becomes a complaint, Mount Sinai's designee answered: 'No.' (McAllister Decl. Ex. 25 (ISMMS 30(b)(6) Tr. 199, 200).)"); Paragraph 554 ("Mount Sinai has no policy defining what constitutes a complaint: 'There is not a policy that lays out what constitutes a complaint.' (McAllister Decl. Ex. 25 (ISMMS 30(b)(6) Tr. 258).)").

with hearsay and material completely unrelated to Plaintiffs' discrimination claims. That material should be stricken.

**A. The Faghmous Declaration Should Be Stricken In Its Entirety.**

The Court should strike Faghmous' declaration for several reasons. First, the declaration violates this Court's Individual Rules & Practices Section 4.D, which limits affidavits submitted with a motion to ten double-spaced pages. The Faghmous declaration is eleven pages, single spaced—roughly twice the Court's limit. Tellingly, Plaintiffs sought and obtained leave to exceed that limit for the McAllister Declaration—in the same letter in which they sought leave to file seven additional declarations—but not for Faghmous' declaration. (Dkts. 219, 220.) Plaintiffs cannot claim last-minute surprise with its length or contents, because the declaration was signed in December 2021 (and withheld from discovery, as explained below). Plaintiffs should have sought leave. They did not. That failure alone warrants striking the Faghmous declaration. *See Phillips v. City of Middletown*, 2021 WL 4462821, at *4 n.9 (S.D.N.Y. Sept. 29, 2021) (declining to consider 29-page attorney declaration filed to bypass page limits without leave).[7]

The Faghmous declaration is also largely irrelevant to Plaintiffs' sex discrimination claims. Indeed, roughly three-quarters of his declaration has nothing to do with the Plaintiffs in this case or sex discrimination. For example, paragraphs 2-4, 6, and 8-20 concern Faghmous' credentials, recruitment, and grievances about his own hiring; paragraphs 22-46 concern his own interactions with Singh, as well as Singh's credentials, grants, hiring of friends, self-promotion, and a trip to Ghana; paragraphs 58-63 concern alleged financial mismanagement; and paragraphs 64-77 concern the management of Project ATLAS, which Judge Willis precluded from deposition inquiry (*see infra* Part II.E). The few of these paragraphs Plaintiffs do cite concern

[7] Plaintiffs cite to the Faghmous Declaration in their Response to 56.1 ¶¶43, 108-09, 172 and Additional Statement ¶433. (Dkt. 242.) Plaintiffs cite to the declaration in their brief at pages 15 and 35. (Dkt. 241.)

Faghmous' own background, pay and the management of ATLAS—not discrimination against any Plaintiff. Even in the section titled "Hostile work environment for women" (Dkt. 236 at 7)—which consists of a mere eleven paragraphs of his 77-paragraph declaration—Faghmous claims only "[i]n general," it was his "impression" that women at AIGH were treated unfairly. (*Id.* ¶53.) His impression is not evidence, and he concedes he "did not personally witness" certain conduct he describes. (*Id.* ¶56.)

Lastly, Plaintiffs shielded the declaration from discovery and cannot now use it as a sword. *See Perry v. City of N.Y.*, 2016 WL 11807719, at *4 (S.D.N.Y. Feb. 11, 2016) (Broderick, J.). Former plaintiff Atkinson testified at her deposition that she knew of Singh's alleged criticism of her because "James [Faghmous] put that in a document." (Dkt. 166-13 (Atkinson Tr. 174).) Plaintiffs' counsel instructed her not to reveal any communications with counsel about it and she was permitted to answer only whether she had seen the document outside the litigation; she said she had not. (Id. at 174-77.) Plaintiffs continued to withhold the statement in opposing Defendants' motion to compel (Dkt. 169), and although Judge Willis ordered the statement submitted for in camera review (Dkt. 193 at 21), that dispute was never resolved.[8] Plaintiffs now rely on the same document, including its assertion that Singh "often tried to frame [Atkinson] as being incompetent." (Dkt. 236 ¶21.) Not only is that completely irrelevant to this case, Plaintiffs should not be permitted to use the declaration as both a shield and a sword.

[8] As Defendants explained in their letter motion to compel, the Faghmous statement was never logged on Plaintiffs' privilege log, is not privileged, and is responsive to several of Defendants' First Document Requests. (Dkt. 166 at 3; Dkt. 166-1 at 4.) The statement—now submitted as the Faghmous Declaration—was executed on December 16, 2021 (Dkt. 236), months before Plaintiffs responded to Defendants' First Request for Production of Documents, where they indicated in response to Request No. 47 that they "will produce any documents responsive to this request" (Dkt. 166-11 at 2.) Plaintiffs' failure to produce it warrants precluding its use for the same reasons as the *Beddoe* transcript. *See infra* Part III.

### B. The Olivarius Declaration Should Be Stricken In Its Entirety.

The Olivarius Declaration contains only one "substantive" paragraph, which purports to quote remarks Nelson Mandela made about Olivarius at a dinner in 2003. (Dkt. 227 ¶3.) That is textbook hearsay offered for the truth of the matter asserted. Moreover, the contents of the declaration are wholly irrelevant to the claims and defenses in this case and do not make any fact at issue "more or less probable." Presumably, Plaintiffs offer this declaration in an attempt to bolster Olivarius' credibility, despite previously representing to the Court that they would not "rely on *any* testimony from Olivarius in proving their claims" and Olivarius' own sworn statement that her meetings with Singh were irrelevant to this case. (Dkt. 227; Dkt. 50 at 7 n.10 (emphasis added); Dkt. 50-2 ¶28; Dkt. 160-3 ¶28.) *See supra* Part I.A; Fed. R. Evid. 401, 402. The entire declaration should be stricken.[9]

### C. The Anandaraja and Atkinson Declarations Should Be Stricken In Their Entirety.

The declarations of former plaintiffs Anandaraja and Atkinson describe only their own experiences. They should be stricken for the same reasons as the Additional Statement paragraphs that rely on them. *See supra* Part I.A; *Donahue*, 208 F. Supp. 3d at 516. Anandaraja, for example, recounts Singh's criticism of her training initiatives and organizational charts. (Dkt. 230 ¶¶5-6.) Atkinson recounts her "gender czar" pitch, the funding of her salary, and the loss of her tuition benefit. (Dkt. 232 ¶¶5-7.) Plaintiffs cite no evidence that any of the four remaining Plaintiffs knew of these events.

Atkinson's declaration is also defective on its own terms. It claims to address "matters about which I was not examined at my deposition." (*Id.* ¶4.) But she was examined on each of these topics: the funding of her position through a one-time gift from the Gogel family (Dkt.

[9] Plaintiffs cite to the Olivarius declaration in their brief at page 9. (Dkt. 241.)

223-2 (Atkinson Tr. 40))[10], and her interest in working on ATLAS and her Mount Sinai-funded Master of Public Health (*id.* at 197). Indeed, Plaintiffs' own Additional Statement cites that testimony. (Dkt. 242 ¶¶358, 360.) Plaintiffs also cite the declaration for something it does not say. Paragraph 431 of the Additional Statement cites paragraph 5 of Atkinson's declaration for the assertion that in July 2015, Singh told Atkinson she had to prove her relevance to "keep her post." Paragraph 5 does not say this. (Dkt. 242 ¶431.)

The Anandaraja and Atkinson Declarations should be stricken.[11]

### D. Isolated Hearsay and Irrelevant Paragraphs In Other Declarations Warrant Striking.

The Caliendo and Pollock Declarations also contain hearsay and irrelevant material. Paragraph 10 of the Caliendo Declaration recounts a non-party's remark at a party that Singh "is evil and hides behind his religion," (Dkt. 235 ¶10), which is hearsay unrelated to Plaintiffs' gender discrimination claims and not cited in their opposition papers. Paragraph 5 of the Pollock Declaration, stating that she has never experienced anyone drawing genitals during a working session, does not bear on any claim. (Dkt. 228 ¶5.) Fed. R. Evid. 401, 402.[12] Both paragraphs should be stricken.

### E. The Portions of the Khan Declaration Concerning ATLAS Should Be Stricken.

Plaintiffs' attempt to use the Khan Declaration as an end-run around a discovery ruling should be rejected. In the April 5, 2024 Protective Order, Judge Willis held that information concerning ATLAS was "at most minimally relevant to Plaintiffs' claims," and permitted

[10] Plaintiffs also cite Atkinson Tr. 41-42 for this topic (Dkt. 242 ¶358), but those pages were not submitted to the Court. (*See* Dkt. 223-2.)

[11] Plaintiffs cite the Atkinson Declaration in their brief at page 27. The Anandaraja Declaration is not cited.

[12] The 56.1 Response ¶183 cites this paragraph. (Dkt. 242.) Plaintiffs cite to ¶183 in their brief at page 13. (Dkt. 241.)

Plaintiffs to explore only discriminatory conduct during ATLAS "without asking questions about the Project and its management." (Dkt. 143 at 6.) Judge Willis further held that Plaintiffs "offered no connection between any complaints about Project ATLAS and any gender based discrimination," a failure "fatal to Plaintiffs' claims of relevance." (*Id.* at 7.)

Khan's declaration ignores that ruling. Paragraphs 12-13 concern ATLAS user data, and Paragraphs 21-22 concern Khan's complaints about representations made about the workings of ATLAS and the handling of patient health information that are totally disconnected from discrimination, harassment, or retaliation against any Plaintiff. (Dkt. 224.) These are the very same "Project and its management" issues Judge Willis held were off-limits. (Dkt. 143 at 6-7.)[13] Paragraphs 12-13 and 21-22 of the Khan Declaration should be stricken.[14]

## III. PLAINTIFFS' RELIANCE ON THE BEDDOE DEPOSITION TRANSCRIPT IS IMPROPER AND SHOULD BE STRICKEN.

Plaintiffs rely on a deposition of Dr. Ann Marie Beddoe taken in another action, which they never disclosed or produced in *this* case. Rule 32(a)(8) permits use of a deposition taken in an earlier action in a later action "involving the same subject matter between the same parties, or their representatives or successors in interest." Neither element is met. Singh and Silva were not parties to *Beddoe*, which had a single plaintiff and involved a different department, a single retaliation claim, and a different time period (2018-2021). Plaintiff's Complaint and Demand for Jury Trial ¶¶12, 56, 75-76, 85-91, *Beddoe v. Mount Sinai Health Sys., Inc.*, No. 1:22-cv-03080 (JLR) (S.D.N.Y. Apr. 13, 2022), ECF No. 1. This Court has already recognized the lack of overlap, denying Beddoe's joinder application because of the "broad temporal gap" between her

---

[13] The Faghmous Declaration covers the same ground. It devotes fourteen paragraphs to Singh's alleged overselling of ATLAS to various organizations and similar claims regarding ATLAS's active users. (Dkt. 236 ¶¶64-77.) These paragraphs should be stricken for the same reasons.

[14] Plaintiffs rely on paragraphs 21-22 in the Additional Statement at ¶¶404-06. (Dkt. 242.) They cite ¶404 and paragraphs 12-13 in their brief at pages 15 and 28. (Dkt. 241.)

claim and Plaintiffs' claims and the "insufficient overlap between the proof that would establish Beddoe's claim and the proof relevant to the Plaintiffs." (Dkt. 81 at 36.)

Nor is the transcript admissible as former testimony under Federal Rule of Evidence 804(b)(1), which provides an exception to the rule against hearsay when a declarant is unavailable as a witness. Specifically, it allows former testimony to be used when it is "offered against a party who had" (or whose predecessor in interest had) "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). Plaintiffs make no showing that Beddoe is unavailable; to the contrary, they listed her in their Rule 26(a)(1) disclosures. (Lupion Decl. Ex. 3 at 2 & app. A (Plaintiffs' Initial Disclosures).) Moreover, Defendants' motive in defending a retaliation claim against ISMMS and Charney differed from the gender discrimination issues here, so the "opportunity and similar motive" requirement is not met either. Fed. R. Evid. 804(b)(1)(B).

Plaintiffs' failure to disclose the transcript also warrants precluding its use. A party that fails to disclose or supplement information as required by Rule 26(a) or (e) "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Defendants requested all witness statements concerning the allegations in the complaint, and Plaintiffs responded that they "will produce any documents responsive to this request." (Dkt. 166-11, Request 47.)[15] They never produced the *Beddoe* transcript, offered no

[15] RFP No. 47 requested in full, "[a]ll documents and/or communications that Plaintiffs or their agent(s), representative(s), or attorney(s), obtained from witnesses or any other persons with knowledge concerning the allegations in the Amended Complaint, including, but not limited to, all statements, affidavits and declarations."

explanation for not doing so, and Defendants had no opportunity to address it before summary judgment. It is inadmissible and should be stricken.[16]

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (i) strike the Additional Statement in its entirety from both the original and "corrected" 56.1 Responses (Dkts. 234 ¶¶245-717, 242 ¶¶245-717); (ii) strike all improper responses contained in the 56.1 Response (Dkts. 234, 242); (iii) strike the "corrected" versions of the 56.1 Response and Plaintiffs' Memorandum of Law in their entirety (Dkts. 242, 241); (iv) strike the Declarations of James Faghmous (Dkt. 236), Ann Olivarius (Dkt. 227), Natasha Anandaraja (Dkt. 230), and Holly Atkinson (Dkt. 232); (v) strike Paragraph 10 of the Declaration of Mary Caliendo (Dkt. 235), Paragraph 5 of the Declaration of Erica Pollock (Dkt. 228), and Paragraphs 12-13 and 21-22 of the Declaration of Humale Khan (Dkt. 224); (vi) strike the Transcript of Ann Marie Beddoe's Deposition (Dkt. 223-3); and (vii) grant such other and further relief as the Court deems just and proper.

Dated: October 21, 2026
New York, New York

PROSKAUER ROSE LLP

By: */s/ Adam M. Lupion*

Adam M. Lupion
Joseph Baumgarten
Edna D. Guerrasio
Austin D. McLeod
Eleven Times Square
New York, NY 10036
T: 212-969-3000
F: 212-969-2900
alupion@proskauer.com
jbaumgarten@proskauer.com
eguerrasio@proskauer.com

[16] Plaintiffs' Additional Statement cites the transcript at ¶¶403, 625-39. (Dkt. 242.) Plaintiffs cite ¶¶403, 627-28, and 630 in their brief at pages 45-47. (Dkt. 241.)

amcleod@proskauer.com

*Attorneys for Defendants Dr. Prabhjot Singh, Dr. Dennis S. Charney, Bruno Silva, and ISMMS*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the foregoing brief contains no more than 8,750 words.

Specifically, the Microsoft Word "Word Count" tool indicates that the brief contains 6,042 words. That word count excludes the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but does include "material contained in footnotes or endnotes." Loc. Civ. Rule 7.1(c).

Dated: October 21, 2026
New York, New York

*/s/ Adam M. Lupion*
Adam M. Lupion