**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DR. HOLLY ATKINSON, DR. NATASHA ANUSHRI ANANDARAJA, DR. STELLA SAFO, MARY CALIENDO, HUMALE KHAN, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS,

Plaintiffs,

v.

DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, DAVID BERMAN, and ICAHN SCHOOL of MEDICINE at MOUNT SINAI,

Defendants.

Civil Action No.: 1:19-cv-03779 (VSB) (JW)

**ORAL ARGUMENT REQUESTED**

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ... 6

LEGAL STANDARD ... 8

ARGUMENT ... 9

I. Courts Disfavor Motions to Strike Summary Judgment Submissions ... 9

II. Local Rule 56.1(b) Authorizes the Additional Statement ... 10

III. "Immateriality" Is a Merits Argument, Not a Ground to Strike. ... 12

A. The Treatment of Other Women at the Institute Is Material. ... 12

B. The Strathdee Paragraphs and the Search-Committee Evidence Are Material. ... 14

C. Charney's Conduct Toward Complainants Is Material. ... 14

D. The 2018 Investigation Is Material, and Defendants Rely on It. ... 15

E. The ATLAS Paragraphs Are Not Barred by the April 2024 Order. ... 16

F. Plaintiffs Withdraw Paragraphs That Serve No Purpose. ... 16

IV. Olivarius's Testimony Rests on Personal Knowledge, Not Privilege. ... 16

V. The Hearsay and "Argumentative" Objections Fail Under Rule 56(c)(2). ... 18

VI. Plaintiffs' Responses Comply with Rule 56.1(b) and Rule 56(c)(1). ... 19

VII. The Corrected Filings Are Operative and Caused No Prejudice. ... 21

VIII. Declarations Should Be Considered. ... 24

A. The Faghmous Declaration. ... 25

B. The Olivarius Declaration. ... 27

C. The Anandaraja and Atkinson Declarations. ... 27

D. The Caliendo and Pollock Declarations. ... 28

E. The Khan Declaration. ... 29

IX. The Beddoe Transcript Is Proper Summary Judgment Evidence. ... 30

X. Defendants' Own Reply Papers Violate the Rules They Invoke. ... 32

CONCLUSION ... 33

## TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....12

*Bankers Tr. Co. v. Rhoades*, 108 B.R. 423 (S.D.N.Y. 1989) ....31

*Blue v. City of New York*, 2018 WL 1136613, 2018 U.S. Dist. LEXIS 33761 (S.D.N.Y. Mar. 1, 2018) ....9, 21

*Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93 (2d Cir. 2001) ....30

*Castagna v. Driscoll*, 2025 WL 2402615, 2025 U.S. Dist. LEXIS 160899 (S.D.N.Y. Aug. 19, 2025) ....9

*Collins v. City of New York*, 2017 WL 11582468, 2017 U.S. Dist. LEXIS 234309 (S.D.N.Y. July 10, 2017) ....9

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019) .... passim

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) ....13

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ....27, 32

*DeSimone v. JP Morgan/Chase Bank*, 2004 WL 2978011, 2004 U.S. Dist. LEXIS 25621 (S.D.N.Y. Dec. 22, 2004) ....9, 23, 24

*DHIP, LLC v. Fifth Third Bank*, 2021 WL 4481118 (S.D.N.Y. Sept. 28, 2021), *aff'd*, 2023 WL 1806752 (2d Cir. Feb. 8, 2023) ....8, 9, 12

*Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505 (S.D.N.Y. 2016) ....12, 13

*Fair Hous. Just. Ctr., Inc. v. McDonald*, 2026 WL 1875800, 2026 U.S. Dist. LEXIS 144503 (S.D.N.Y. June 30, 2026) ....9, 10, 11

*Frooks v. Town of Cortlandt*, 997 F. Supp. 438 (S.D.N.Y. 1998) ....24

*FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008) ....21

*Gadsden v. Jones Lang Lasalle Ams., Inc.*, 210 F. Supp. 2d 430 (S.D.N.Y. 2002) ....21, 22

*Goldstick v. Hartford, Inc.*, 2002 WL 1906029, 2002 U.S. Dist. LEXIS 15247 (S.D.N.Y. Aug. 19, 2002) ....19, 20

*Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323 (S.D.N.Y. 2008) ....8

*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ....23, 24

*Kroll LLC v. Povinelli*, 2026 WL 2837709, 2026 U.S. Dist. LEXIS 214403 (S.D.N.Y. Sept. 22, 2026) ....20

*Linzy v. Uber Techs., Inc.*, 2023 WL 7302643, 2023 U.S. Dist. LEXIS 198838 (S.D.N.Y. Nov. 6, 2023) ....31

*Miller v. Lamanna*, 169 F.4th 118 (2d Cir. 2026) ....13

*Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818 (S.D.N.Y. 2018) ....................................... 10

*Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, 2020 U.S. Dist. LEXIS 217024 (S.D.N.Y. Nov. 19, 2020) ........................................................................................ 9

*Palazzo v. Corio*, 232 F.3d 38 (2d Cir. 2000) ........................................................................ 28

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) .......................................................... 27, 32

*Perry v. City of New York*, 2016 WL 11807719, 2016 U.S. Dist. LEXIS 205869 (S.D.N.Y. Feb. 11, 2016) .................................................................................. 26, 27

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997) ................................................................ 13

*Phillips v. City of Middletown*, 2021 WL 4462821 (S.D.N.Y. Sept. 29, 2021) ............................. 25

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ................................. 22

*Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171 (S.D.N.Y. 2013) ........................ 24, 27, 29, 32

*Ramgoolie v. Ramgoolie*, 2018 WL 3817590 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018) .......................... 22

*Raymond v. IBM Corp.*, 148 F.3d 63 (2d Cir. 1998) ..................................................................... 22

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............................................... 30

*SEC v. KPMG LLP*, 412 F. Supp. 2d 349 (S.D.N.Y. 2006) ......................................................... 11

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) ..................................................... 13

*Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220 (2d Cir. 2004) ...................................................... 22

*Tang Capital Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363 (S.D.N.Y. 2024) ........................... 18

*Walker v. Carrozzo*, 664 F. Supp. 3d 490 (S.D.N.Y. 2023) ......................................................... 33

*Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70 (2d Cir. 2016) .......................................................... 19

**Rules**

Fed. R. Civ. P. 12(f) ............................................................................................................ 6, 8

Fed. R. Civ. P. 20(a) ................................................................................................................ 32

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 15

Fed. R. Civ. P. 26(b)(3) ............................................................................................................ 26

Fed. R. Civ. P. 32(a)(8) ............................................................................................................ 31

Fed. R. Civ. P. 37(c)(1) ........................................................................................................ 27, 32

Fed. R. Civ. P. 56(c)(1) ............................................................................................................ 20

Fed. R. Civ. P. 56(c)(2) ............................................................................................ 6, 8, 18, 33

Fed. R. Civ. P. 56(c)(3) ............................................................................................................ 23

Fed. R. Civ. P. 56(c)(4) ............................................................................................................ 24

Fed. R. Civ. P. 56(e)(1) ....................21
Fed. R. Civ. P. 6(b)(1)(B) ....................21, 22
Fed. R. Evid. 701(a) ....................29
Fed. R. Evid. 801(d)(2)(A) ....................18
Fed. R. Evid. 801(d)(2)(D) ....................19, 29, 32
Fed. R. Evid. 804(b)(1) ....................32
Individual Rules & Practices in Civil Cases of Hon. Vernon S. Broderick, Rule 4.D ....................25
Local Civ. R. 56.1 .................... passim
S.D.N.Y. Electronic Case Filing Rules & Instructions, Rule 13.26 ....................7, 22, 23

**Other Authorities**

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment....................8, 18

Plaintiffs DR. STELLA SAFO, GERALDINE LLAMES, AMANDA MISITI, and EMILIE BRUZELIUS (collectively, "Plaintiffs"), by and through their undersigned attorneys, submit this memorandum of law, together with the Declaration of Jan Cervenka ("Cervenka Decl."), in opposition to the motion to strike (Dkts. 251-253) (the "Motion") filed by Defendants DR. PRABHJOT SINGH, DR. DENNIS S. CHARNEY, BRUNO SILVA, and ICAHN SCHOOL of MEDICINE at MOUNT SINAI ("ISMMS" or "Mount Sinai") (collectively, "Defendants"). Citations to "Mot." are to Defendants' memorandum of law in support of the Motion (Dkt. 252).

## PRELIMINARY STATEMENT

Defendants moved for summary judgment on sixteen counts brought by four Plaintiffs, with a 53-page brief (Dkt. 208) (the "Moving Memorandum"), a Rule 56.1 statement of 244 paragraphs (Dkt. 213) (the "Moving 56.1 Statement") and 99 exhibits (Dkts. 210-212). Plaintiffs answered every paragraph and set out 473 additional facts with record citations (Dkt. 242) (the "Opposition 56.1 Statement"; its additional facts, *id.* ¶¶245-717, the "Additional Statement"), filed an opposition brief (Dkt. 241) (the "Opposition Memorandum"), and placed before the Court first-hand accounts of witnesses Defendants chose not to depose (collectively, the "Opposition"). Defendants now ask the Court to strike most of the Opposition: all 473 additional facts, 77 responses to the Moving 56.1 Statement, the corrected versions of both opposition papers, four declarations in their entirety, three in part, and a deposition transcript.

First, no rule authorizes the relief Defendants seek. Rule 12(f) allows motions to strike actual pleadings, not the Opposition; and Rule 56(c)(2) allows a party to object to specific proffers of evidence, not to move to strike. Defendants' own authorities confirm that the practice on summary judgment is to disregard what is inadmissible or immaterial, not to strike filings.

Second, Defendants have suffered no prejudice. They answered all 473 additional facts in a 264-page reply and response under Rule 56.1 (Dkt. 257) (the "Reply 56.1 Statement"), and they say that "regardless of whether admitted or disputed, none of the 'facts' cited in Plaintiffs' Additional Statement preclude summary judgment." (*Id.* at 137.) A party that has answered everything, and says none of it matters, cannot show that leaving it on the docket does it harm.

Third, the Motion faults Plaintiffs for what Defendants have themselves done. Plaintiffs corrected misaligned citations in their timely papers in the open: they refiled under the Court's ECF Rules, served redlines showing every change, and asked the Clerk to treat the corrected papers as operative. (Dkt. 243-1.) Defendants rewrote nine paragraphs of their own Moving 56.1 Statement four months after filing it, without leave, inside the Reply 56.1 Statement, and added twenty new exhibits there. They insist that a Rule 56.1 submission is "not argument" (Mot. at 2), yet the Reply 56.1 Statement adds some 11,000 words of argument to a reply memorandum (Dkt. 255) (the "Reply Memorandum") that used 7,499 of the 7,500 words the Court allowed. (Dkt. 250.) And while Plaintiffs, in light of the Court's November 4, 2026 Order (Dkt. 265), are seeking leave before moving against those papers, Defendants filed what is in substance a second reply brief without asking for leave at all.

Fourth, the Motion seeks to strike evidence that a jury is entitled to weigh in this sex discrimination lawsuit: that Singh told Misiti at her interview that there "had been a lot of women" at the Institute "and he had to get rid of them" (Dkt. 257 ¶¶245-46); that Silva called Plaintiffs "bitch" and "cunt" as "part of his normal conversation" (*id.* ¶¶251-52 (admitted)); and that Mount Sinai's counsel stated on the record at its Rule 30(b)(6) deposition that "Mount Sinai is not relying on its investigation for its defense" (*id.* ¶610), even as the Reply Memorandum invokes that investigation as Charney's defense (Dkt. 255 at 23). The Motion should be denied.

## LEGAL STANDARD

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The 2010 amendments made that kind of objection the mechanism for evidentiary challenges on summary judgment: "There is no need to make a separate motion to strike." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment, subdiv. (c)(2). Separately, Rule 12(f) does not allow a court to strike motion papers. *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008) (report and recommendation adopted at 326).

Local Civil Rule 56.1(b) requires the opposing party to file "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried," each "followed by citation to evidence that would be admissible." Local Civ. R. 56.1(b), (d).

The Court's practice is to disregard non-compliant material rather than strike submissions. "Rather than scrutinize a Rule 56.1 statement line by line, a court may simply disregard any improper assertions or inadmissible evidence," *DHIP, LLC v. Fifth Third Bank*, 2021 WL 4481118, at *1 n.2 (S.D.N.Y. Sept. 28, 2021) (Broderick, J.) (internal quotation marks omitted), *aff'd*, 2023 WL 1806752 (2d Cir. Feb. 8, 2023). *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 397 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019), involved a 998-paragraph statement supported by 370 exhibits; the court held that striking it was "too severe" and instead "disregard[ed] the portions . . . that are not compliant with Local Rule 56.1."

# ARGUMENT

## I. Courts Disfavor Motions to Strike Summary Judgment Submissions.

Defendants argue that courts "routinely strike" non-compliant Rule 56.1 submissions (Mot. at 3), but the cases they cite held the opposite. *Blue v. City of New York*, 2018 WL 1136613, 2018 U.S. Dist. LEXIS 33761, at *4-5 (S.D.N.Y. Mar. 1, 2018), *DHIP* and *Tartikov* disregarded improper material; *DeSimone* denied a motion to strike portions of a declaration "as moot" because "any inappropriate portions of the Plaintiff's submissions have been disregarded." *DeSimone v. JP Morgan/Chase Bank*, 2004 WL 2978011, 2004 U.S. Dist. LEXIS 25621, at *10-11 (S.D.N.Y. Dec. 22, 2004). *Castagna* "d[id] not consider" a deficient counterstatement, *Castagna v. Driscoll*, 2025 WL 2402615, 2025 U.S. Dist. LEXIS 160899, at *4 (S.D.N.Y. Aug. 19, 2025); *Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, 2020 U.S. Dist. LEXIS 217024, at *1 & n.1 (S.D.N.Y. Nov. 19, 2020) struck nothing; and *Fair Hous. Just. Ctr., Inc. v. McDonald*, 2026 WL 1875800, 2026 U.S. Dist. LEXIS 144503, at *23 (S.D.N.Y. June 30, 2026) (Broderick, J.), declined to strike the plaintiffs' Rule 56.1 counterstatement in the wholesale manner Defendants seek here.

*Collins v. City of New York*, 2017 WL 11582468, 2017 U.S. Dist. LEXIS 234309 (S.D.N.Y. July 10, 2017), struck an opposition outright for reasons that show how far this Motion is from the mark. Judge Nathan struck a brief whose author "utterly fail[ed] to marshal any facts," did not "make a single citation to the record," and used 85 single-spaced footnotes "to avoid applicable page limitations." *Id.* at *5-11. The 56.1 point came last, rested on that court's Individual Rule capping 56.1 statements at 25 pages, and was remedied by leave to re-file. *Id.* at *11-13. This Court's Individual Rules set no page limit for Rule 56.1 statements, and Defendants' complaint about Plaintiffs' record citations is that there are too many — the opposite of *Collins*. Length is not a ground to strike: "the appropriate length of the 'short and concise' statement contemplated

by Local Civil Rule 56.1 varies by case complexity and there is no hard and fast page limit," and courts in this District have denied motions to strike a 405-paragraph, 134-page statement and a 403-paragraph, 90-page statement. *Fair Hous. Just. Ctr.*, 2026 WL 1875800, 2026 U.S. Dist. LEXIS 144503, at *22 (quoting *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 839 (S.D.N.Y. 2018)); *accord Tartikov*, 138 F. Supp. 3d at 395 ("[T]he mere fact that a Local Rule 56.1 statement is lengthy does not render it in violation of the Rule."). The length of Plaintiffs' statement is a function of the motion it answers: Defendants moved on every claim of every Plaintiff and cannot now complain that the Opposition is as weighty as their motion. *See Tartikov,* 138 F. Supp. 3d at 396-97 (declining relief where defendants had to "verify[] each and every one of the 998 'facts' asserted").

Defendants' own Rule 56.1 text is longer than Plaintiffs'. The Moving 56.1 Statement, Defendants' replies to Plaintiffs' responses and their responses to the Additional Statement total about 37,500 words; Plaintiffs' responses and the Additional Statement total about 29,500. As this Court observed in *Fair Housing Justice Center*, the movants' own counterstatement there was "actually longer" than the statement they asked the Court to strike. 2026 WL 1875800, 2026 U.S. Dist. LEXIS 144503, at *22. The same is true here, by some 8,000 words.

## II. <u>Local Rule 56.1(b) Authorizes the Additional Statement.</u>

The Local Rules allow a party opposing a motion for summary judgment to include "additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). That is what the Additional Statement does.

The "genuine issue to be tried" is whether Defendants discriminated against Plaintiffs, and the additional facts are the evidence from which a jury could find so. Much of that evidence is, by

its nature, undisputed: for example, what Singh said to Misiti at her interview or what Mount Sinai's designee conceded about its policies. Defendants have now admitted, in whole or in part, more than 150 of the 473 additional paragraphs. (*See, e.g.*, Dkt. 257 ¶¶246, 248, 251-52, 325-26, 398, 438-47, 506-11, 610, 651-52, 654, 681, 686.) Plaintiffs included these now-undisputed facts because the Moving 56.1 Statement framed the relevant facts too narrowly. "Local Rule 56.1(b) allows a party opposing a motion to submit its own statement of additional material facts not in dispute." *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 392 (S.D.N.Y. 2006) (denying motion to strike non-movant's Counterstatement and Statement of Facts even where it was "overly argumentative").

Further, this Court has already declined to strike a counterstatement on the ground Defendants press. In *Fair Housing Justice Center*, 2026 U.S. Dist. LEXIS 144503, at *21-22, defendants argued that a 181-paragraph "counterstatement of undisputed material facts" was "improper and must be struck from the record" because it was not styled as a statement of disputed facts. The Court held: "I cannot find that merely naming the counterstatement a statement of undisputed facts, alone, is sanctionable, or warrants striking Plaintiffs' additional paragraphs from the record." *Id.* at *23. Defendants distinguish that case because its plaintiffs had cross-moved, so that calling their facts "disputed" would have been "inconsistent with their litigation posture." (Mot. at 4 n.1.) The distinction is inconsequential: Plaintiffs' Additional Statement consists in large part of Defendants' witnesses' admissions and Defendants' documents, and calling them "disputed" would have been inconsistent with the record without changing their function.

Nor are the additional facts "unrelated to those raised by Defendants." (Mot. at 3.) Each section of the Additional Statement answers a section of the Moving Memorandum — Silva's language (Dkt. 242 ¶¶251-62), Berman's conduct (¶¶263-71), Singh's silencing and exclusion

(¶¶272-81), notice to ISMMS (¶¶319-35, 386-406, 549-81), Bruzelius's pay and reporting line (¶¶312-18, 664-93) — and the Opposition Memorandum cross-references them throughout. (See Dkt. 241 §§ II-V.) *DHIP*, on which Defendants also rely, disregarded a handful of improper facts in a footnote. 2021 WL 4481118, at *1 n.2.

## III. <u>"Immateriality" Is a Merits Argument, Not a Ground to Strike.</u>

Defendants spend most of the Motion arguing that some facts in the Opposition 56.1 Statement are immaterial and should be struck. (Mot. at 4-7.) Whether a fact is material is a question the Court decides in ruling on the summary-judgment motion, on the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not a ground for striking the fact from the record. Faced with the same argument in *Tartikov*, the court "decline[d] to make a blanket ruling on the relevance of Plaintiffs' Rule 56.1 Statements, although it will, as a matter of course, not consider irrelevant facts because they are, by nature, not pertinent to the case." 138 F. Supp. 3d at 396. Defendants' concession that the additional facts will not "preclude summary judgment" (Dkt. 257 at 137) confirms that nothing turns on striking them. Plaintiffs nonetheless address the categories Defendants identify, because each is material.

### A. *The Treatment of Other Women at the Institute Is Material.*

Defendants argue that the experiences of former plaintiffs Drs. Holly Atkinson and Natasha Anushri Anandaraja (Dkt. 242 ¶¶298-300, 358-67, 382, 431-32, 436) cannot be material because no remaining Plaintiff was aware of them, citing *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 516 (S.D.N.Y. 2016). (Mot. at 5, 14.) Defendants are wrong for multiple reasons: First, *Donahue* was decided on a motion to dismiss and the standard for a Rule 12(b)(6) determination differs from that used to evaluate the evidentiary record at summary judgment. *Miller v. Lamanna*, 169 F.4th 118, 131 (2d Cir. 2026). Second, *Donahue* held the opposite of what Defendants cite it

for: "a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim," and harassment of which the plaintiff was unaware may support the claim because the issue is whether the environment was pervasively hostile, not whether she had notice of it. *Donahue*, 208 F. Supp. 3d at 515 (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), and *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997)). The *Donahue* court noted that the plaintiff in *Cruz* had defeated summary judgment in part with "affidavit evidence from other employees regarding the supervisor's behavior." *Id.* at 516. Its holding was only that such allegations could not rescue a "patently inadequate" federal pleading resting on two mild remarks, *id.*, and even then the plaintiff's NYCHRL claims survived, *id.* at 516-17. The Supreme Court has rejected any *per se* rule excluding evidence of discrimination against other employees; relevance "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

The connection here is particularly direct. Singh told Plaintiff Misiti that when he arrived at Mount Sinai, there "had been a lot of women . . . and he had to get rid of them." (Dkt. 257 ¶¶245-46 (admitted as to the testimony).) Atkinson and Anandaraja were two of them. Singh also made his "sex exams" remark about Atkinson directly to Safo. (Dkt. 242 ¶295.) Singh's treatment of Atkinson and Anandaraja corroborates each Plaintiff's account of how Singh treated them. (Dkt. 230 ¶¶5-6; Dkt. 232 ¶¶6-7.) The Reply Memorandum argues that Singh was an equal-opportunity bad manager (Dkt. 255 at 4-5); Plaintiffs are entitled to counter with evidence that he in fact discriminated against women.

Defendants made a similar argument to Magistrate Judge Willis in 2025, contending that because Atkinson and Anandaraja "have been dismissed," "their experiences are not relevant."

(Dkt. 193 at 10.) The Court rejected the argument and denied a protective order as to how the Institute's policies and practices were applied to dismissed plaintiffs. (*Id.* at 11.) Tellingly, Defendants did not mention this discovery ruling from Judge Willis despite invoking her other rulings 89 times in the Reply 56.1 Statement.

**B. *The Strathdee Paragraphs and the Search-Committee Evidence Are Material.***

Defendants argue the 2014 recruitment of Dr. Steffanie Strathdee (Dkt. 242 ¶¶483-505) and the search committee's assessment of Singh (¶¶506-11) are immaterial. (Mot. at 5-6.) They are not. Charney was a central figure in the hiring process, and Plaintiffs claim that he actually participated in, aided and abetted the discrimination at the Institute. (Dkt. 241 § V.) Evidence that Charney torpedoed his search committee's recommended candidate — a woman with the record the committee had advertised for — in favor of a candidate to whom the committee gave only "a very heavily caveated endorsement" (Dkt. 257 ¶506 (admitted)) bears on how Charney valued women's qualifications compared to Singh's and on whether Defendants' account of Singh's selection is credible. (*Compare* Dkt. 213 ¶¶15-19, *with* Dkt. 257 ¶¶506-11.)

**C. *Charney's Conduct Toward Complainants Is Material.***

The paragraphs describing Charney's treatment of those who brought complaints to him (Dkt. 242 ¶¶291-93, 471-82) go to whether a complaint about Singh could safely be made to him. This is a question Defendants put at issue by arguing that no Plaintiff complained to Charney (Dkt. 255 at 23).

**D. *The 2018 Investigation Is Material, and Defendants Rely on It.***

Defendants ask the Court to strike or disregard some ninety paragraphs concerning Mount Sinai's 2018 investigation into Singh (the "2018 Investigation") on the ground that Judge Willis "determined" the 2018 Investigation is "not relevant." (Mot. at 6 n.3; Dkt. 257 ¶¶332-34, 396-430,

524, 537-50, 582-623.) That is misleading: Judge Willis's orders (Dkts. 135, 200) resolved discovery disputes concerning the 2018 Investigation under Rule 26(b)(1). They decided what further discovery was relevant and proportional, not whether evidence already in the record is material under Rule 56.

The 2018 Investigation is material to four issues Defendants themselves raise: (1) whether Mount Sinai knew of the harassment and failed to remedy it, which affects its liability for the conduct of Silva and Berman; (2) whether Charney, who determined the outcome of the 2018 Investigation, actually participated in the discrimination (Dkt. 255 at 23-24); (3) whether Singh retaliated against Bruzelius for participating in it (Dkt. 208 at 41-42); and (4) whether Defendants' stated reasons are pretextual, since the Moving and Reply 56.1 Statements rely on what the 2018 Investigation recorded (Dkts. 213/257 ¶¶76, 171, 220, 229-241).

Defendants claim they do not rely on the 2018 Investigation as a defense (Dkt. 257 ¶610 (admitted); Dkt. 223-25 (ISMMS 30(b)(6) Tr. 266)), but their filings show otherwise. The Reply Memorandum argues that Charney cannot be liable because he "commenced an investigation immediately following the receipt of discrimination and harassment complaints." (Dkt. 255 at 23.) The Moving and Reply 56.1 Statements quote the statements Misiti and Bruzelius gave to the investigator (Dkt. 213/257 ¶¶76, 171, 220) and relies on Singh's account of what he knew about it (*id.* ¶¶229-38). Defendants cannot have it both ways. They placed the 2018 Investigation at issue in their own summary judgment papers and cannot bar Plaintiffs from answering with evidence they dislike.

**E. *The ATLAS Paragraphs Are Not Barred by the April 2024 Order.***

Defendants argue that paragraphs touching Project ATLAS (Dkt. 242 ¶¶404-06, 518-19, 683, 693-700) are precluded by Judge Willis's order limiting deposition questioning about "the

Project and its management." (Mot. at 6, 15-16 (citing Dkt. 143 at 6-7).) That order governed the scope of depositions; it did not exclude evidence or prevent Khan, a witness Defendants chose not to depose, from describing discriminatory treatment he witnessed, including Silva's sexist treatment of Safo, Llames and other women, and Singh's systematic sidelining of Llames in work meetings. (Dkt. 224 ¶¶5-11, 15-18.) Moreover, Defendants first put ATLAS at issue: their papers define the project (Dkt. 213 at 2 n.1), describe its leadership (*id.* ¶¶8, 199-201), and justify the change in Bruzelius's reporting line by a "leadership void on the ATLAS team" (Dkt. 255 at 22). Paragraphs 681 and 693 of the Opposition 56.1 Statement are Weisman's own testimony about that leadership, which Defendants admitted. (Dkt. 257 ¶¶681, 693.)

### F. *Plaintiffs Withdraw Paragraphs That Serve No Purpose.*

Plaintiffs withdraw paragraphs 331, 338, 526, 701 and 702 ("left intentionally blank"), paragraph 378 (the date of Bruzelius's dissertation defense), paragraphs 385, 436 and 693 to the extent they repeat paragraphs 320, 310 and 681, and paragraphs 381 and 512 to the extent they repeat paragraph 312. Where a remaining paragraph overlaps a response to Defendants' statement, the overlap reflects that the same evidence answers both.

## IV. Olivarius's Testimony Rests on Personal Knowledge, Not Privilege.

In October 2019, Defendants threatened to move to disqualify Plaintiffs' counsel on the theory that Olivarius had met Singh "under the false pretense of a philanthropic interest" to extract confidential information. (Dkt. 50 at 3.) Plaintiffs answered that the meetings took place at Singh's invitation, in Olivarius's capacity as a prospective donor, almost a year before any Plaintiff retained her as counsel, and that "Olivarius learned nothing during her meetings with Singh of relevance to this action or that Plaintiffs will seek to use." (Dkt. 50 at 5; *see* Dkt. 50-2 ¶¶6-18, 28.) Magistrate Judge Fox denied the expedited discovery Defendants sought because "it does not

appear that any basis exists for the defendants' anticipated motion to disqualify," and no motion followed. (Dkt. 55 at 3.)

The challenged paragraphs concern what Olivarius saw and did as a prospective donor (Singh's solicitation of a gift of roughly $100 million, her withdrawal of it after learning how he treated women, what Olivarius reported to Jonathan Taylor of Mount Sinai's development office before and after meeting Singh, and what Mount Sinai did with that information). (Dkt. 50-2 ¶¶7-9, 14-18, 23.) That is evidence of what Mount Sinai was told about Singh's treatment of women, and when, not of the underlying discrimination, which is all Plaintiffs' January 2025 letter addressed when it said that Olivarius had "no personal knowledge as to why the AIGH internal investigation started or the underlying discriminatory conduct." (Dkt. 160 at 2.)

More to the point, it was Defendants who made Olivarius a fact witness on these subjects. In January 2025, they moved to compel her deposition on "her communications with donors and others at Mount Sinai concerning Singh and the allegations in the complaint, her purported personal inquiry into Singh, her decision not to proceed with the donation, her meetings with Singh, and her public relations campaign." (Dkt. 157 at 3.) Judge Willis found that "there is deposition testimony concerning Dr. Olivarius' involvement, for nearly a year, as a fact witness," and ordered the deposition. (Dkt. 193 at 4, 6.) The "serious concerns" language Defendants quote (Mot. at 4 n.2) comes from that ruling and addressed the opposite problem: the Court's concern was that Plaintiffs might invoke privilege to shield Olivarius's recollection of these events, and it held that, "[t]aking their initial representations as true," questioning her about them would encounter no privileged information. (Dkt. 193 at 5.) Plaintiffs produced her and Defendants examined her. The concerns did not materialize.

Defendants' characterization of Olivarius's testimony as "patently absurd" (Mot. at 4) rings hollow given their Reply 56.1 Statement admits its content. (Dkt. 257 ¶¶336-37, 343-44, 383-84.) A party that obtains an order compelling a witness's deposition because she is a fact witness to specified events cannot be heard to say that her testimony about those events is immaterial. Nor is there any inconsistency on which an estoppel could rest. Plaintiffs' 2019 position was that Olivarius held no confidential information of Singh's and had no knowledge of the underlying discrimination. That remains the case.

## V. <u>The Hearsay and "Argumentative" Objections Fail Under Rule 56(c)(2).</u>

Defendants object that a dozen paragraphs of the Opposition 56.1 Statement rest on hearsay. (Mot. at 6-7 & n.4.) A Rule 56(c)(2) objection "functions much as an objection at trial, adjusted for the pretrial setting." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. On summary judgment, the question is whether the content can be presented in admissible form at trial. Fed. R. Civ. P. 56(c)(2); *Tang Capital Partners, LP v. BRC Inc.*, 757 F. Supp. 3d 363, 374 (S.D.N.Y. 2024) (rejecting hearsay objections because the challenged statements were non-hearsay, fell within a hearsay exception, or could otherwise be presented through trial testimony).

First, statements by Singh, Charney and Silva are admissions of parties, Fed. R. Evid. 801(d)(2)(A), and Singh's remark that Atkinson was conducting "sex exams" in her office (Dkt. 242 ¶¶294-96) is attested directly by Dr. James Faghmous, to whom Singh said it (Dkt. 236 ¶21). Second, statements by Mount Sinai employees within the scope of their duties — Knaup, Lowy, Jones-Winter, the development officer — are admissions of ISMMS. Fed. R. Evid. 801(d)(2)(D); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 79 (2d Cir. 2016). Third, several paragraphs are offered not for their truth but for notice or effect on the listener: what Knaup was told about Berman before hiring him (¶456) goes to what ISMMS knew about Berman's treatment of women; Beddoe's

testimony that complaints about AIGH were "the best kept secret at Mount Sinai" (¶634) goes to how widely Plaintiffs' complaints were known, not to whether they were true. Fourth, where a paragraph reports what a Plaintiff was told about an event, the event is also independently confirmed by an eyewitness whom Defendants chose not to depose. (*Compare* Dkt. 242 ¶302 *with* Dkt. 235 ¶5; *compare* Dkt. 242 ¶372 *with* Dkt. 224 ¶19.) If any remaining paragraphs cannot be presented in admissible form, the Court will give them no weight; no order striking them is necessary.

## VI. <u>**Plaintiffs' Responses Comply with Rule 56.1(b) and Rule 56(c)(1).**</u>

Defendants ask the Court to strike 77 of Plaintiffs' responses to the 244-paragraph Moving 56.1 Statement. (Mot. at 7-8.) Since July 2024, Local Rule 56.1(b) has required nonmovants to respond to the movant's statement by "admitting or denying, and otherwise responding to, each numbered paragraph." Local Civ. R. 56.1(b). A response that admits what a document says and then supplies the testimony Defendants omitted, or disputes the characterization Defendants build on an admitted fact, is "otherwise responding." The forty-some "admit the fact, but then add" responses, the 15 responses that complete a selective quotation, and seven that admit the text of a quotation but dispute Defendants' characterization are therefore proper.

Defendants rely on stale authority on this point. *Goldstick v. Hartford, Inc.*, 2002 WL 1906029, 2002 U.S. Dist. LEXIS 15247 (S.D.N.Y. Aug. 19, 2002), was decided prior to the Local Rules' July 2024 amendment, which added the "otherwise responding to" language. Even so, that court struck only the narrative, leaving "the admission or denial of the assertions set forth in defendants' Rule 56.1 Statement and the citations to the record" untouched. *Id.* at *3.

For example, when Defendants' paragraph 84 characterizes an email as criticizing Safo's "combative" tone, or paragraph 162 characterizes Singh's offer of a bonus to Le as a "retention

bonus," it is entirely proper for Plaintiffs to admit the documents say what they say but dispute the characterizations or add relevant context. Defendants concede this point in practice by making similar responses in the Reply 56.1 Statement. (*E.g.*, Dkt. 257 ¶¶25, 46, 62, 77, 125.)

Defendants say that nine responses dispute "something Defendants did not assert." (Mot. at 7.) In each, Defendants' paragraph quoted a job description, a written policy or a word of praise, and the use Defendants make of it in their brief is that the document reflected how the Institute actually operated. Plaintiffs' responses admit the document and dispute that implication, with citations to the record. (Dkt. 242 ¶¶108-09, 112, 172, 186-88.) That is "otherwise responding." Plaintiffs acknowledge that their responses to paragraphs 26 and 30 admit the existence of the policies described, and that the record support for the dispute about how those policies were applied appears in the Additional Statement rather than in the responses themselves. (See Dkt. 242 ¶¶437-47, 567-81.)

The six responses Defendants say cite no evidence (Mot. at 8) fall into two groups. Paragraphs 135 and 163 dispute Defendants' assertion because the material Defendants cite does not support it: Escosia never testified to what paragraph 135 attributes to him, and the document cited in paragraph 163 says nothing about "retention." Rule 56(c)(1)(B) expressly permits a party to dispute a fact by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *Kroll LLC v. Povinelli*, 2026 WL 2837709, 2026 U.S. Dist. LEXIS 214403, at *7 (S.D.N.Y. Sept. 22, 2026). As this Court has put it, "allegations are not 'deemed true simply by virtue of their assertion in the Local Rule 56.1 statement.'" *Blue*, 2018 WL 1136613, 2018 U.S. Dist. LEXIS 33761, at *4 (quoting *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008)). As to the second group, paragraphs 124 and 138 incorporate by cross-reference the responses to paragraphs 123 and 137, which cite evidence.

Should the Court find any of Plaintiffs' responses deficient, Plaintiffs respectfully request the Court give them an opportunity to properly support or address relevant facts under Rule 56(e)(1).

**VII. <u>The Corrected Filings Are Operative and Caused No Prejudice.</u>**

Plaintiffs filed their opposition brief and Rule 56.1 response on August 31, 2026 (Dkts. 231, 234), and on September 9 filed the corrected versions, the Opposition Memorandum and the Opposition 56.1 Statement (Dkts. 241, 242), served redlines on Defendants, and asked the Clerk's ECF Quality Assurance Unit to treat the corrected versions as operative; the Unit "marked [the originals] deficient and referred to the corrected filings." (Dkt. 243-1.) The Court has since cited Dkt. 241 as Plaintiffs' opposition. (Dkt. 247.) So have Defendants: the Reply Memorandum cites Dkt. 241 as "Opp." (Dkt. 255 at 3 n.1), and the Reply 56.1 Statement is captioned as a reply to Plaintiffs' "Corrected Response" (Dkt. 257 at 1). Defendants asked for, and received, 23 additional days to reply, nine of them "to account for the time Defendants have spent reviewing" the original filings. (Dkt. 243 at 3; Dkt. 245.)

Against that history, the argument that the corrected filings must be struck because Plaintiffs did not move under Rule 6(b)(1)(B) elevates form over substance. (Mot. at 9.) The cases Defendants cite involve papers filed after a deadline: in *Gadsden*, opposition papers filed days after a deadline the court had extended with the warning that "no further extensions of time will [be] granted," by counsel who had "repeatedly ignored court-imposed and statutory deadlines," *Gadsden v. Jones Lang Lasalle Ams., Inc.*, 210 F. Supp. 2d 430, 434-37 & n.3 (S.D.N.Y. 2002); in *Tancredi*, a fee motion filed seven days late with no reason given, where the Second Circuit nonetheless observed that the "delay was minimal and it seems unlikely that plaintiffs suffered any prejudice," *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 228 (2d Cir. 2004). In *Ramgoolie*, the

defendant filed his Rule 56.1 statement late and "two days before Plaintiff's reply brief was due," with no explanation beyond counsel's caseload; even there the court considered the late submissions and deemed admitted only the paragraphs he never addressed. *Ramgoolie v. Ramgoolie*, 2018 WL 3817590, at *2-3 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4266015, at *5 (S.D.N.Y. Sept. 6, 2018).

Unlike in Defendants' cases, Plaintiffs' opposition papers were timely. What followed was a correction of citations contained in timely papers, served with redlines, consistent with the Court's Electronic Case Filing Rule 13.26. *Gadsden* itself recognized that a court may treat a letter as a Rule 6(b) motion where it has sufficient "formality and precision," 210 F. Supp. 2d at 436, and Plaintiffs' September 9 email to the Court's Quality Assurance Unit identified the error, enclosed the redlines and served Defendants. (Dkt. 243-1.)

To the extent a motion is necessary, Plaintiffs respectfully request leave *nunc pro tunc*. The excusable-neglect inquiry "is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission,' including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond v. IBM Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380-382, 395 (1993)). There is no prejudice: Defendants received redlines the day the corrections were filed, obtained an extension to address them, and have responded to them in full. The delay was nine days and affected no other deadline.

Plaintiffs acted in good faith to fix erroneous cross-references between the Opposition Memorandum and the Opposition 56.1 Statement, which fell out of alignment between an earlier draft and the version filed. Plaintiffs discovered the error on review after filing and corrected as soon as practicable. Plaintiffs disclosed every change with a redline. ECF Rule 13.26's instruction

to "[i]mmediately refile" a document filed in error (Mot. at 9) sets no limit for discovering citation errors, and Defendants cite no decision applying it that way.

Defendants also argue that Plaintiffs' description of the corrections was "not true" because "more than half of the record citations" in the brief changed. (Mot. at 9-10.) That figure reflects the nature of the errors: a shift in paragraph numbering changed every citation to a shifted paragraph. Plaintiffs' September 9 email correctly stated that the substance of their filings remained unchanged. The three categories of change Defendants identify (Mot. at 10-11) actually confirm this. Defendants point to "new evidence" cited in the corrected brief (Dkt. 236 ¶¶5, 8-10, 58; Dkt. 235 ¶5; Bischoff Tr. 159-60; Dkt. 224 ¶¶12-13) but those documents were timely filed on August 31; only the citations to them changed. Rule 56(c)(3) provides that the Court "may consider other materials in the record," and *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), holds only that the Court is not required to search for material the parties do not point out. The "replacement" citations substitute a correct record cite for an incorrect one, and the substituted Rule 56.1 citations point to exhibits already in the record. None of this added evidence; it simply corrected the pointers to evidence Defendants have had since August 31.

*DeSimone*, Defendants' principal authority, confirms the point. There, the plaintiff, having obtained leave to amend a deficient 56.1 statement, filed with it a new declaration for which no leave had been sought. The court declined to strike the declaration to the extent it was consistent with her prior testimony and pleadings, because "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and "Rule 56.1 does not prohibit the consideration of untimely statements, particularly where the admission of the statement will not prejudice an opposing party." 2004 WL 2978011, at *3 (quoting *Holtz*, 258 F.3d at 73, and *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 445 n.1 (S.D.N.Y. 1998)). The

defendants in *DeSimone* also argued, as Defendants do here, that the amended statement's citations to the new evidence should be struck because that evidence had not accompanied the original statement. The court rejected that argument: citations to the declaration would not be stricken "simply because the declaration was not submitted with the Plaintiff's original 56.1 Statement." *Id.* at *3 n.2. What the court did strike were the responses in eight paragraphs that the plaintiff had changed from "undisputed" to complete or partial "denials," because "changing the substantive responses to the Defendants' 56.1 Statement bears no relation to complying with the local rule." Id. at *4. Here, Defendants identify no response in the Opposition 56.1 Statement that changed from an admission to a denial or vice versa, because there is none.

## VIII. <u>Declarations Should Be Considered.</u>

Rule 56(c)(4) requires that a valid declaration "set out facts that would be admissible in evidence" and show the declarant's personal knowledge and competence. Where some material falls short, the remedy is to disregard it, not to strike the declaration. *Tartikov*, 138 F. Supp. 3d at 403 ("The Court will disregard such statements, but otherwise not strike the Declaration."); *DeSimone*, 2004 WL 2978011, at *4. In *Preuss v. Kolmar Lab'ys, Inc.*, 970 F. Supp. 2d 171, 176-77 (S.D.N.Y. 2013), the case Defendants cite for the proposition that courts "strike declarations," the court declined to strike three of the four affirmations challenged.

### A. *The Faghmous Declaration.*

Faghmous was the Institute's Chief Technology Officer and a faculty member from July 2015 to September 2017; he supervised Bruzelius, worked directly with Llames, and observed Singh's treatment of Safo, Llames, Bruzelius and Atkinson, which he described in a sworn statement in December 2021. (Dkt. 236 ¶¶5, 21, 50-57.) Plaintiffs disclosed him in 2022 as a witness to "[t]he discriminatory and hostile work environment at AIGH and the failings of the

ATLAS program." (Dkt. 253 Ex. 3, No. 20.) Plaintiffs' First Amended Disclosure of Individuals Likely to Have Discoverable Information, served on August 25, 2022, listed him again. (Cervenka Decl. Ex. A, No. 28.) Judge Willis identified him as one of Safo's comparators. (Dkt. 193 at 11.) Defendants chose to not depose him.

Defendants' first objection is that the declaration is eleven single-spaced pages, and Plaintiffs did not seek leave under Rule 4.D of the Court's Individual Rules. (Mot. at 12.) The omission was an oversight and Plaintiffs respectfully request leave *nunc pro tunc*. Rule 4.D permits leave "for good cause," and the cause is the one the Court accepted in granting Dkt. 219: "Because no deposition transcript exists for these witnesses, declarations are the only means by which Plaintiffs can place their first-hand knowledge before the Court in opposition to summary judgment." (Dkt. 219 at 1.) Defendants' case, *Phillips v. City of Middletown*, 2021 WL 4462821, at *4 n.9 (S.D.N.Y. Sept. 29, 2021) (Mot. at 12), involved a 29-page attorney "Declaration in Opposition" that "consist[ed] entirely of factual assertions and legal arguments," which the court declined to consider because "legal argument must be set forth in a memorandum of law, not in an attorney affirmation." *Id.* (internal quotation marks omitted). It says nothing about how a fact witness's account of what he saw should be treated.

Defendants' second objection is that much of the declaration concerns matters other than discrimination against Plaintiffs. (Mot. at 12-13.) The paragraphs Plaintiffs rely on concern discrimination: Safo's title and responsibilities (Dkt. 242 ¶43), Llames's assigned duties (¶¶108-09), the treatment of women at the Institute (¶172), Atkinson's accomplishments (¶433), and the ease with which men obtained raises (Dkt. 241 at 35 (citing Dkt. 236 ¶58)). Paragraph 53, which Defendants call a mere "impression," sits among six paragraphs of specific observed facts, and

paragraph 56 concerns Berman's outbursts, which Defendants have conceded. (Dkt. 257 ¶¶263-64.)

Defendants' third objection is that the statement was "shielded" from discovery and cannot now be used. (Mot. at 13 n.8.) A statement prepared by a witness at counsel's request in anticipation of litigation is work product, Fed. R. Civ. P. 26(b)(3), and, as Judge Willis held in her July 29, 2025 order, "[e]ven the executed affidavits of non-party witnesses are attorney-work product until filed with the court." (Dkt. 193 at 19 (collecting cases).) The Court so held as to the Rahona and Escosia statements, rejected Defendants' argument that the witnesses had put their statements "at issue" (*id.* at 22 n.2), directed Plaintiffs to submit the Faghmous statement for *in camera* review, and reserved decision on waiver. (*Id.* at 21-23.) Plaintiffs submitted the Faghmous statement for *in camera* review on August 8, 2025. The Court made no finding of waiver and Defendants took no further steps, effectively abandoning the issue.

Work-product protection lasted until the statement was filed. Filing it with Plaintiffs' opposition was its production, and Defendants have answered it paragraph by paragraph. (Dkt. 257 ¶¶43, 108-09, 172, 433.) The "sword and shield" principle (Mot. at 13) prevents a party from relying on privileged material while withholding it; in *Perry* the remedy was disclosure of the privileged advice on which the employer's defense rested, not preclusion of the defense. *Perry v. City of New York*, 2016 WL 11807719, 2016 U.S. Dist. LEXIS 205869, at *45-47 (S.D.N.Y. Feb. 11, 2016) (Broderick, J.).

Rule 37(c)(1) does not support preclusion. (Mot. at 13 n.8.) The sanction applies only where a failure to disclose was neither substantially justified nor harmless, and the court weighs the party's explanation, the importance of the testimony, the prejudice to the opposing party and the possibility of a continuance, with "discretion to impose other, less drastic, sanctions." *Design*

*Strategy, Inc. v. Davis*, 469 F.3d 284, 296, 298 (2d Cir. 2006) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). The court in *Preuss* applied those principles to deny a motion to strike the affirmations of three witnesses who had never been disclosed at all, because the opposing party "was well aware of the identity of the undisclosed witness and the scope of their knowledge," so that the omission "d[id] not warrant the severe sanction of striking their testimony"; the remedy was a deposition at the non-disclosing party's expense. *Preuss*, 970 F. Supp. 2d at 177 (internal quotation marks omitted). Faghmous was disclosed as a witness in 2022; Defendants knew from Atkinson's deposition that he had given a statement (Mot. at 13); the statement was withheld on a ground the Magistrate Judge found valid as to the two companion statements she ruled on; and Defendants chose not to depose him.

**B. *The Olivarius Declaration.***

Plaintiffs withdraw the declaration of Dr. Olivarius (Dkt. 227). It was offered because Defendants have attacked her character in this case since 2019 (*see* Dkt. 50 at 4, 7 n.13). It is cited once (Dkt. 241 at 9), and nothing in Plaintiffs' opposition depends on it.

**C. *The Anandaraja and Atkinson Declarations.***

The Anandaraja and Atkinson declarations are brief, specific and based on their personal knowledge. As discussed above, their experience with Singh is relevant: they both worked under Singh in the period in which, by his own account, he set about getting rid of the women he inherited (Dkt. 257 ¶¶245-46), and both declarations describe conduct Plaintiffs also describe in their own cases.

Defendants argue that Atkinson's declaration is a sham because she was examined at her deposition on only two of the three subjects it addresses. (Mot. at 14-15.) The sham-affidavit rule permits a court to disregard a declaration that *contradicts* prior deposition testimony without

explanation, not one that supplements it or addresses a subject not fully explored. *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). Defendants identify no contradiction. Paragraph 5 — Atkinson's proposal to incorporate gendered analysis into the Institute's work, which Singh rejected — was not the subject of any deposition question Defendants cite, and paragraphs 6 and 7 add detail consistent with the testimony Defendants cite. (Mot. at 14-15 (citing Dkt. 223-2 (Atkinson Tr. 40, 197)).)

Plaintiffs acknowledge two errors Defendants identify. Paragraph 431 of the Additional Statement cites paragraph 5 of the Atkinson declaration for the statement that Singh told her she had to prove her relevance to "keep her post"; the source is paragraph 6. (Dkt. 232 ¶6.) And pages 41-42 of the Atkinson transcript, cited at paragraph 358, were not included in Dkt. 223-2; Plaintiffs can file those pages or withdraw the citation, as the Court prefers. Neither error warrants striking a declaration.

**D. *The Caliendo and Pollock Declarations.***

Defendants seek to strike one paragraph of each. (Mot. at 15.) Paragraph 10 of the Caliendo declaration records two statements made to her by Clarissa Jones-Winter of Mount Sinai's Labor Relations department. (Dkt. 235 ¶10.) Jones-Winter's duties included handling employee complaints, and her statements on a matter within those duties are admissions of ISMMS under Fed. R. Evid. 801(d)(2)(D), offered for what Mount Sinai knew about Singh's treatment of women by mid-2018.

Paragraph 5 of the Pollock declaration states that in twenty years in academia and industry the declarant had never seen anyone draw genitals during a working session. (Dkt. 228 ¶5.) Pollock was in the room when Singh drew a vagina and remarked "I am no Georgia O'Keefe [*sic*]" and she "remember[s] feeling shocked." (*Id.* ¶4.) Defendants argue that the episode was a trivial slight.

(Dkt. 255 at 14-15.) Paragraph 5 is not an opinion about whether the conduct was unlawful; it is a fact about the witness's own experience that explains her reaction, "rationally based on the witness's perception." Fed. R. Evid. 701(a). It is nothing like the affirmation the court declined to consider in *Preuss*, where a witness with no knowledge of the statements at issue offered an opinion "divorced from the factual context." *Preuss*, 970 F. Supp. 2d at 178. Pollock is a percipient witness to the episode she describes.

**E. *The Khan Declaration.***

Defendants ask the Court to strike paragraphs 12-13 and 21-22 of the Khan declaration as an "end-run" around Judge Willis's April 2024 order. (Mot. at 15-16.) That order, as Defendants quote it, permitted Plaintiffs to explore discriminatory conduct during ATLAS "without asking questions about the Project and its management." (Dkt. 143 at 6.) It regulated what Plaintiffs could ask at depositions; it did not exclude evidence, and Defendants have known since 2022 that Plaintiffs' witnesses would address "compliance failures within the ATLAS project" and "Khan's complaint to USAID concerning Singh's deceptions relating to ATLAS." (Dkt. 253 Ex. 3, Nos. 5, 42, 67.) Khan was not deposed, and the paragraphs at issue are offered for purposes the order did not address.

Paragraphs 21 and 22 describe Khan's complaints to Jones-Winter, Charney and Weisman on his departure in February 2019. (Dkt. 224 ¶¶21-22.) They are cited (Dkt. 242 ¶¶404-06) for the fact that complaints about Singh reached Charney and Labor Relations from a male employee, and for ISMMS's response; they are permitted evidence of notice, not project management. Paragraphs 12 and 13 describe a presentation to a funder at which, in Khan's account, Singh gave figures that were untrue. (Dkt. 224 ¶¶12-13.) They are cited (Dkt. 241 at 15, 28) because Defendants rely on Singh's "sincerely held" reasons for the decisions at issue (*e.g.*, Dkt. 257 ¶¶43, 112, 154), and a

jury assessing the sincerity of those reasons may consider evidence that Singh was willing to state falsehoods to those to whom he was accountable. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001) ("At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer"); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").

## IX. The Beddoe Transcript Is Proper Summary Judgment Evidence.

Dr. Ann Marie Beddoe sat on the search committee that evaluated Singh and was the faculty member to whom Charney turned in 2018 for an assessment of whether Singh could be "rehabilitated." (Dkt. 242 ¶¶624-39.) Plaintiffs rely on excerpts of her deposition in *Beddoe v. Mount Sinai Health System, Inc.*, No. 22-cv-3080 (JLR) (S.D.N.Y.), taken by ISMMS and Charney at their counsel's offices on March 15, 2023. (Dkt. 223-3 at 2.) Defendants' counsel took the deposition and has had the transcript since the day it was prepared. Plaintiffs disclosed Beddoe in 2022 as a witness in this case to "[t]he discriminatory and hostile work environment at AIGH." (Dkt. 253 Ex. 3, No. 6; Cervenka Decl. Ex. A, No. 8.)

Defendants argue that the transcript may not be used because Rule 32(a)(8) requires an earlier action "involving the same subject matter between the same parties," and Singh and Silva were not parties to *Beddoe*. (Mot. at 16.) Defendants read Rule 32(a)(8) too narrowly. The rule applies to successors in interest, and those include present opponents who had the same motive and opportunity to cross-examine the deponent as the party-opponent in the prior case. *Bankers Tr. Co. v. Rhoades*, 108 B.R. 423, 430 (S.D.N.Y. 1989). Singh was deposed in the *Beddoe* lawsuit

and was represented by his current counsel (who also acted for all Defendants in that case). Further, during both the present litigation and *Beddoe*, Singh's and ISMMS's interests have been aligned and the two parties entered into a joint defense agreement. Singh's counsel testified that as of June 22, 2018 — the day Mount Sinai's investigating counsel told her the investigation had not found that Singh engaged in discrimination — Singh and Mount Sinai shared a joint interest, and that "at that point, our interests were aligned vis-à-vis the people who are now the plaintiffs." (Cervenka Decl. Ex. B (Fink Tr. 29-31, 75).) Mount Sinai's own counsel confirmed that she anticipated litigation as of that same date, "[b]y the complainants and potentially by Dr. Singh." (Cervenka Decl. Ex. C (Lowy Tr. 107).)

Even if this Court were to conclude that Singh and Silva did not have a proper opportunity to cross-examine Beddoe, her deposition extracts can still form part of Plaintiffs' record against them. *Linzy v. Uber Techs., Inc.*, 2023 WL 7302643, 2023 U.S. Dist. LEXIS 198838, at *11-12 (S.D.N.Y. Nov. 6, 2023), rejected the same "same parties" objection to a deposition taken in a separate state-court action, holding that "both logic and the weight of authority support considering the deposition testimony" on summary judgment and that the absence of cross-examination is no bar, because courts routinely consider affidavits without it and "[t]he same reasoning applies to sworn testimony from a prior deposition."

Defendants' Rule 804(b)(1) argument (Mot. at 17) misses the point. Plaintiffs do not offer the Beddoe transcript in lieu of a live witness, and the investigator's statements it records are admissions of ISMMS in any form. Fed. R. Evid. 801(d)(2)(D).

Defendants' reliance on this Court's January 2022 joinder ruling (Mot. at 16-17 (citing Dkt. 81 at 36)) is misplaced. The Court held that Beddoe's retaliation claim, which arose in February 2020, could not be joined under Rule 20(a) because of the "broad temporal gap" between

it and Plaintiffs' claims. (Dkt. 81 at 35-36.) It did not decide that Beddoe lacked knowledge of the 2018 events at issue here, which Defendants admit occurred. (Dkt. 257 ¶¶326, 398, 624 ("[o]therwise admitted").) That her own claim was later dismissed (*id.* ¶¶403, 624) has no bearing on the admissibility of her testimony about what she heard and saw in 2018.

Finally, Rule 37(c)(1) does not apply. (Mot. at 17-18.) Defendants' Request No. 47 sought statements Plaintiffs or their counsel "obtained from witnesses." (Mot. at 17 n.15.) A transcript of a deposition that Defendants' own counsel noticed and took, and that Plaintiffs' counsel received as counsel of record in that action, is not a statement Plaintiffs "obtained from" a witness; it is a document Defendants have possessed since March 2023, from a witness disclosed a year before the deposition was taken. There is no surprise, no prejudice and no basis for preclusion under the *Patterson* factors. *Design Strategy*, 469 F.3d at 296-98; *see Preuss*, 970 F. Supp. 2d at 177. The transcript should remain in the record.

## X. <u>**Defendants' Own Reply Papers Violate the Rules They Invoke.**</u>

The Motion asks the Court to hold Plaintiffs to a standard Defendants have not met. Defendants say a Rule 56.1 submission is "not argument" and may not be used to evade page limits (Mot. at 2-3), but their Reply 56.1 Statement appends some 11,000 words of argument to 154 of Plaintiffs' responses, beneath a Reply Memorandum that used 7,499 of its 7,500 permitted words. (Dkt. 250; Dkt. 255 at 25; Dkt. 257 ¶¶1-244.) They say a filed statement may not be corrected without leave (Mot. at 9); the Reply 56.1 Statement revises the Moving 56.1 Statement in nine places, four months after filing. (*E.g.*, Dkt. 257 ¶¶37, 89, 206, 221.) They say a party may not rely on evidence the other side had no opportunity to address (Mot. at 17-18); the Reply Declaration of Adam M. Lupion (Dkt. 256) attaches 20 new exhibits, cited more than 50 times in the Reply 56.1 Statement and not once in the Reply Memorandum. Plaintiffs object to these materials under Rule

56(c)(2). Local Civil Rule 56.1 "does not provide for a 'reply,'" and courts in this District decline to consider one as "a procedurally improper attempt to have the last word." *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 501 n.1 (S.D.N.Y. 2023) (internal quotation marks and citations omitted). Plaintiffs are concurrently seeking the Court's leave to move to strike them.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion. To the extent leave is required, Plaintiffs respectfully request that the Court grant leave nunc pro tunc for the corrected opposition papers (Dkts. 241, 242) and the Faghmous declaration (Dkt. 236), and deem withdrawn the Olivarius declaration (Dkt. 227) and the material Plaintiffs have withdrawn above. Plaintiffs respectfully request oral argument.

Dated: November 13, 2026

Respectfully submitted,

McALLISTER OLIVARIUS

BY: *<u>/s/ Jan Cervenka</u>*

Dr. John F.O. McAllister
Jan Cervenka (*pro hac vice*)
641 Lexington Ave, 13th Floor
New York, NY 10022
T: (212) 433-3456
jmcallister@mcolaw.com
hcervenka@mcolaw.com

Michael Paul Bowen
HERSCHMANN BENSON BOWEN LLP
305 Broadway, 7th Floor
New York, NY 10007
T: (212) 226-4226
mbowen@hbb-firm.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York that the foregoing brief contains no more than 8,750 words.

Specifically, the Microsoft Word "Word Count" tool indicates that the brief contains 8,741 words. That word count excludes the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but does include "material contained in footnotes or endnotes." Loc. Civ. Rule 7.1(c).

Dated: November 13, 2026

BY: *<u>/s/ Jan Cervenka</u>*
Jan Cervenka